Jahan C. Sagafi (Cal. Bar. No. 224887)
Rachel Williams Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, California 94111
Telephone:    (415) 638-8800
Facsimile:    (415) 638-8810
Email:        jsagafi@outtengolden.com
Email:        rdempsey@outtengolden.com

Vincent Cheng (Cal. Bar No. 230827)
BLOCK & LEVITON LLP
100 Pine St., Suite 1250
San Francisco, CA 94111
Telephone:    (415) 968-8999
Facsimile:    (617) 507-6020
Email:        vincent@blockesq.com

R. Joseph Barton (Cal. Bar No. 212340)
BLOCK & LEVITON LLP
1735 20th St NW
Washington DC 20009
Telephone:  (202) 734-7046
Facsimile:  (617) 507-6020
Email:      jbarton@blockesq.com

*Attorneys for Plaintiffs and proposed Class Members*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| DEVON ANDERSON and BEVERLY L. SWEENEY on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH, and SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY<br><br>Defendants.<br><br>and<br><br>SAN FRANCISCO EMPLOYEES' RETIREMENT SYSTEM<br><br>Nominal Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1)** |

Plaintiffs Devon Anderson and Beverly L. Sweeney, individually and on behalf of all others similarly situated, by and through their attorneys, allege as follows:

### NATURE OF THE ACTION

1.      This is an action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq*., the California Military and Veterans Code ("MVC"), the City and County of San Francisco Annual Salary Ordinances, the California Labor Code, the California Government Code, and California public policy on behalf of Plaintiffs, a class, and two subclasses of current and former employees of the City and County of San Francisco ("City") who have taken military leave on or after October 10, 2004.

2.      Since at least October 10, 2004, the City has had a policy or practice of requiring employees who take military leave to file formal requests for such leave, requiring employees who return to work after military leave to comply with standard return-to-work procedures, and failing to provide employees who return from military leave with adequate reemployment opportunities.

3.      The City has had a policy or practice of requiring employees to follow burdensome procedures to buy back pension credit, of charging employees interest on their pension buybacks, of failing to provide employees with the accrual of sick leave and vacation time during unpaid military leave, and of failing to provide employees who are eligible for paid military leave with compensation for days spent traveling to or from military leave.

4.      In addition, the City has had a policy or practice of failing to pay and allocate to the City's pension plan the full amount of mandatory employee contributions that the City is required to pick up pursuant to provisions of the Memoranda of Understanding that apply to positions held by members of Subclass I (defined below) and are in effect while Subclass I members are on military leave. Due to this policy or practice, Subclass I members' periods of military service are not properly included for the purpose of determining their years of service credit and, thus, their pension accruals.

5.      The City also has had a policy or practice of failing to provide to employees who take periods of active-duty military leave of greater than 30 days their full City compensation for the first 30 days of such periods and adequate supplemental pay and benefits afterwards, as

CLASS ACTION COMPLAINT

1    required by state and local laws.

2        6.      The policies or practices described in the preceding paragraphs violate USERRA,

3    the MVC, the City's Annual Salary Ordinances, the California Labor Code, the California

4    Government Code, and/or California public policy. Plaintiffs have brought this action to ensure

5    that the City complies with federal, state, and local laws that protect military reservists.

6        7.      Due to the City's violations of USERRA, the MVC, the Annual Salary Ordinances,

7    the California Labor Code, the California Government Code, and/or California public policy

8    Plaintiffs and other City employees who have served in the Armed Forces during their

9    employment with the City have not received proper sick time and vacation leave accruals, have

10   been forced to overpay to buy back pension credit for the time they spent on military leave, have

11   not received the full amount of paid leave to which they are entitled, and have had their ability to

12   take military leave and subsequently return to work adversely impacted, among other harms.

13       8.      Upon information and belief, the City has known about these violations of

14   USERRA, the MVC, the Annual Salary Ordinances, the California Labor Code, the California

15   Government Code, and/or California public policy for years and has received complaints from

16   City employees about these violations, but it has not taken sufficient action to rectify these

17   numerous problems. Not only does the City's indifference underscore the willful nature of the

18   City's conduct and its reckless disregard for the rights of military reservists who have bravely

19   served our country, but it has forced Plaintiffs to turn to the federal courts to obtain justice for the

20   many City employees who have been harmed by the policies and practices challenged in this

21   action.

22                              **JURISDICTION AND VENUE**

23       9.      This Court has subject matter jurisdiction over this action pursuant to 38 U.S.C.

24   § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over a

25   USERRA action brought against a private employer. Under USERRA, a "private employer"

26   includes a political subdivision of a State, pursuant to 38 U.S.C. § 4323(i). The Court also has

27   subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises

28   under USERRA, a federal law.

10. The Court has supplemental jurisdiction over the state and local law claims, because they arise from a common nucleus of operative fact with the claims arising under USERRA.

11. Venue is proper in this District pursuant to 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b)(2) and (b)(1). All the Defendants are private employers pursuant to 38 U.S.C.§ 4323(i), as they all maintain a place of business in this District. Additionally, a substantial part, if not nearly all, of the events or omissions giving rise to the claims occurred in this District, and all the Defendants reside in this District in the State of California.

## INTRA-DISTRICT ASSIGNMENT

12. This action arises in the County of San Francisco because some or all of the events or omissions giving rise to the claims alleged herein took place in the County of San Francisco, California, and most of the Defendants may be found in San Francisco.

## THE PARTIES

### Plaintiffs

13. Plaintiff Devon Anderson has been employed as a Transportation Operations Specialist for the San Francisco Municipal Transportation Agency ("MTA") since approximately August 17, 2015. In addition, Mr. Anderson is and has been a member of the Army Reserves. As such, Mr. Anderson is and has been entitled to the protections of USERRA, the MVC, and other California laws. Mr. Anderson resides in Oakland, California.

14. Plaintiff Beverly L. Sweeney is a retired captain of the United States Army and is a former employee of the City and County of San Francisco and the San Francisco Department of Public Health ("DPH"). In various periods during her employment with the City and the DPH, Ms. Sweeney was a member of and performed active-duty military service for the United States Army Reserves, the California Army National Guard, and the United States Army. As such, Ms. Sweeney is and has been entitled to the protections of USERRA, the MVC, and other California laws. Ms. Sweeney resides in Mill Valley, California.

### Defendants

15. The City is a consolidated city-county and is both a municipal corporation and a

CLASS ACTION COMPLAINT

county within the State of California. Pursuant to § 4.100 of the San Francisco Charter ("the Charter"), the executive branch of the City is composed of the office of the Mayor, as well as departments, appointive boards, commissions, and other units of government. The City currently employs more than 30,000 full-time workers across a variety of departments. One of these departments is the MTA, where Plaintiff Devon Anderson performs work. Another department is the DPH, where Plaintiff Beverly Sweeney performed work. The City is an employer within the meaning of USERRA, 38 U.S.C. § 4303(4)(A), because it paid salaries or wages for work performed by Plaintiffs and other employees and had control over the employment opportunities of its employees. Among other things, the City hired Plaintiffs for the respective City departments to which they were assigned, paid Plaintiffs for the work they performed, and has been responsible for making required employer and, where applicable, employee contributions to the San Francisco Employees' Retirement System Pension Plan ("the Pension Plan"). The City's Department of Human Resources handled many of the responsibilities related to Plaintiffs' employment, including administration of the military leave taken by Plaintiffs.

16.    Defendant San Francisco Municipal Transportation Agency ("MTA") is a department of the City within its executive branch. MTA is responsible for the management of all ground transportation in the city, including oversight of the Municipal Railway ("Muni") public transit, bicycling, paratransit, parking, traffic, walking, and taxis.[1] MTA is an employer within the meaning of USERRA, 38 U.S.C. § 4303(4)(A), because it had control over the employment opportunities of employees. Among other things, the MTA, including its human resources personnel, handled with the City many of the responsibilities related to Plaintiff Anderson's employment. These responsibilities included reviewing Plaintiff Anderson's job application and administering the military leave Plaintiff Anderson took during his employment.

17.    Defendant San Francisco Department of Public Health ("the DPH") is a department of the City within its executive branch. Pursuant to Charter § 4.110, the DPH, together with the

---

[1] *See* About the MTA, *available at* https://www.sfmta.com/about-sfmta (last accessed April 18, 2019).

CLASS ACTION COMPLAINT

1    San Francisco Health Commission as appointed by the Mayor of the City, is responsible for

2    managing and controlling the City's hospitals and emergency medical services. According to its

3    annual report for 2016-2017, the DPH is the largest department of the City, with over 7,500

4    employees. The DPH is an employer within the meaning of USERRA, 38 U.S.C. § 4303(4)(A),

5    because it has control over employment opportunities of employees. Among other things, the

6    DPH, including its human resources personnel, handled with the City many of the responsibilities

7    related to Plaintiff Sweeney's employment. These responsibilities included reviewing her job

8    application, interviewing her, administering the military leave Plaintiff Sweeney took during her

9    employment, and participating in the decision to terminate her.

10                  **Nominal Defendant**

11          18.    The San Francisco Employees' Retirement System ("SFERS") is a retirement

12   system operated by the City and overseen by a seven-member Retirement Board pursuant to

13   Charter § 12.100. SFERS is responsible for administering employee benefit plans mandated by the

14   Charter and providing promised benefits to active and retired employees of the City. According to

15   SFERS Annual Report for Fiscal Year 2016-17, SFERS served more than 70,900 active and

16   retired City employees and their beneficiaries. One of the employee benefit programs administered

17   by SFERS is the Pension Plan.  SFERS is named as a nominal defendant pursuant to Rule 19 to

18   ensure that complete relief can be granted as to claims brought involving the Pension Plan.

19                  **CLASS ACTION ALLEGATIONS**

20          19.    Plaintiffs Anderson and/or Sweeney bring Counts I through VII as a class action

21   pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class ("the

22   Class"):

23          All current and former employees of the City and County of San Francisco who took
            leave from their employment with the City to engage in qualified military service on
24          or after October 10, 2004 and through the date of judgment in this action.

25          20.    Plaintiff Sweeney brings Count XII as a class action pursuant to Rule 23 of the

26   Federal Rules of Civil Procedure on behalf of the following subclass ("Subclass I"):

27          All current and former City employees who (a) took a period of leave from their
            employment with the City to engage in qualified military service on or after
28

October 10, 2004 and through the date of judgment in this action while they were members of the San Francisco Employees' Retirement System Pension Plan, (b) requested reemployment by the City after the period of military leave, and (c) were required to receive employee contributions to the Pension Plan from the City pursuant to the Memorandum of Understanding that applied during the period of military leave.

21.     Plaintiffs Anderson and Sweeney bring Counts XIII and XIV as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following subclass ("Subclass II"):

All current and former City employees who took leave for a period greater than 30 days from their employment at the City to engage in qualified active-duty military service on or after October 10, 2004.

**Impracticability of Joinder**

22.     The Class and Subclasses are so numerous that joinder of all members is impracticable. The City currently has more than 30,000 employees, of whom upon information and belief, a significant proportion have served in the Armed Forces during some or all of their employment.  In addition, many former employees served in the Armed Forces during some or all of their employment with the City.

**Commonality**

23.     The central questions in this case concern whether the City violated employees' federal statutory rights under USERRA, state statutory rights under the MVC, and the City's Annual Salary Ordinances by: (1) requiring employees to apply and be approved for military leave before taking such leave; (2) failing to provide employees with accrual of paid sick leave and vacation time during unpaid military leave; (3) failing to include necessary travel days in paid military leave; (4) requiring employees who were on military leave to overcome numerous procedural hurdles before allowing them to buy back pension credit; (5) requiring employees to pay interest when they buy back their pension credit; (6) failing to provide for prompt reemployment of employees returning from military leave; (7) failing to reemploy employees returning from military leave in the relevant "escalator position" or the position they would have occupied if they had not been on military leave; (8) for periods of military leave, failing to make

CLASS ACTION COMPLAINT

mandatory employee contributions required under the Memorandum of Understanding covering members of Subclass I and provide them with proper years of service credit for the purpose of determining the accrual of their pension benefits; and (9) failing to adequately provide to employees on active-duty military leave for a period of greater than 30 days their full City compensation for the first 30 days of the period and supplemental pay and other benefits afterwards, as the City's Annual Salary Ordinances require.

24.   As the City adopted and applied a uniform policy or practice for providing benefits to its employees who are servicemembers, the answers to these questions will produce common answers for all members of the proposed Class and Subclasses.

25.   Plaintiffs' claims raise common questions that will have common answers for each Class or Subclass Member, including, but not limited to, the following:

(a)   For Class members:

    i.   Whether requiring employees to apply and be approved for military leave before taking military leave violates USERRA;

    ii.   Whether failing to provide employees with accrual of paid sick leave and vacation during unpaid military leave violates the MVC and USERRA;

    iii.   Whether failing to include necessary travel time in paid military leave violates the MVC;

    iv.   Whether requiring employees who were on military leave to overcome numerous procedural hurdles before allowing them to buy back pension credit violates USERRA;

    v.   Whether requiring employees who were on military leave to pay interest on their pension buybacks violates USERRA;

    vi.   Whether failing to provide for prompt reemployment of employees returning from military leave violates USERRA;

    vii.   Whether failing to reemploy employees returning from military leave in the relevant "escalator position," or the position they would have occupied if they had not been on military leave, violates USERRA;

(b)    For members of Subclass I:

      i.    Whether failing to make mandatory employee contributions required under the Memorandum of Understanding covering members of Subclass I for periods of military service and failing to provide them with proper years of service credit for the purpose of determining the accrual of pension benefits violates USERRA;

(c)    For members of Subclass II:

      i.    Whether failing to adequately provide to members of Subclass II their full City compensation for the first 30 days of their periods of military service and supplemental pay and other benefits afterwards violates USERRA and the City's Annual Salary Ordinances;

(d)    For members of the Class and both Subclasses:

      i.    Whether the City's violations of USERRA were willful, making it appropriate to award liquidated damages under USERRA; and

      ii.    What, if any, other relief should be granted?

26.    Because the violations listed within this Complaint were based on uniform policies or practices and any recovery can be provided through a class-wide injunction or calculated as damages using data common to all Class Members, all issues regarding relief to which the Class Members are entitled are common.

27.    Even if some individualized issues may exist with respect to the allocation of any recovery, the key issues in this action all concern the failure of the City to conform its policies to comply with USERRA and the MVC. As the City acted in a systematic and uniform manner with respect to the Class and Subclasses, all members of the Class and Subclasses suffered the same type of injuries based on common policies, and resolving the claims of the Class and Subclasses will be based on common legal and factual questions.

**Typicality**

28.    Plaintiffs' claims are typical of the other members of the proposed Class and Subclasses that they seek to represent. Plaintiffs challenge common policies and practices by

9    CLASS ACTION COMPLAINT

which they allege that the City violated USERRA, the MVC, and the City's Annual Salary Ordinances, including but not limited to the City (1) requiring employees to apply and be approved for military leave before taking such leave; (2) failing to provide employees with accrual of paid sick leave and vacation time during unpaid military leave; (3) failing to include necessary travel days in paid military leave; (4) requiring that employees who were on military leave overcome numerous procedural hurdles before allowing them to buy back pension credit; (5) requiring that employees pay interest when they buy back their pension credit; (6) failing to provide for prompt reemployment of employees returning from military leave; (7) failing to reemploy employees returning from military leave in the relevant "escalator position," or the position they would have occupied if they had not been on military leave; (8) failing to make mandatory employee contributions to the SFERS Pension Plan on behalf of members of Subclass I for periods of military service and credit them with proper years of service credit; and (9) failing to provide members of Subclass II with adequate City compensation, supplemental pay, and other benefits for their periods of military service.

29.     The relief sought consists primarily of damages and injunctive relief.

**Adequacy**

30.     Plaintiffs will fairly and adequately protect the interests of other members of the Class and Subclasses that they seek to represent. Plaintiffs are aware of no conflict with any other member of the Class and Subclasses. Plaintiffs understand their obligations as class representatives, have already undertaken steps to fulfill them, and are prepared to continue to fulfill their duties as class representatives.

31.     The City has no unique defenses against the Plaintiffs that would interfere with their representation of the Class and Subclasses.

32.     Plaintiffs' counsel are experienced in federal court class action litigation, including civil rights and employee benefits litigation, and have considerable experience and expertise in servicemembers and reservists' employment rights under USERRA and other statutes.

**Rule 23(b)(2) Certification**

33.     This action is also properly maintainable as a class action under Rule 23(b)(2) of

CLASS ACTION COMPLAINT

the Federal Rules of Civil Procedure. The City is alleged to have violated USERRA, the MVC, and the City's Annual Salary Ordinances in a common manner as to all members of the Class and Subclasses. As such, the City has acted or refused to act on grounds that apply generally to the Class and Subclasses. As a result, final declaratory relief is appropriate respecting the Class and Subclasses as a whole.

34.    The monetary relief that Plaintiffs seek either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.

**Rule 23(b)(3) Certification**

35.    This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

36.    The questions of law and fact common to the members of the Class and Subclasses predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

37.    By resolving the common issues described above in a single class proceeding, each member of the proposed Class and Subclasses will receive a determination of whether Defendants violated USERRA, the MVC, and/or the City's Annual Salary Ordinances, and will receive the remedy that should be provided under USERRA, the MVC, or the City's Annual Salary Ordinances.

38.    There is no other pending litigation that has raised similar allegations with respect to the City.

39.    This is an appropriate forum for these claims because the City is located within the District, and as a result of the City's significant operations and tens of thousands of employees in this District, most or all of the Class and Subclasses likely were employed in this District and a significant portion of the Class and Subclasses resides in this District.

40.    There are no difficulties in managing this case as a class action.

CLASS ACTION COMPLAINT

# FACTUAL ALLEGATIONS

**A.**      **The Policies and Practices of Defendants**

   **1.**      **The City's Obligations to Servicemembers Under State and Federal Law**

41.      Since 2004, the City has had numerous employees who have served their country in the United States Armed Forces during their employment with the City.

42.      When these employees take military leave to serve in the Armed Forces, federal law generally requires the City to treat these employees as if they never took leave from their civilian jobs. For example, USERRA requires the City to reemploy City employees who take military leave and restore the rights and benefits related to the employees' positions. 38 U.S.C. §§ 4312, 4316.

43.      Employees who timely notify their employers that they are returning from military leave are entitled to "prompt reemployment," 38 U.S.C. § 4301(a)(2), which is reemployment as soon as practicable under the circumstances of each case, 20 C.F.R. § 1002.181.

44.      In addition, USERRA mandates that, for the purpose of retirement benefits, an employee who returns to his or her civilian job after serving in the military must be treated as if he or she never took a day off from his or her civilian job. 38 U.S.C. § 4318. This means that an employer must "allocate the amount of any employer contribution for the [returning servicemember] in the same manner and to the same extent the allocation occurs for other employees during the period of service." *Id*. § 4318(b)(1). It also means that servicemembers must not be required to pay interest on makeup contributions. *Id*. § 4318(b)(2); *see also* 20 C.F.R. § 1002.263.

45.      USERRA provides that servicemembers are not required to ask for or receive permission from their employers in order to perform service in the uniformed services. Although servicemembers are required to provide notice to their employers of their leave, the notice need not take any particular format. Notice can be *either* oral or written. 20 C.F.R. §§ 1002.85, 1002.87.

46.      The MVC provides certain additional protections for servicemembers that are not available under federal law. For example, MVC § 395(d) requires that public employees who have been employed with a public agency for more than one year (counting military service) and who

take military leave must continue to receive the same vacation, sick leave, and holiday privileges, and the same rights and privileges to employment, promotion, continued employment or appointment, and reemployment or reappointment, that they would have if they had not taken military leave.

**2.** **The City's Policies and Practices Governing Military Leave of City Employees**

**a.** **San Francisco Civil Service Commission**

47.     Pursuant to Charter § 10.100, the San Francisco Civil Service Commission ("the Civil Service Commission") is charged with the duty of providing qualified persons for appointment to the service of the City. Pursuant to Charter § 10.101, the Civil Service Commission adopts rules, policies, and procedures to govern a wide range of topics and issues relating to City employment, including, for example, applications, leaves of absence, promotions, transfers, resignations, and lay-offs. Among the rules, policies, and procedures adopted by the Civil Service Commission are the Civil Service Commission Rules. These Rules are contained in four serialized volumes and are applicable to all classes of City employees, including Miscellaneous Employees (pursuant to Volume I in the 100 Series), the Uniformed Ranks of the San Francisco Police Department (pursuant to Volume II in the 200 Series), the Uniformed Ranks of the San Francisco Fire Department (pursuant to Volume III in the 300 Series), and Service-Critical Classes of the MTA (pursuant to Volume IV in the 400 Series).

48.     For the purpose of the Civil Service Commission Rules, "Miscellaneous Employees" refers to employees in all classes except those covered in Volumes II, III, and IV of the Rules.

49.     Pursuant to Charter § 8A.104(e), "service-critical" employees of the MTA include those who operate a transit vehicle, whether or not in revenue service; control dispatch of, or movement of, or access to, a transit vehicle; maintain a transit vehicle or equipment used in transit service, including both preventive maintenance and overhaul of equipment and systems, including system-related infrastructure; regularly providing information services to the public or handling complaints; and supervising or managing employees performing functions enumerated above.

1

2

        b.     **Requirements for Submitting Written Requests and Obtaining Pre-Approvals to Take Military Leave**

3

      50.     Rule 120 in Volume I of the Civil Service Commission Rules sets forth the City's

4

rules, policies, and procedures that govern leaves of absence with respect to employment covered

5

in Volume I. Likewise, Rule 220 in Volume II, Rule 320 in Volume III, and Rule 420 in Volume

6

IV of the Civil Service Commission Rules, state the rules, policies, and procedures that govern

7

leaves of absence with respect to employment covered in Volumes II, III, and IV, respectively.

8

      51.     Pursuant to Civil Service Commission Rule 120.26.6, an employee requesting

9

military leave must file with the City's Human Resources Director a copy of the order

10

necessitating such service prior to the effective date of the leave of absence and upon return from

11

such leave must submit a copy of the discharge or release, regardless of the length of the period of

12

military service. Pursuant to Civil Service Commission Rules 220.26.6, 320.26.6, and 420.26.6,

13

employees covered in Volumes II, III, and IV of the Rules are subject to the same requirements.

14

      52.     Pursuant to Civil Service Commission Rule 120.1.4, an employee requesting a

15

leave for more than five (5) working days must submit a written request on the form prescribed by

16

the City's Human Resources Director to the department head or designee. This requirement

17

applies to all types of leave except for vacation, witness or jury duty leave, compulsory sick leave,

18

disability leave, or unpaid administrative leave. Pursuant to Civil Service Commission Rules

19

220.1.4, 320.1.4, and 420.14, employees covered in Volumes II, III, and IV of the Rules are

20

subject to the same requirement.

21

      53.     The form prescribed by the City's Department of Human Resources is entitled

22

"City and County of San Francisco – Request for Leave and Leave Protections." Pursuant to the

23

Civil Service Commission Rules and the "Leave of Absence – General Provisions" set forth on the

24

form, all City employees who take certain types of leave in excess of five days, including

25

servicemembers who take military leave protected under USERRA, are required to submit a

26

written Request for Leave and Leave Protections, and such request must be approved in advance

27

of the leave of absence. Employees who take military leave are further required to attach their

28

official military orders, if any such orders are issued, to their requests for military leave. A copy of

          CLASS ACTION COMPLAINT

the "City and County of San Francisco – Request for Leave and Leave Protections" form is attached hereto as **Exhibit A**.

54.     Pursuant to Civil Service Commission Rule 122.10, an employee's absence from duty without proper authorization by the City for any period of time up to and including five (5) or less working days will be cause for disciplinary action. Pursuant to Civil Service Commission Rules 222.7, 322.9, and 422.10, employees covered in Volumes II, III, and IV of the Rules are subject to the same treatment and consequence. As such, a City employee who fails to submit a written Request for Leave in advance and obtain the City's approval for a period of military leave up to five working days will be subject to disciplinary action. Likewise, a City employee who does not return to work within five working days of the expiration of his or her City-approved military leave will be subject to disciplinary action, regardless of the length of the period of the employee's military service.

55.     Pursuant to Civil Service Commission Rule 122.11.1, an employee's absence from duty without proper authorization in excess of five (5) continuous working days will constitute abandonment of the employee's position and will be reported to the Department of Human Resources and recorded as an automatic resignation. Pursuant to Civil Service Commission Rules 222.8.1, 322.10.1, and 422.11.1, employees covered in Volumes II, III, and IV of the Rules are subject to the same treatment and consequence. As such, a City employee who fails to submit a written Request for Leave in advance and obtain the City's approval for a period of military leave in excess of five working days will be treated as having automatically resigned from the employee's City position. Likewise, a City employee who does not return to work within five working days of the expiration of his or her City-approved military leave will be treated as having automatically resigned from his or her City position, regardless of the length of the period of the employee's military service.

56.     The "Leave of Absence – General Provisions" set forth on the "City and County of San Francisco – Request for Leave and Leave Protections" form also provides that employees who do not return to work when they are expected are absent without leave ("AWOL") and may be subject to disciplinary action or automatic resignation. Thus, if a servicemember does not submit a

CLASS ACTION COMPLAINT

written request for an extension of his or her military leave and obtain the City's approval for it, the employee will be subject to disciplinary action and classified as AWOL or having automatically resigned from his or her employment with the City, regardless of the length of the period of the employee's military service.

### c. Return to Work After a Period of Military Leave

57. Because all servicemembers on military leave for more than five days must complete a Request for Leave and Leave Protections form or else risk termination, the City is on notice of the completion of employees' periods of military service and their intent to return to work following their military leave, including the date at which servicemembers' orders terminate and the date at which servicemembers intend to return to their civilian jobs.

58. Prior to the expected expiration of their leave, the City provides notice to employees that they must begin the return-to-work process at least five days prior to their intended return to work.

59. Employees returning from military leave are required to comply with these procedures.

60. Compliance with the City's return-to-work procedures is time-consuming, and the City often requires employees to use some other type of leave, such as vacation, to complete them. This is because employees must appear in person at the relevant Human Resources Department to fill out paperwork prior to being reemployed. Completing the necessary paperwork may also require employees to get several additional signatures to confirm that their licenses and medical examinations are up to date and to get signatures from their managers, all of which involve in-person trips to the locations where the relevant signatories work.

61. In addition, certain employees may be required to fulfill additional requirements before returning to work. For example, "safety sensitive employees" who have been on leave for 90 days or more may be required to submit to alcohol and drug testing. Employees returning from military leave are not permitted to start work until the drug testing has been completed, even to perform clerical work for which drug testing is not legally required and for which such employees are qualified.

CLASS ACTION COMPLAINT

62.     These requirements may delay servicemembers' reemployment and their return to work for several days or weeks after the completion of their military service and after the time that such servicemembers request reemployment.

63.     On information and belief, employees who return to work after periods of military leave are reemployed at the same position they held when they left, without consideration of the position in which they would have been employed if their continuous employment had not been interrupted by their military service. Thus, the City does not consider what the appropriate "escalator position" is for a returning servicemember other than the option of returning to the same position the employee had before taking military leave.

### 3.     Paid Military Leave During the First 30 Days and Supplementation of Military Pay Afterwards

64.     MVC § 395.01(a) provides that any public employee who is on temporary military leave for military duty ordered for purposes of active military training, inactive duty training, encampment, naval cruises, special exercises, or like activity is entitled to receive his or her salary or compensation as a public employee for the first 30 calendar days of any such leave (capped at 30 days per fiscal year), provided that the period of military duty does not exceed 180 calendar days and the employee has been employed by the public agency for a period of not less than one year immediately prior to such leave (counting any military service). Pursuant to MVC § 395.01(a), time involved in traveling to and returning from military duty is included when counting the length of military leave for which an employee must receive a salary or compensation.

65.     Likewise, pursuant to MVC § 395.02, any public employee who is on military leave other than temporary military leave is entitled to receive his or her salary or compensation as a public employee for the first 30 calendar days of any such leave.

66.     For the purposes of calculating paid leave, the City only counts days for which employees have been able to satisfactorily demonstrate that they have received military orders to report for duty. Time spent traveling to and from leave is not compensated by the City, even if travel time is required to perform such military service. Instead, employees are required to use

17          CLASS ACTION COMPLAINT

1    vacation, floating holiday, or compensatory time if they require time to travel to or from their

2    military duty.

3         67.    Charter § A8.400(h) provides that the Board of Supervisors has the power to enact,

4    at the Mayor's request, an ordinance entitling City employees called to active duty with a United

5    States military reserve organization to receive from the City the following as part of the

6    individual's compensation, subject to certain limitations: for a period to be specified in the

7    ordinance, the difference between the amount of the individual's military pay and the amount the

8    individual would have received as a City employee had the employee worked his or her normal

9    work schedule, including any merit raises which otherwise would have been granted during the

10   time the individual was on active duty.

11        68.    Since at least 2004, the City has enacted and renewed on an annual basis an

12   ordinance that entitles City employees called to certain active duty by the United States military to

13   receive from the City supplemental pay and benefits during their military leave. Pursuant to the

14   "Supplementation of Military Pay" provision adopted and incorporated into the City's Annual

15   Salary Ordinance in effect for each fiscal year of the City from at least 2004 to the present ("the

16   Supplemental Pay Provision"), a City employee who (i) is a member of the reserve corps of the

17   United States Armed Forces, National Guard or other uniformed service organization of the

18   United States and (ii) is called to active military duty (iii) on or after September 11, 2001 (iv) in

19   response to the September 11, 2001 terrorist attacks, international terrorism, conflict in Iraq or

20   related extraordinary circumstances (v) for a period greater than 30 consecutive days is entitled to

21   receive from the City the difference between the amount of the individual's gross military pay and

22   the amount of gross pay the individual would have received as a City employee, had the officer or

23   employee worked his or her normal work schedule ("Supplemental Pay"). As such, in addition to

24   any pay and benefits provided under MVC §§ 395.01 and 395.02 for the first 30 days of active

25   duty, the servicemember is also entitled to receive Supplemental Pay starting from the 31st day of

26   active duty.

27        69.    The Supplemental Pay Provision further provides that a City employee entitled to

28   Supplemental Pay is also entitled to all other benefits to which the individual would have been

CLASS ACTION COMPLAINT

entitled had the individual not been called to active duty, except as limited under state law or the Charter.

70.     A City employee's entitlement to Supplemental Pay and other compensation and benefits under the Supplemental Pay Provision is subject to the limitation and condition that the individual receiving compensation pursuant to the Provision must execute an agreement providing that if the individual does not return to City service within 60 days of release from active duty, or if the individual is not fit for employment at that time, within 60 days of a determination that the employee is fit for employment, then that compensation provided to the individual under the Supplemental Pay Provision shall be treated as a loan payable to the City with interest at a rate set forth in the Provision, commencing 90 days after the individual's release from active service or return to fitness for employment.

**4.     San Francisco Employees' Retirement System Pension Plan**

71.     One of the employee benefit programs administered by SFERS is the Pension Plan. The Pension Plan is a tax-qualified defined benefit plan under the terms of which the City pays retiring employees a monthly service retirement benefit that is determined by a specific formula. Under that formula, the amount of an employee's monthly benefit is calculated based on the employee's years of service credit, age at retirement, and final compensation (*i.e.*, highest average pay).

72.     The SFERS Pension Plan is funded through employer and employees' contributions. Employee contributions are calculated as a percentage of employees' salaries and deducted from their paychecks each pay period.

73.     When City employees go on unpaid military leave, they receive no pay or less pay than they would have received if they had not been on leave. For pay periods when City employees are on unpaid military leave for an entire pay period, they receive no salary. Accordingly, no employee contributions are made to their individual retirement accounts during such pay periods, and the City does not make a corresponding contribution to the general retirement fund. For pay periods when City employees are on unpaid military leave for part of a pay period, their individual contributions and the contributions of the City are prorated in

1    accordance with the amounts of their paychecks.

2        74.    A City employee who returns from unpaid military leave is eligible to purchase

3    service credit for time lost under certain circumstances. The purchased service is added to the

4    years of service credited to the employee and used to calculate his or her pension on retirement.

5    The amount required to purchase service credit is the amount of the employee's usual contribution

6    to his or her pension, plus interest in the amount that the contributions would have earned if they

7    had been on deposit with SFERS.

8        75.    In order to purchase service credit, employees who return from military leave are

9    required to present: (1) induction papers, (2) discharge papers, (3) civil service certification of

10   military leave, (4) an SFERS form entitled "Application for Purchase of Military Service" (which

11   has to be notarized if not completed in the SFERS office), and (5) a record of military pay made

12   during the period of military service, such as by providing paystubs or completing the "US Form

13   180 – Request Pertaining to Military Records" to allow such information to be released to SFERS

14   from the military. The Application for Purchase of Military Service is attached hereto as **Exhibit**

15   **B**.

16       76.    The same amount of paperwork that servicemembers are required to complete

17   before they are eligible for a purchase of service credit is not required for employees who buy

18   back service credit after taking other types of leave. For example, employees who take union leave

19   are required only to complete an Application for Purchase of Representative Service, attached

20   hereto as **Exhibit C**, obtain a signature from a union officer, and provide proof that their union

21   leave was authorized.

22       77.    Employees who remain continuously employed with the City are not required to

23   file an application to purchase service or any associated paperwork.

24       78.    Pursuant to the Supplemental Pay Provision in effect from at least 2007 to the

25   present, for any City employee who (i) is a member of the reserve corps of the United States

26   Armed Forces, National Guard or other uniformed service organization of the United States and

27   (ii) is called to active military duty (iii) on or after September 11, 2001 (iv) in response to the

28   September 11, 2001 terrorist attacks, international terrorism, conflict in Iraq or related

CLASS ACTION COMPLAINT

extraordinary circumstances (v) for a period greater than 30 consecutive days, the City is also required to pay the full *employee contributions* to the employee's SFERS account to the extent employer-paid employee contributions are required under the memorandum of understanding covering the City position held by employee. As such, pursuant to the Supplemental Pay Provision, the employee is entitled to receive *full service credit* under the SFERS Pension Plan for the entire period of his or her military leave as if he or she had not been absent, and should not be required to purchase service credit for any part of that period in order to receive full credit for the purpose of determining his or her benefits under the Plan.

**5.   Vacation and Sick Leave Accrual**

79.    The City provides vacation accrual for all employees who work a regular schedule and who have completed a year or more of continuous service. According to the Employee Handbook issued by the City's Department of Human Resources in January 2012 and updated in January 2019, although employees are not eligible to use vacation in the first year of continuous service, at the end of one year of continuous service, they will be awarded a vacation allowance at the rate of .0385 of an hour for each hour of paid service in the preceding year and will be eligible to use accrued vacation time. For the purposes of computing vacation accrual, most employees may be credited with no more than 2080 hours of service in a 12-month period. Generally, employees with 1 to 5 years of service are entitled to a maximum of 80 hours of vacation accrual per year. Employees with 5 to 15 years of service are entitled to a maximum of 120 hours of vacation accrual per year. Employees with more than 15 years of service are entitled to a maximum of 160 hours of vacation accrual per year. These maximums assume that employees will work no more than 2080 hours each year.

80.    Pursuant to Civil Service Commission Rules 120.13, 220.13, and 420.12, hourly City employees covered in Volumes I, II, and IV of the Civil Service Commission Rules accrue sick leave pay credits at a rate of .05 hours for each hour worked (*i.e.*, 1 hour of sick leave for each 20 hours worked, or 13 days of sick leave for each 2080 hours worked) of regularly scheduled paid service, excluding overtime hours exceeding 40 hours per week and holiday pay. Likewise, pursuant to Civil Service Commission Rule 320.13, hourly City employees covered in Volume III

of the Civil Service Commission Rules accrue sick leave pay credits at a rate of 13 working days of sick leave per completed year of paid service. Pursuant to Civil Service Commission Rules 120.13, 220.13, 320.13, and 420.12, all exempt City employees accrue sick leave at a rate of one hour of sick leave per every 30 hours worked, excluding holiday pay.

81.    Pursuant to Civil Service Commission Rules 120.8.3, 220.8.3, 320.8.3, and 420.8.3, sick leave with pay credits will continue to accrue at the normal rate while an employee is on either furlough or voluntary unpaid time off, for a maximum of up to 10 days per fiscal year for furlough and 20 days per fiscal year for voluntary unpaid time off.

82.    The City provides for the regular accrual of paid sick leave and vacation for employees who are on most types of paid leave, including union leave and jury duty leave.

83.    The City provides its employees with accrued vacation and sick leave during the periods in which they engage in paid military leave, but does not provide its employees with any accrued vacation or sick leave during the periods in which they engage in *unpaid* military leave.

84.    Jury duty, union leave, and furlough are comparable to military leave in terms of the duration of these forms of leave, the purpose of the leave, and the involuntary nature of the leave.

85.    For employees of the City, the duration of jury duty leave, union leave, and furlough is comparable to the duration of military leave. All these types of leave most commonly last several days and usually not more than a couple of weeks.

86.    Jury duty leave, furlough, union leave, and military leave are ordinarily involuntary. Jury duty is required by federal, state, or local law. Furlough is required by the City. Union leave is required to perform duties associated with union leadership. And military leave occurs due to an employee's legal obligation to perform military service in the Armed Forces. The purpose of jury duty is the same as military leave: to perform service for our government and to engage in public service for the benefit of our society. Likewise, the purpose of union duty is to engage in service for the good of fellow members of the community.

87.    Despite the comparability of military leave to other forms of leave during which the City provide its employees with accrued vacation and sick leave, the City has failed to provide

22                          CLASS ACTION COMPLAINT

employees who take unpaid military leave with accrued vacation and sick leave. In doing so, the City has not provided employees who take military leave the same rights and benefits that other employees receive when they take comparable leaves or furlough.

**B.**     **Plaintiff Devon Anderson's Employment and Military Leave and the Effects of Defendants' Policies and Practices on Him**

**1.**     **Mr. Anderson's Paid and Unpaid Military Leave**

88.     Plaintiff Devon Anderson has been a member of the Army Reserves for 22 years. Until approximately May 2019, Mr. Anderson's brigade in the Army Reserves was stationed in Fort Gillem, which is located just outside of Atlanta, Georgia. Since May 2019, Mr. Anderson has been stationed at Camp Parks Army Reserve Base in Dublin, CA. As part of his military service, Mr. Anderson reports once a month to his Reserves unit for his regular drill weekend and has additional trainings throughout the year.

89.     After Mr. Anderson passed the required civil service examination, the Human Resources Department for the MTA ("MTA HR") offered Mr. Anderson the position of 9160 Transportation Operations Specialist on April 28, 2015, with a start date of May 11, 2015. Mr. Anderson informed MTA HR that he was scheduled to be on military duty beginning on May 28, 2015. That same day, he received a call from an MTA HR representative informing him that he would need to change his appointment date to July 6, 2015. Mr. Anderson subsequently received another set of orders for 43 days of service effective July 2, 2015, and consequently his start date was delayed again to August 17, 2015. As a result, Mr. Anderson lost more than three months, or 98 days, of seniority and related benefits while he was performing military service.

90.     Throughout the course of his employment with the City, Mr. Anderson has taken regular periods of military leave as part of his service in the Army Reserve. Most of these periods have lasted between one and five days. Mr. Anderson took military leaves of more than five days on February 2 through 8, 2016; June 12 through 24, 2016; October 17 through November 13, 2016; December 7 through 16, 2016; January 17 through February 3, 2017; March 2 through 10, 2017; May 4 through 26, 2017; June 2 through 7, 2017; and June 18 through 29, 2017; and was on military leave for a service-related injury between approximately September 17, 2017 and January

CLASS ACTION COMPLAINT

1, 2019.  During his periods of military leave that were greater than five days, Mr. Anderson has been required to submit an application for military leave to MTA HR attaching his military orders. For military leave that lasted five days or fewer, Mr. Anderson has been required submit a request for military leave to his supervisor, York Kwan, prior to taking military leave, along with either his drill schedule or military orders. Some of these requests for military leave that lasted five days or fewer were sent to MTA HR, even though there was no formal requirement for HR approval.

91.     When Mr. Anderson has returned from military leave that lasted more than five days, he has been required to follow the normal return-to-work procedures, including an in-person trip to the City's Department of Human Resources. This trip frequently takes all day and requires Mr. Anderson to miss an additional day of work. Mr. Anderson does not receive pay for this day in which he completes the return-to-work procedures unless he uses his accrued vacation time.

**2.      Mr. Anderson's Efforts to Make Up His Pension Contributions**

92.     When Mr. Anderson inquired about how to make up his pension contributions for time spent on military leave, a representative of the City's HR Department told him that he would need to present: (1) induction papers, (2) discharge papers, (3) civil service certification of military leave, (4) Application for Purchase of Military Service (which has to be notarized if not completed in the SFERS office), and (5) a record of pay made during military service. He was also told that he would be required to pay interest on any buyback amount.

**3.      Hostility Towards Military Service from Mr. Anderson's Supervisors**

93.     In late fall of 2015, while Mr. Anderson was still within his probationary period as a City employee, he was required to attend a drill with his Army unit in Georgia. While in Georgia, Mr. Anderson received a call from a City employee, saying that a test he had taken had been regraded and his grade changed from a pass to a fail. The employee told Mr. Anderson to call his supervisor, Kurtis Smith, who told Mr. Anderson that if he did not return to San Francisco immediately to retake the test, his employment with the City would be terminated. As a result, Mr. Anderson was required to cut his drill time short to avoid termination. Yet, without exception, USERRA prohibits employers from requiring an employee to cease ongoing military duty or else face the threat of termination or discipline.

94.    In February 2016, Mr. Kwan and another of Mr. Anderson's supervisors requested that Mr. Anderson not attend military duties other than his normal weekend drills because they needed Mr. Anderson to assist with upcoming special events. As a result of this request, Mr. Anderson delayed necessary military training.

95.    In February 2017, Mr. Kwan told Mr. Anderson that Mr. Kwan would have blocked Mr. Anderson's assignment to his division if he had known that he would be out on military leave so often.

96.    In April 2017, Mr. Kwan denied Mr. Anderson's request for a one-week vacation because he was "always out on military leave." This conversation was witnessed by two other City employees. After Mr. Anderson protested, the leave request was subsequently approved.

97.    In June 2017, Mr. Anderson emailed his managers a work-related suggestion. In response, one of Mr. Anderson's managers replied, "We have been doing just fine, and this sort of confusion can only happen when you detach yourself from the reality that we live as a group every day." The manager later clarified that he believed Mr. Anderson was detached from his job due to his military duties.

98.    In August 2017, Mr. Kwan denied Mr. Anderson's request for 32 hours of compensatory time, although this decision was reversed when Mr. Anderson asked if the compensatory time policy had changed.

99.    Prior to February 2018, employees in Mr. Anderson's division were able to select their floating holidays through an informal process. For the first time in February 2018, Mr. Anderson's supervisors instituted a signup system for floating holidays. Any managers off of work for more than 30 days, including on short-term disability insurance, workers' compensation, transitional work, sick, or military leave, were required to choose their floating holidays after they returned from leave from whatever dates remained available. Mr. Anderson was the only servicemember within his division. Upon information and belief, the inclusion of military leave in this signup system for floating holidays targeted him and interfered with his ability to receive the full benefits of employment to which he is entitled under USERRA.

100.    As a result of the floating holiday policy, Mr. Anderson was unable to take floating

CLASS ACTION COMPLAINT

holidays on his desired dates, because those dates had already been claimed by colleagues with less seniority.

101.    After Mr. Anderson complained about this policy and how it adversely affected him due to his military service, the floating holiday policy was abruptly cancelled with no explanation.

102.    On January 10 and 15, 2019, Mr. Anderson requested military leave to complete required medical testing for the military. The leave was approved, but instead of being classified as military leave, was classified as sick leave and deducted from his sick leave balance.

103.    On January 16, 2019, Mr. Anderson reported to Virginia Harmon, MTA EEO Officer, that several MTA managers subjected him to unwelcome conduct as a result of his military service.

104.    On January 25, 2019, Mr. Anderson reported to Rebecca Cox, MTA EEO Officer, that he had not received appropriate accruals of sick leave, vacation, seniority, and pay raises, and that his military leave had been incorrectly processed as sick leave.

105.    On January 29, 2019, Mr. Anderson submitted a complaint regarding the denial of his military leave to the United States Department of Labor ("DOL"). A DOL representative subsequently contacted the MTA and informed them that required medical examinations were considered service in the uniformed services and protected under USERRA.

106.    As a result of this call from the DOL, the MTA reclassified Mr. Anderson's leave as military leave.

107.    On June 28, 2019, Transportation Director Ed Reiskin sent a letter to Mr. Anderson stating that it appeared that his EEO complaints were untimely, had been previously addressed, or had been resolved, and administratively closed them. Mr. Anderson did not agree that his complaints had been adequately addressed or resolved.

**4.    Mr. Anderson's Service-Related Injury, Resulting Leave, and Efforts to Return to Work**

108.    On May 17, 2017, Mr. Anderson sustained an injury while on active duty training. On June 29, 2017, he was approved to receive care at the expense of the Army. When Mr.

CLASS ACTION COMPLAINT

Anderson was finally able to see an orthopedic specialist, the doctor informed him that due to his injury, he would be required to stay off his knee for 8 weeks and wear a specialized knee brace.

109.    Between August 27 and September 7, 2017, Mr. Anderson took approved vacation from the MTA.  On September 10, 2017, Mr. Anderson took approved paid military leave from the MTA. Between September 11 and 15, 2017, Mr. Anderson took approved compensatory time from the MTA, and on September 17, 2017, Mr. Anderson came to work. On September 18, 2017, Mr. Anderson provided verbal notice that he intended to take military leave without pay. He was unable to provide military orders due to the nature of his leave.  However, he completed a formal Request for Leave on September 26, 2017, and he provided MTA HR with a Military Physician's Statement of Soldier's Incapacitation/Fitness for Duty form certifying his inability to work, which was signed by United States Air Force Faculty Physician Dr. Henry K. Lau on September 21, 2017. He also provided a memorandum from his commanding officer Captain Erik A. Kucich stating that Mr. Anderson had been ordered to stay home while recuperating from his service-related inquiry, which was signed and dated September 27, 2017. The memorandum from Captain Kucich also stated that Mr. Anderson had been placed on compensable status receiving active duty pay from the military.

110.    On October 20, 2017, Mr. Anderson received a communication from an MTA HR employee informing him that he could not be approved for military leave if he did not submit formal orders. Mr. Anderson was told at that time that he needed to submit a request for paid sick leave for an industrial injury and that if he did not do so, he would be placed on AWOL status.

111.    Mr. Anderson did not submit a request for paid sick leave, and due to the nature of his military leave in which he was recuperating from a service-related injury, he was unable to submit formal military orders. As a result, he was placed on AWOL status by the MTA between October 22, 2017, and November 2, 2017. His co-workers were told that he was AWOL, and papers were drawn up for his automatic resignation.

112.    On November 3, 2017, Mr. Anderson had a panic attack due to stress related to his AWOL status and his mistreatment by MTA HR, and had to go to the emergency room to seek medical care.

113.    As a result of these events, Mr. Anderson filed a complaint with the DOL on October 25, 2017, and with the MTA Equal Employment Opportunity ("EEO") office on November 17, 2017. Both complaints alleged that he had been discriminated based on his military status, which is unlawful under the federal USERRA and the California Fair Employment and Housing Act ("FEHA"). Subsequent to these complaints, Mr. Anderson's status was changed from AWOL to unpaid sick leave. He was not permitted to change his status to unpaid military leave due to the City's practice of requiring orders to approve any military leave.

114.    Mr. Anderson remained on unpaid sick leave for several months, based on his doctor's recommendation that he continue to recuperate from his injury. Although he was on active duty in the Armed Forces during this period, Mr. Anderson did not receive differential pay from the MTA during the entire period of this leave.

115.    The final Request for Leave form that Mr. Anderson submitted during his recuperation had an end date of January 1, 2019, which placed the City on notice of Mr. Anderson's intent to return to work on January 2, 2019.  On December 27, 2018, Mr. Anderson reported to the MTA HR Return to Work office and submitted a written application to return to work, along with a written note from his commander certifying his absence from civilian employment. In addition, also on December 27, 2018, Mr. Anderson completed a drug test.

116.    Although the City had substantial advance notice of Mr. Anderson's intent to return to work due to the expiration date on his Request for Leave form, he was forced to delay his return for several days in order to wait for the results of his drug test. This was true even though Mr. Anderson was capable of (and qualified for) legally performing clerical duties prior to receiving the results of the drug test.

117.    On January 6, 2019, Mr. Anderson's drug test came back negative, and he was permitted to return to work on January 8, 2019.

118.    In January 2019, around the same time Mr. Anderson reported back to work, he received a request from the Department of Defense for more information on his AWOL status, which was needed to determine his eligibility for a security clearance. Mr. Anderson requested that the MTA provide an explanation that he had not actually been AWOL. However, the MTA

28                      CLASS ACTION COMPLAINT

failed to provide a timely explanation, and in May 2019, Mr. Anderson lost his position with the Reserves at Fort Gillem and was transferred to the Camp Parks Army Reserve Base in Dublin, CA. The MTA did not provide the letter explaining that Mr. Anderson had never been AWOL until two weeks after the transfer, on May 28, 2019.

### 5.   The City's Denial of Benefits Accruing During Military Service

119.    Under the City's written policies, Mr. Anderson was not permitted to accrue sick leave or vacation during the parts of his military leave that were unpaid.

120.    On October 20, 2017, Mr. Anderson raised concerns related to the accrual of sick leave and vacation time during unpaid military leave to his supervisors via e-mail. These supervisors included Mr. Anderson's supervisor, York Kwan, and several representatives of MTA HR.

121.    On April 23, 2018, Transportation Director Ed Reiskin concluded that MVC § 395(d) entitled Mr. Anderson to accrue sick leave and vacation time during unpaid military leave. Mr. Anderson did not receive his additional adjusted sick leave and vacation time until September 21, 2018. This additional sick leave and vacation time covered all unpaid military leave Mr. Anderson took from August 17, 2015 through September 17, 2017, but did not cover the substantial amount of unpaid leave that Mr. Anderson took to recuperate from his service-related injury.

122.    After Mr. Anderson returned to work from his service-related injury in January 2019, he became aware that he had not received his yearly pay progression on his appointment anniversary date, August 17, 2018. Mr. Anderson alerted MTA HR manager James Cerenio to this discrepancy.

123.    On January 18, 2019, Mr. Anderson met with a payroll manager, who informed him that he would look into the matter. However, Mr. Anderson's requests for a follow-up went unanswered until he filed a complaint with the DOL.

124.    On April 12, 2019, Mr. Anderson received a pay progression raise effective on that date.

125.    On May 17, 2019, the pay progression was made retroactive and Mr. Anderson

1    received backpay for the pay he received since he returned from leave for his service-related

2    injury.

3    C.    **Plaintiff Beverly Sweeney's Employment and Military Leave and the Effects of**
      **Defendants' Policies and Practices on Her**

4

5          126.    Plaintiff Beverly Sweeney joined the United States Army Reserves in July 1976

6    and served in the United States Army Reserves, the California Army National Guard, and the

7    United States Army between July 1976 and 2015. Throughout her military service, she was trained

8    and served at different times as, for example, an advanced combat medic, licensed combat

9    practical nurse, flight medic search and rescue, advanced practice registered nurse, surgical nurse,

10   public health and senior public health nurse, nurse supervisor, and board-certified case manager

11   trainer.

12         127.    On November 6, 2006, Ms. Sweeney was hired by the City as a full-time

13   provisional Field Public Health Nurse at the Health at Home division or unit of the DPH under the

14   City's job classification 2380 Public Health Nurse. Before she received the City's employment

15   offer, Ms. Sweeney interviewed with the medical personnel of the DPH.

16         128.    Effective April 23, 2007, Ms. Sweeney was promoted by the City and the DPH to

17   the full-time Permanent Civil Service status as a Field Public Health Nurse at the DPH under the

18   City's job classification 2380 Public Health Nurse. With the Permanent Civil Service

19   appointment, Ms. Sweeney became eligible to participate in the Pension Plan.

20         129.    In 2007, Ms. Sweeney was certified as an advanced practice registered nurse.

21         1.    **Ms. Sweeney's Periods of Military Service, Military Leave, and Applications**
            **for Reemployment**

22

23         130.    Throughout her employment with the City, Ms. Sweeney was required to take

24   military leave to complete trainings and military drills in the United States Army Reserves and

25   perform active-duty service in the United States Army and the California Army National Guard on

26   several occasions.

27         a.    **Pre-2008 Periods of Military Leave**

28         131.    Between 2006 and 2007, about once a month, Ms. Sweeney had to take military

CLASS ACTION COMPLAINT

leave from work, usually from a Friday through the following Monday, to drive or fly to training sites in Sacramento, San Luis Obispo, and San Diego, California, to participate in military drills and trainings.

132.     From January 28, 2007 to February 10, 2007, Ms. Sweeney took military leave to participate in her annual training as required by the United State Army Reserves. Ms. Sweeney submitted to the City a Request for Leave form for this leave period. The City approved Ms. Sweeney's requested leave on February 27, 2007.

133.     In or about July 2007, DPH Nurse Manager Carlos Salazar told Ms. Sweeney in a meeting that Ms. Sweeney had not seen enough patients because she had been gone a lot. Ms. Sweeney explained to Mr. Salazar that she had military obligations to complete drills and trainings, of which he was aware.

134.     Between August and October 2007, Ms. Sweeney took unpaid military leave to serve in the California Army National Guard Reserves pursuant to its orders to Ms. Sweeney to active duty for special work in the following periods: from August 13 through August 20, 2007, from September 3 through October 7, 2007, and from October 16 through October 24, 2007. For each of these periods, Ms. Sweeney submitted a copy of the City's Request for Leave form and received approval of the leave from the City.

135.     In or about January 2008, Ms. Sweeney was called to active duty in support of Operation Iraqi Freedom from January 15, 2008 through January 20, 2008. Ms. Sweeney was not issued official military orders before this active-duty period but did provide the City with both oral and written advance notice of her active duty. Although the City approved her military leave request, the City via the DPH continued to require her to provide a copy of her military orders before her leave.

136.     In accordance with the City's written policies, Ms. Sweeney did not accrue vacation or sick leave for each period of her unpaid military leave between January 2007 and January 2008.

b.     **Military Leave from February 26, 2008 to November 19, 2010**

137.     On February 14, 2008, Ms. Sweeney was issued a deployment order to active-duty

1   military service pursuant to Presidential Executive Order 13223 of September 14, 2001 in

2   response to the September 11, 2001 terrorist attacks, relieving her from her reserve status and

3   commanding her to report for active service on February 26, 2008 for a period not to exceed 365

4   days.

5   138.   Before engaging in her active-duty military service starting February 26, 2008, Ms.

6   Sweeney provided proper verbal or written notice to the City of her upcoming military service.

7   Although she provided such notice, which complied with her obligation under USERRA to

8   provide advance oral or written notice of military leave, Ms. Sweeney was still required by the

9   City to submit a Request for Leave form along with a copy of her military orders. After Ms.

10  Sweeney submitted the Request for Leave form, by letter dated February 27, 2008, the City

11  informed Ms. Sweeney that she was approved for a period of military leave from February 26,

12  2008 through February 25, 2009. The February 27, 2008 letter stated that should Ms. Sweeney

13  need to extend her leave beyond that date, she must complete another Request for Leave form and

14  that employees who are absent without approved leave for more than five consecutive workdays

15  may be processed as an automatic resignation.

16  139.   While Ms. Sweeney was on military leave, by letter dated April 2, 2008, the City

17  informed Ms. Sweeney that effective April 15, 2008, she would be reassigned from the Health at

18  Home unit to the Maternal Child and Adolescent Health Field Nursing ("MCAH") unit under the

19  same job classification 2380 Public Health Nurse.

20  140.   On January 23, 2009, while still on active duty with the military and on military

21  leave from her employment with the City, Ms. Sweeney was issued an order by the United States

22  Army commanding her to report for active-duty service from February 25, 2009 to February 24,

23  2010. The January 23, 2009 military orders specifically provided that Ms. Sweeney was ordered to

24  active duty in support of the national emergency declared under Presidential Proclamation 7463

25  dated September 14, 2001 ("Presidential Proclamation 7463") in response to the September 11,

26  2001 terrorist attacks, and, as such, Ms. Sweeney's active-duty period was exempt from the 5-year

27  cumulative service limit on reemployment rights under USERRA § 4312(c)(4)(B). On January 29,

28  2009, Ms. Sweeney e-mailed DPH personnel Lannie Adelman and David Palma to inform them

1  that that her active duty had been extended for a year and attached to the e-mail were copies of

2  Ms. Sweeney's military orders for the extended period.

3       141.    On December 15, 2009, Ms. Sweeney was issued an order by the United States

4  Army commanding her to report for active-duty service under Presidential Proclamation 7463

5  from February 25, 2010 to February 24, 2011. The December 15, 2009 military orders specifically

6  provided that the active-duty period is exempt from the 5-year cumulative service limit on

7  reemployment rights under USERRA § 4312(c)(4)(B).

8       142.    In or about February 2009, Ms. Sweeney informed the City that her active duty had

9  been extended. On February 12, 2010, while Ms. Sweeney was on active duty, the City via DPH

10  Personnel Analyst Gina Garcia issued a "Memorandum" to Ms. Sweeney stating that her approved

11  leave of absence would end on February 24, 2010. Although Ms. Sweeney's period of active-duty

12  military service beginning on February 26, 2008 had exceeded 180 days, the February 12, 2010

13  Memorandum stated that Ms. Sweeney was "scheduled to return to duty on 02/25/2010" and must

14  contact her supervisor before February 24, 2010 to request an extension if she could not return to

15  work on February 25, 2010. Citing the San Francisco Civil Service Rule 122.11.1, the

16  Memorandum further stated, with a Request for Leave form attached for Ms. Sweeney, that if her

17  extension request was not granted, she must return to work or resign from her position to avoid

18  being marked Absent Without Leave (AWOL).

19       143.    On February 26, 2010, Ms. Sweeney was issued an order by the United States

20  Army modifying her active-duty period to February 25, 2010 through April 25, 2010. The

21  February 26, 2010 military orders specifically provided that the active-duty period is exempt from

22  the 5-year cumulative service limit on reemployment rights under USERRA § 4312(c)(4)(B). Ms.

23  Sweeney forwarded a copy of the order to the City.

24       144.    On March 5, 2010, while still on active duty, Ms. Sweeney was issued a letter from

25  the City informing her that due to lack of funds or lack of work, she would be laid off from her

26  Public Health Nurse position effective May 8, 2010.

27       145.    On or about March 13, 2010, Ms. Sweeney's union SEIU-Local 1021

28  representative Tonette Garcia wrote to DPH Human Resources ("DPH HR") Director: "you have

issued a layoff notice to Beverly Sweeney, a PHN on active duty military service. SEIU will take all steps necessary to protect her rights, as provided by law."

146.    After receiving the City's February 12, 2010 Memorandum and while still on active duty with the United States Army, on March 18, 2010, Ms. Sweeney submitted at the City and the DPH's request a new Request for Leave form along with her February 26, 2010 military orders to ensure that she would not be marked AWOL by the City.

147.    On March 24, 2010, Ms. Sweeney was issued an order by the United States Army retaining her on active duty until February 17, 2011. The March 24, 2010 military orders specifically provided that the active-duty period is exempt from the 5-year cumulative service limit on reemployment rights under USERRA § 4312(c)(4)(B).

148.    On April 13, 2010, while Ms. Sweeney was on active duty, the City via Ms. Garcia issued another "Memorandum" to Ms. Sweeney stating that her approved leave of absence would end on April 26, 2010. Although Ms. Sweeney's period of active-duty military service beginning on February 26, 2008 had exceeded 180 days, the April 13, 2010 Memorandum stated that Ms. Sweeney was "scheduled to return to duty on 04/26/2010" and must contact her supervisor before February 25, 2010 to request an extension if she could not return to work on April 26, 2010. Citing the San Francisco Civil Service Rule 122.11.1, the Memorandum further stated, with a Request for Leave form attached for Ms. Sweeney, that if her extension request was not granted, she must return to work or resign from her position to avoid being marked AWOL.

149.    After receiving the City's April 13, 2010 Memorandum and while still on active duty with the United States Army, by no later than April 23, 2010, Ms. Sweeney provided the City with a copy of her March 24, 2010 military order from the United States Army.

150.    In a June 7, 2010 letter, DPH HR Director Micki Callahan informed Ms. Sweeney that the City rescinded her layoff from her Field Public Health Nurse position.

151.    In anticipation of her return to her City employment after her active-duty service, beginning about June 2010, Ms. Sweeney applied for four nurse manager positions (Job Classification 2322) with the City and the DPH. She included her resume and claimed veterans preference on each application.

152.     In July 2010, Ms. Sweeney obtained an interview for a Nurse Manager position in the MCAH unit under the administration of the San Francisco General Hospital ("SFGH"). On or about July 27 and 28, 2010, she took time off from her active duty and traveled back to San Francisco to interview for the position. After the interview, Nurse Recruiter Gillian Otway left Ms. Sweeney a voicemail that "everyone on the interview was very impressed with you," that Ms. Sweeney was "the best candidate," but SFGH "hired within."

153.     On August 25, 2010, the City's MCAH Senior Clerk Silvia Woo contacted Ms. Sweeney to schedule an interview for an MCAH Nurse Manager position. Ms. Sweeney explained that she was on active duty and requested a phone interview. Although Ms. Woo promised to forward Ms. Sweeney the interview questions before the interview, she never received those questions. Ms. Sweeney interviewed for the position by phone on August 30, 2010 and did not get the job.

154.     Although Ms. Sweeney met the minimum requirements of the four Nurse Manager positions and was selected for an interview for at least two of the positions she applied for, she was not placed on an eligible list for future related City job opportunities as other candidates selected for an interview usually would be. Further, starting at least as early as June 2010, Ms. Sweeney could not apply for any City position as a current employee as other City employees could but was required by the City to apply as a new employee.

155.     On October 12, 2010, Ms. Sweeney was issued an order by the United States Army. Pursuant to that order, she was released from active duty effective November 19, 2010.

c.     **Reemployment on December 3, 2010 and Military Leave from April 20, 2011 to April 22, 2012**

156.     Ms. Sweeney notified Diane Beetham, her supervisor at the DPH, by phone on November 19, 2010 and Ms. Garcia by e-mail on November 29, 2010 (along with a copy of her military orders) of Ms. Sweeney's intent to apply for reemployment at the City effective December 13, 2010. By letter dated December 4, 2010, pursuant to USERRA, Ms. Sweeney submitted a timely application for reemployment at the City effective December 13, 2010. On December 13, 2010, Ms. Sweeney was reemployed by the City as a Field Public Health Nurse in

1   the MCAH unit of the DPH.

2       157.    Shortly after her return to work at her City employment in December 2010, Ms.

3   Sweeney was assigned a preceptor named Helen Chin, a DPH Field Public Health Nurse. Ms.

4   Chin was annoyed from the beginning by Ms. Sweeney's return to work during the holiday

5   season, told Ms. Sweeney that she had an "accountability issue" and was "on probation" and

6   "people were watching [her]," and mockingly suggested that Ms. Sweeney should have taken

7   more time off for her military service.

8       158.    In a late December 2010 meeting with Ms. Beetham, Ms. Sweeney was questioned

9   by her supervisor why she had been absent from work for over two years and whether there was

10  not a limit on the duration of her military duties. Ms. Sweeney responded that servicemembers can

11  be called to active duty for an extended period. At the end of the meeting, Ms. Beetham gave Ms.

12  Sweeney a military salute, stating "Aye, aye, Captain," which Ms. Sweeney in response told her

13  was inappropriate.

14      159.    On March 3, 2011, Ms. Sweeney was issued an order by the United States Army

15  commanding her to report for active-duty service in support of the national emergency declared

16  under Presidential Proclamation 7463 from April 20, 2011 to April 18, 2012. The March 3, 2011

17  military orders specifically provided that the active-duty period was exempt from the 5-year

18  cumulative service limit on reemployment rights under USERRA § 4312(c)(4)(B).

19      160.    Before engaging in her active-duty military service starting April 20, 2011, Ms.

20  Sweeney provided proper oral or written notice to the City of her upcoming military service.

21  Although having provided notice that complied with her obligation under USERRA to inform her

22  employer of her military leave, Ms. Sweeney was required by the City to submit, and did submit, a

23  Request for Leave form along with a copy of her military order.

24      161.    While on active duty, in or about February 2012, Ms. Sweeney applied for a Public

25  Health Nurse position for the Community Oriented Primary Care Program of the DPH ("the

26  COPC"). On April 13, 2012, Ms. Sweeney interviewed with the COPC nurse supervisor Judith

27  Sansone and two other City employees for the Public Health Nurse position.

28      162.    On March 9, 2012, Ms. Sweeney was issued an order by the United States Army.

Pursuant to the order, she was released from active duty on April 18, 2012.

> **d.   Ms. Sweeney's Convalescence, the City's Attempt to Terminate Her Employment, Her 2014 Reemployment Application, and Military Leave from July 7, 2014 to May 30, 2015**

163.    Ms. Sweeney incurred an injury in the performance of her active-duty military service between April 20, 2011 and April 18, 2012. Immediately after that period of military service, Ms. Sweeney required time to convalesce from the injury before she could return to her civilian employment with the City. On April 26, 2012, Ms. Sweeney informed her City supervisor Ms. Beetham, including providing a doctor's note, that both her military medical doctor and civilian medical provider would like Ms. Sweeney to remain off work until at least her next reevaluation on July 19, 2012 and that "the medical time off request is military related." Afterwards, Ms. Sweeney continued to submit updates by her doctors.

164.    Beginning in or about May 2012, while she was awaiting issuance by the military of official orders retaining her on active duty during her period of convalescence, Ms. Sweeney submitted claims for incapacitation pay provided by the military ("INCAP") to servicemembers injured in the line of duty. As INCAP claims need to be verified by the servicemember's civilian employer for the amount of lost earnings that the servicemembers would have earned had they been able to work, Ms. Sweeney periodically submitted her INCAP claims to City and DPH personnel, including Regina Pera and David Palma, for such verification.

165.    During Ms. Sweeney's period of convalescence from her military service-related injury, in or about April 2012, the City via DPH HR staff Ms. Pera and Ruth Barretto in the DPH required Ms. Sweeney to use her paid sick leave. In or about May 2012, the City began issuing sick leave payments from Ms. Sweeney's paid sick leave accrual at the City. Despite Ms. Sweeney's multiple requests to stop such payments, the City continued to issue them. This not only led to the eventual total payout of her paid sick leave accrual in contravention of her requests, but also resulted in the military denying at least some of Ms. Sweeney's INCAP claims for lost earnings.

166.    On June 5, 2012, Ms. Sansone of the COPC in the DPH notified Ms. Sweeney by

CLASS ACTION COMPLAINT

phone that she had been selected for the COPC Public Health Nurse position that she had interviewed for on April 13, 2012. Ms. Sansone instructed Ms. Sweeney to communicate to her then-supervisor Ms. Beetham regarding transfer to the COPC position. On June 15, 2012, after being notified by Ms. Sweeney of the transfer by e-mail, Ms. Beetham responded, "Gee, thanks for the notification. I will follow up with HR and get back to you." On June 20, 2012, Ms. Sansone rescinded her June 5, 2012 offer to Ms. Sweeney of the COPC position, provided no explanation, and referred Ms. Sweeney to Ms. Pera.

167.    In or about September 2012, while Ms. Sweeney was still convalescing from her military service-related injury, the City required Ms. Sweeney to submit a Request for Leave form requesting sick leave without pay for the period of July 18, 2012 through November 11, 2012. On or about September 4, 2012, Ms. Sweeney submitted a Request for Leave form, on which she informed the City that, under USERRA, for servicemembers convalescing from a service-related injury, the time for them apply for reemployment are extended up to two years.

168.    After receiving Ms. Sweeney's Request for Leave form, by letter dated September 21, 2012, the City via Ms. Pera informed Ms. Sweeney that as a courtesy, the City agreed to approve her request for sick leave from July 18, 2012 to November 11, 2012 (even though such request was not required under USERRA) and that any further request must be denied. In the September 21, 2012 letter, the City asked Ms. Sweeney to consider options such as the American with Disabilities Act and disability retirement. The City further warned that Ms. Sweeney must inform the City of her decision before October 26, 2012, return to work on November 13, 2012, or resign from her Public Health Nurse position in order to avoid being marked AWOL.

169.    Throughout 2012, Ms. Sweeney continued to submit her INCAP claims to the City and the DPH for verification. As such, the City and the DPH had been put on notice continually that she had incurred and was still recovering from a service-related injury under active-duty care, even though the military had not issued an official order to cover her period of convalescence yet.

170.    While Ms. Sweeney was still convalescing from her military-service-related injury, by letter dated December 7, 2012, the City through Ms. Pera informed Ms. Sweeney that the DPH would refer Ms. Sweeney to the Labor Relations Division of the DPH with a recommendation for

1   a medical separation.

2       171.    After receiving the City's December 7, 2012 letter, Ms. Sweeney filed a complaint

3   with the DOL to request assistance in connection with her rights and benefits under USERRA. On

4   January 4, 2013, the DOL wrote to Ms. Pera of the DPH that, because Ms. Sweeney was

5   convalescing for injuries received while on her last period of active duty, she had up to two years

6   (instead of 90 days based on the duration of her service) to apply for reemployment and was not

7   required to request any leave of absence during that recovery period. The DOL further stated that,

8   upon her request for reemployment, she must be reemployed into a proper position and provided

9   with proper pension benefits for the periods of her prior military service, pursuant to USERRA.

10      172.    On March 25, 2013, the DOL wrote to Michael Brown, then-DPH HR Manager

11  and current Executive Officer of the Civil Service Commission, stating that under USERRA, Ms.

12  Sweeney was not required to file the City's leave forms while she was convalescing from her

13  service-related injury, and that she retained her reemployment rights during her convalescence. In

14  or about March 2013, the City temporarily ceased its attempts to terminate Ms. Sweeney's

15  employment with the City.

16      173.    On October 4, 2013, Mr. Brown of the DPH, e-mailed to Susan Gard, Chief of

17  Policy of the City's Human Resources Department regarding Ms. Sweeney's military leave. Mr.

18  Brown stated to Ms. Gard that the DOL had informed the City that USERRA does not allow the

19  City to require Ms. Sweeney to submit "City paperwork (such as leave forms)" and asked whether

20  Ms. Gard was the person who could provide "guidance on how to separate this employee without

21  getting in trouble with the US Department of Labor."

22      174.    In March and April 2014 and by no later than April 16, 2014, Ms. Sweeney,

23  through her prior legal counsel, contacted the City, including the City Attorney of San Francisco,

24  Ms. Beetham, Ms. Pera, to request Ms. Sweeney's reemployment pursuant to USERRA, including

25  a determination of the "escalator position" in which Ms. Sweeney would have been employed if

26  her employment at the City had not been interrupted by her military service.

27      175.    After Ms. Sweeney requested reemployment, the City through its ADA

28  Coordinator Martin Lum sent Ms. Sweeney letters dated April 22, 2014, May 23, 2014, June 12,

2014, and July 3, 2014 requesting that she engage in an interactive process with the City pursuant to the Americans with Disabilities Act ("ADA") and the FEHA. Enclosed with the letters were a "Request for Reasonable Accommodation" form and a "Medical Authorization and Release" form, which required Ms. Sweeney to authorize release of medical information to the City. In none of these letters did the City specify a date for Ms. Sweeney's reemployment, address her rights to prompt reemployment under USERRA, or inform Ms. Sweeney of whether the City had made a determination of her "escalator position" under USERRA and, if it did, what it was. Nor did the City identify any specific position that Ms. Sweeney could return to at the City. Ms. Sweeney did not submit the forms to the City to request accommodation or initiate an interactive process. As of June 2014, the City still had not reemployed Ms. Sweeney.

176.     When the City still had not reemployed her, on June 30, 2014, Ms. Sweeney was issued an order by the United States Army ordering her to and retaining her on active duty from July 7, 2014 to January 1, 2015 to complete medical care and treatment. The June 30, 2014 military order specifically provided that Ms. Sweeney was ordered to and retained on active duty in support of the national emergency declared under Presidential Proclamation 7463, and that the active-duty period was exempt from the 5-year cumulative service limit on reemployment rights under USERRA § 4312(c)(4)(B). The order further provided that "[t]his is a consecutive ASG with no break in service. Soldier retains entitlements from previous orders."  In other words, Ms. Sweeney had been retained on active duty for her period of convalescence from April 19, 2012 through July 6, 2014.

177.     On November 3, 2014, Ms. Sweeney's period of active military duty was extended to February 3, 2015. The November 3, 2014 military orders provided that "[t]his is a consecutive ASG with no break in service. Soldier retains entitlements from previous orders." On December 9, 2014, her period of active duty was extended to August 1, 2015.

178.     On May 15, 2015, Ms. Sweeney was issued an order by the United States Army. Pursuant to that order, she was released from active duty effective May 30, 2015.

1

2

### e.  Ms. Sweeney's Convalescence and May 2017 Reemployment Application, the City's Refusal to Reemploy Her, and Termination of Her Employment Effective May 9, 2018

3

179.    Ms. Sweeney incurred an injury in the performance of her active-duty military

4  service between July 7, 2014 and May 30, 2015. Immediately after that period of military service,

5  Ms. Sweeney required time to convalesce from the injury before she could return to her civilian

6  employment at the City.

7

180.    By letters dated May 20, 2017, Ms. Sweeney submitted to the City an application

8  for reemployment pursuant to USERRA. As she had not heard back from the City, she re-sent her

9  application on May 24, 2017.

10

181.    USERRA § 4313(a) requires that a person entitled to reemployment under the

11  statute be promptly reemployed. Pursuant to the DOL regulations interpreting and implementing

12  USERRA, 20 C.F.R. § 1002.181, an employer must reemploy a person as soon as practicable,

13  which absent unusual circumstances means within two weeks of the employee's application for

14  reemployment.

15

182.    USERRA § 4313(a) also requires that a person entitled to reemployment under the

16  statute must be reemployed in accordance with a specified order of priority. In the case of a period

17  of military service of more than 90 days, the person is entitled to reemployment in the escalator

18  position, or the position in which the person would have been employed if his or her continuous

19  employment had not been interrupted due to uniformed service. Thus, pursuant to USERRA

20  § 4313(a) and 20 C.F.R. § 1002.192, the starting point for determining the proper reemployment

21  position is the escalator position.

22

183.    The City did not respond to Ms. Sweeney's May 20, 2017, reemployment

23  application until more than two weeks later. By letter dated June 6, 2017, the City, through

24  Kimberly Woo in the DPH, acknowledged receipt of Ms. Sweeney's May 20, 2017 reemployment

25  application and requested that Ms. Sweeney submit her military orders, DD Form 214 (*i.e.*, the

26  Certificate of Release or Discharge from Active Duty), or other military documentation "necessary

27  under USERRA" to establish the length and character of Ms. Sweeney's military service and the

28

41                    CLASS ACTION COMPLAINT

date of separation. The letter informed Ms. Sweeney that her pre-service Field Public Health Nurse position was ready to be activated and stated that Ms. Sweeney would first be scheduled for "medical clearance" purportedly required by her pre-service position. The letter did not state whether the City determined her pre-service position to be the escalator position under USERRA in which Ms. Sweeney would have been employed if her employment at the City had not been interrupted by her military service since April 20, 2011, or if the City had made such determination, explain why her pre-service position was the escalator position or otherwise the proper reemployment position to which she was entitled under USERRA. Nor did the letter specify a reemployment date.

184.    By letter dated June 13, 2017, Ms. Sweeney provided the City with a copy of her DD 214 issued by the United States Army and a Report of Separation and Record of Service issued by the Departments of the Army and the Air Force ("the NGB Form 22E"), which stated that the character of her service was honorable. Ms. Sweeney's June 13, 2017 letter also provided the City with notice that, due to the injuries incurred in the performance of her military duties, she would need accommodations if she were reinstated into her prior Public Health Nurse position. Ms. Sweeney's letter did not state that she did not intend to be reemployed promptly by the City pursuant to USERRA or that her reemployment should be delayed until after an interactive process for reasonable accommodation had been initiated or completed with the City.

185.    By letter dated June 20, 2017, Ms. Woo informed Ms. Sweeney that she had been scheduled for a medical clearance appointment for July 3, 2017, a date more than six weeks after Ms. Sweeney submitted her May 20, 2017 reemployment application. The City enclosed with its June 20, 2017 letter a "Medical History Form" that the City instructed Ms. Sweeney to fill out to provide information about any health conditions, symptoms, or medications that could affect or interfere with her ability to perform her job duties and bring the completed form with her to the appointment. The letter also directed Ms. Sweeney to contact a Reasonable Accommodation Coordinator. The letter did not specify a reemployment date. Nor did it state whether the City determined Ms. Sweeney's pre-service Public Health Nurse position to be the escalator position under USERRA, or, if the City had made such determination, explain why her pre-service position

1    was the escalator position or otherwise the proper reemployment position to which she was

2    entitled under USERRA.

3         186.    By letter dated July 3, 2017, Ms. Sweeney provided the City with a June 27, 2017

4    letter by her primary care physician, Dr. H. David Watts. Dr. Watts' letter stated that while Ms.

5    Sweeney had suffered from "service connected disabilities," she has the education, licenses,

6    training, and employment experience to fill positions in nursing in addition to the Field Public

7    Health Nurse position. Specifically, Dr. Watts informed the City that Ms. Sweeney is a current

8    Advanced Practice Registered Nurse ("APRN"), is licensed as a Clinical Nurse Specialist

9    ("CNS"), has current National Board Certifications as a Registered Nurse ("BC-RN") and Case

10   Manager ("BC-CM"), and has experience as a Nursing Supervisor and Nurse Manager.

11        187.    Also enclosed with Sweeney's July 3, 2017 letter was a letter dated June 27, 2017

12   by her prior counsel. The letter informed the City that "[n]othing in USERRA authorizes [a]

13   service member's employer to require 'medical clearance' in order to return to work," and quoted

14   USERRA § 4302(b), which provides that USERRA "supersedes any . . . contract, agreement,

15   policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or

16   benefit . . . including the establishment of additional prerequisites to the exercise of any such right

17   or the receipt of such benefit." The June 27, 2017 letter further stated that the City's "apparent

18   requirement of medical clearance as a pre-condition of Ms. Sweeney's reemployment is a clear

19   violation" of USERRA § 4302(b), and that Ms. Sweeney would not appear for the scheduled

20   medical clearance appointment.

21        188.    Notwithstanding the clear notice provided by the June 27, 2017 letter that

22   USERRA supersedes any additional prerequisites to the exercise of reemployment rights, by letter

23   dated July 10, 2017, the City through Ms. Woo insisted that Ms. Sweeney attend a to-be-scheduled

24   medical clearance appointment because such a requirement is "a standard and routine practice."

25   The letter did not specify a reemployment date. Nor did it state whether the City determined Ms.

26   Sweeney's pre-service Public Health Nurse position to be the escalator position under USERRA,

27   or if the City had made such determination, explain why her pre-service position was the escalator

28   position or otherwise the proper reemployment position to which she was entitled under

1   USERRA.

2   189.   As of November 2017, the City still had not reemployed Ms. Sweeney. Instead, by

3   letter dated November 17, 2017, Ms. Woo on behalf of the City insisted that Ms. Sweeney engage

4   in "the Reasonable Accommodation process." The letter did not specify a reemployment date. Nor

5   did it state whether the City determined Ms. Sweeney's pre-service Public Health Nurse position

6   to be the escalator position under USERRA, or if the City had made such determination, explain

7   why her pre-service position was the escalator position or otherwise the proper reemployment

8   position to which she was entitled under USERRA.

9   190.   As of the end of November 2017, more than six months after Ms. Sweeney's May

10   20, 2017 reemployment application, the City still had not reemployed her. On December 11, 2017,

11   Ms. Sweeney wrote to the Office of the Mayor, the Department of Human Resources, and the

12   DPH stating that she had submitted her reemployment application back on May 20, 2017,

13   requesting the City to provide a date and place for her to report to work at the City, and quoting

14   USERRA § 4302(b).

15   191.   By letter dated December 14, 2017, Ms. Woo on behalf of the City reiterated the

16   requirement for medical clearance, stating that "USERRA does not exempt employees seeking re-

17   employment from compliance with employment requirements, such as training and medical

18   evaluations, that are mandatory for similarly-situated employees." The December 14, 2017, letter

19   informed Ms. Sweeney that she had been scheduled for a new medical clearance appointment for

20   January 17, 2018, and threatened to initiate termination of her City employment if she failed to

21   attend the appointment or request a rescheduled appointment for good cause. The City enclosed

22   with the December 14, 2017, letter a copy of the "Medical History Form." The letter did not

23   specify a reemployment date. Nor did it state whether the City determined Ms. Sweeney's pre-

24   service Public Health Nurse position to be the escalator position under USERRA, or if the City

25   had made such determination, explain why her pre-service position was the escalator position or

26   otherwise the proper reemployment position to which she was entitled under USERRA.

27   192.   By another letter dated December 14, 2017, the City requested Ms. Sweeney to fill

28   out a "Request for Reasonable Accommodation" and a "Medical Authorization and Release,"

which required Ms. Sweeney to authorize release of medical information to the City. The letter did not specify a reemployment date. Nor did it state whether the City determined Ms. Sweeney's pre-service Public Health Nurse position to be the escalator position under USERRA, or if the City had made such determination, explain why her pre-service position was the escalator position or otherwise the proper reemployment position to which she was entitled under USERRA.

193.    By letter dated January 12, 2018, Ms. Sweeney again requested to the City "prompt reemployment to a position, pay, benefits, rights and seniority, that I would have had, had I never left for military service," referenced USERRA § 4302(b) and USERRA's reemployment provisions, and stated that USERRA requires prompt reemployment within 14 days and that the City's failure to promptly reemploy her was willful.

194.    In response, by letter dated February 13, 2018, Ms. Woo informed Ms. Sweeney that the City had reviewed her DD 214 and contacted Employer Support of the Guard and Reserve for assistance with confirming the length of her military service and related periods of convalescence, and clarified that she was not required to provide further documentation regarding the dates and characterization of her military service as a condition for reemployment at the City. However, Ms. Woo stated that Ms. Sweeney had not cooperated with the City to "confirm your qualifications or need for reasonable accommodation" in order to reinstate her in the Public Health Nurse position and had not attended scheduled appointments for medical clearance. The City's letter stated that the DPH would proceed with recommending Ms. Sweeney's medical separation. The letter did not state whether the City determined Ms. Sweeney's pre-service Field Public Health Nurse position to be the escalator position under USERRA, or if the City had made such determination, explain why her pre-service position was the escalator position or otherwise the proper reemployment position to which she was entitled under USERRA.

195.    By letter dated March 26, 2018, DPH Labor Relations Manager Louise Brooks Houston, on behalf of the City and the DPH, informed Ms. Sweeney that the DPH was recommending that she be medically separated from her employment at the City and that the City had scheduled a medical separation meeting for April 10, 2018, to discuss this recommendation with Ms. Sweeney in person.

CLASS ACTION COMPLAINT

196.    On or about March 29, 2018, the City researched and obtained from the California Board of Registered Nursing information about any disciplinary action, administrative disciplinary action, and court order against Ms. Sweeney. The research and information obtained showed to the City that there was no record of any such action or court order.

197.    On April 10, 2018, Ms. Sweeney, along with her husband John Sweeney and her current counsel Vincent Cheng of Block & Leviton LLP, attended the medical separation meeting held by Ms. Brooks and Ms. Woo on behalf of the City and DPH. At the meeting, Ms. Houston stated that to be reemployed, Ms. Sweeney was required to obtain medical clearance and engage in an interactive process under the ADA with the City.

198.    In response, Ms. Sweeney's counsel informed Ms. Houston and Ms. Woo that USERRA supersedes the employer's policies and requires prompt reemployment of a servicemember entitled to reemployment under the statute. He quoted the DOL regulations, 20 C.F.R. § 1002.181, which state that "'prompt reemployment' means as soon as practicable under the circumstances of each case. Absent unusual circumstances, reemployment must occur within two weeks of the employee's application for reemployment." He also stated that the City had failed to promptly reemploy Ms. Sweeney and had not reemployed her for 10 months.

199.    Ms. Houston and Ms. Woo represented that medical clearance was a standard procedure required for all employees in the DPH who have been on leave for more than six months. Although Ms. Brooks represented that the procedure was not for ADA purposes, Ms. Woo, who issued the City's June 6, 2017, letter in acknowledgement of Ms. Sweeney's May 20, 2017, reemployment application and informed Ms. Sweeney of the requirement for medical clearance, asserted that it was part of the interactive process under the ADA. However, Ms. Sweeney's counsel pointed out that Ms. Sweeney's May 20, 2017, reemployment application made no reference to any request for accommodation, and asked Ms. Houston and Ms. Woo why, after receipt of Ms. Sweeney's May 20, 2017, reemployment application, the City did not promptly reemploy Ms. Sweeney within two weeks. Neither Ms. Houston and Ms. Woo provided an answer. Instead, Ms. Woo stated that the July 3, 2017 medical clearance appointment scheduled for Ms. Sweeney was the earliest available appointment.

CLASS ACTION COMPLAINT

200.    At the April 10, 2018 medical separation meeting, Ms. Sweeney's counsel further explained that under USERRA, Ms. Sweeney was entitled to reemployment in the escalator position. Ms. Sweeney's counsel stated that the City must first make a determination about what Ms. Sweeney's escalator position was, that engagement in the interactive process for ADA purposes was premature, and that instead of delaying her reemployment for 10 months, the City should have placed Ms. Sweeney in a temporary position, for which she might not need any accommodation, while the City determined Ms. Sweeney's escalator position.

201.    Throughout the meeting, Ms. Houston and Ms. Woo showed lack of familiarity with USERRA and its requirements, including prompt reemployment and Ms. Sweeney's entitlement to the escalator position. Both Ms. Houston and Ms. Woo stated at the April 10, 2018, medical separation meeting that the City was not questioning Ms. Sweeney's qualifications for the Public Health Nurse position. Ms. Houston stated that the City was following the direction of the City Attorney's Office, including Rafal Ofierski, which had reviewed Ms. Sweeney's matter.

202.    On March 23, 2018, Ms. Sweeney was issued an order by the United States Army amending the order issued to Ms. Sweeney on May 15, 2015, and providing that the entire period of her service with the Army was in support of the national emergency declared under Presidential Proclamation 7463 and was exempt from the 5-year cumulative service limit on reemployment rights under USERRA § 4312(c)(4)(B).

203.    On May 9, 2018, the City issued to Ms. Sweeney a Notice of Non-Punitive Medical Separation, informing her that her employment at the City and the DPH was terminated effective May 9, 2018. The Notice referenced USERRA and the interactive process required under the ADA and FEHA, but the Notice did not explain why the City did not promptly reemploy Ms. Sweeney within two weeks of her May 20, 2017, reemployment application, whether the City had made a determination of the escalator position for Ms. Sweeney under USERRA, or if the City had made such determination, why her pre-service position was the escalator position or otherwise the proper reemployment position to which she was entitled under USERRA. In none of the communications by the City or the DPH to Ms. Sweeney between June 2017 and May 2018 did the City or the DPH identify or mention any non-field Public Health Nurse position under the

47                    CLASS ACTION COMPLAINT

1    City's job classification 2380 Public Health Nurse or any other position with the City in which

2    Ms. Sweeney could be reemployed at least temporarily.

3         204.    On December 13, 2018, the United States Army issued to Ms. Sweeney official

4    orders providing that she was retained on active duty for the period from April 19, 2012 through

5    July 7, 2014 to complete medical care and treatment. Pursuant to these military orders as well as

6    the other military orders issued to Ms. Sweeney between March 3, 2011 and May 15, 2015, Ms.

7    Sweeney was on active duty with the Army during the entire period from April 20, 2011 to May

8    30, 2015.

9    **D.    Defendants' Failure to Properly Credit Ms. Sweeney With Proper Years of Service
         Credit Under the SFERS Pension Plan**

10

11        205.    Pursuant to provisions of Memoranda of Understanding covering Ms. Sweeney's

12   position as a Public Health Nurse, the City is and has been required pay a portion or the full

13   amount of the mandatory employee contributions to the SFERS Pension Plan. These contributions

14   are considered contributions by the employees and are treated as if they are paid by them.

15        206.    Before July 2012, pursuant to the Memoranda of Understanding Between Staff and

16   Per Diem Nurses, SEIU Local 1021 and City and County of San Francisco ("the MOUs") in effect

17   between July 2007 and June 2012, the City paid and was required to pay the full amount of the

18   mandatory employee contributions to the SFERS Pension Plan on behalf of the City employees

19   covered by the MOUs. Thus, employees covered by the MOUs were not required to make

20   employee contributions to receive full service credit under the terms of the SFERS Pension Plan.

21   Among the positions covered by the MOUs were various registered nurse positions, including the

22   Public Health Nurse position held by Ms. Sweeney.

23        207.    Ms. Sweeney became a participant in the SFERS Pension Plan on April 23, 2007.

24        208.    Ms. Sweeney worked for the City in active employment from November 6, 2006

25   through February 22, 2008. She was ordered to and served in active duty from February 25, 2008

26   through November 18, 2010. Ms. Sweeney was reemployed in and returned to her Public Health

27   Position at the City on December 13, 2010 until she was ordered to active duty military service

28   starting April 20, 2011.

48                          CLASS ACTION COMPLAINT

209.    According to the Annual Member Statement issued by the City to Ms. Sweeney for the Plan Year July 1, 2013 through June 30, 2014, and information made available online by SFERS to members of the SFERS Pension Plan, the City has credited Ms. Sweeney with only 3.518 years of credited years under the Plan. As Ms. Sweeney was not required to make employee contributions before July 2012 to receive full service credit under the terms of the Plan, if the City had properly included Ms. Sweeney's periods of military service between 2008 and 2010, she would have been credited with at least 4 years of service credit.

210.    On information and belief, the City has applied the same policy or practice of failing to credit reemployed servicemembers with full years of service credit under the SFERS Pension Plan for periods in which they are on military leave and are not required to make employee contributions to the Plan pursuant to terms of Memoranda of Understanding that require the City to pick up the full amount of such employee contributions.

E.    **Defendants Fail to Provide Required Pay for the First 30 Days of Military Service and Supplemental Pay Thereafter**

211.    MVC §§ 395.01(a) and 395.02 require and have required the City to provide public employees on military leave their salary for the first 30 calendar days of any such leave. The Supplemental Pay Provision of the City's Annual Salary Ordinances effective 2004 and after requires and has required the City to provide, after the first 30 days, Supplemental Pay to employees who are members of the uniformed services and called to active duty in response to the September 11, 2001 terrorist attacks for a period greater than 30 consecutive days.

212.    For the periods from February 26, 2008 to November 19, 2010, from April 20, 2011 to April 18, 2012, and from July 7, 2014 to May 30, 2015 (each of which exceeded 30 consecutive days), Ms. Sweeney was called to active-duty military service pursuant to Presidential Executive Order 13223 of September 14, 2001 and Presidential Proclamation 7463 in response to the September 11, 2001 terrorist attacks. Thus, the City was required to provide Ms. Sweeney with her salary for the first 30 calendar days of each of these periods and Supplemental Pay for the remainder of each of these periods.

213.    Before her active duty, on February 22, 2008, Ms. Sweeney signed an

CLASS ACTION COMPLAINT

"Acknowledgment" form provided by the City agreeing that she was responsible for repaying with interest all Supplemental Pay received under the Supplemental Pay Provision during a period of active duty if she did not return to City employment within 60 days of her release from active duty or within 60 days of a determination that she was fit to return to City employment.

214.    Throughout her periods of military leave between February 2008 and May 2015, Ms. Sweeeney provided the City and the DPH with documentation and information about her military pay.

215.    After Ms. Sweeney started serving her period of active duty beginning February 26, 2008, the City provided her with her salary for the first 15 days (not 30 as required by the MVC) and began issuing Supplemental Pay afterwards. The Supplemental Pay Provision required the City to determine the amount of Supplemental Pay on the basis of the City pay that the servicemember would have received as a City employee had she worked her normal work schedule. However, for the period of military service beginning February 26, 2008, the City used an hourly base pay rate lower than the rate at which Ms. Sweeney should have been compensated had she worked her normal schedule as a Public Health Nurse. This resulted in her receiving a lower amount of Supplemental Pay than she was entitled to under the Supplemental Pay Provision.

216.    In or about February 2009, while Ms. Sweeney was still on active duty, the City abruptly ended her Supplemental Pay. When Ms. Sweeney inquired as to why her Supplemental Pay was ended, Payroll Supervisor of the DPH David Palma responded on March 24, 2009 that Supplemental Pay had been limited to one year by San Francisco voters' approval since 2004. However, the Supplemental Pay Provision that was adopted and incorporated into each of the City's Annual Salary Ordinances for at least 2004 and after imposed no such limitation. It was only after Ms. Sweeney raised the issue to the City's Department of Human Resources that the City resumed Supplemental Pay for the remainder of Ms. Sweeney's period of military service.

217.    For Ms. Sweeney's period of active-duty military service from April 20, 2011 to April 18, 2012, the City did not provide her with her salary for the first 30 days as required by MVC § 395.01(a) or § 395.02.

218.    Pursuant to the Supplemental Pay Provision, the amount of Supplemental Pay is

calculated based on the difference between the servicemember's gross pay at the City and gross military pay. For Ms. Sweeney's period of active-duty military service from April 20, 2011 to April 18, 2012, the City began calculating Ms. Sweeney's Supplemental Pay by including in her gross military pay non-taxable allowances excluded from her gross military income and provided by the military, such as Basic Allowance for Housing ("BAH"), but without also including benefits or allowances provided by the City in her gross City pay. As a result of this practice, for that period of military service, Ms. Sweeney received from the City Supplemental Pay in a significantly reduced amount.

219.    After she filed a complaint with the DOL in December 2012, in or about March 2013, Ms. Sweeney inquired to the DPH's Payroll Manager David Palma about her rights and benefits under USERRA in connection with the correct years of service credit, accrued leave, and Supplemental Pay that she should have received while on military leave. On March 21, 2013, Mr. Palma reminded Ms. Sweeney in writing that she had signed the "Acknowledgment" form, thus suggesting that she was not entitled to any outstanding Supplemental Pay until she returned to City service after she completed her military service.

220.    For Ms. Sweeney's periods of active-duty military service from April 19, 2012 through July 7, 2014 and from July 7, 2014 to May 30, 2015, the City did not provide her with any salary for the first 30 days or any Supplemental Pay thereafter. The City also did not provide her with any salary for her active-duty military service from January 15, 2008 through January 20, 2008.

F.    **Defendants' Violations Were Willful**

221.    As described above, both Mr. Anderson and Ms. Sweeney brought the City's numerous USERRA violations to the attention of various managers employed by the City and their respective departments, including by filing complaints with both City EEO officers and DOL representatives.

222.    Accordingly, the City was on notice of these violations.

223.    Despite Plaintiffs' repeated and sustained efforts to alert the City to its violations of USERRA and to seek redress for themselves and the fellow servicemembers who work for the

1    City, the City has continued its systemic violations and has failed to bring its policies into

2    compliance with USERRA.

3                                              **COUNT I**
                                **Claim for Unlawful Notice Requirement**
4         **By Plaintiffs Anderson and Sweeney on Behalf of the Class Against the City**
                        **(38 U.S.C. § 4312; 20 C.F.R. §§ 1002.85, 1002.87)**
5

6          224.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if

7    fully set forth herein.

8          225.    USERRA, 38 U.S.C. § 4312(a), provides that servicemembers who take leave to

9    perform military service are entitled to USERRA's reemployment rights and benefits if, among

10   other requirements, they provide advance written or verbal notice of their service to their

11   employers.

12         226.    Under 20 C.F.R. § 1002.85(c), such notice may be either written or verbal, and

13   does not need to follow any particular format.

14         227.    In addition, 20 C.F.R. § 1002.87 provides that employees are not required to ask for

15   or receive an employer's permission to perform military service. Mere notice is sufficient.

16         228.    The City maintains a written policy, as set forth in the Civil Service Commission

17   Rules, that employees must submit written notice of requests for military leave of greater than five

18   days to the City for approval, and that they may be terminated for non-compliance with this

19   requirement.

20         229.    The City's written policy violates USERRA § 4312 and the DOL regulations

21   implementing USERRA, 20 C.F.R. §§ 1002.85 and 1002.87.

22         230.    Due to the City's failure to comply with USERRA § 4312 and its implementing

23   regulations, Plaintiffs and other members of the Class faced unlawful discrimination in their

24   attempts to exercise their rights.

25         231.    Upon information and belief, the above violations of USERRA § 4312 and its

26   implementing regulations were willful.  Accordingly, the City should be required to pay liquidated

27   damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

28

CLASS ACTION COMPLAINT

# COUNT II
### Claim for Failure to Provide Accrued Sick Leave and Paid Time Off
### By Plaintiff Sweeney on Behalf of the Class Against the City
### (38 U.S.C. § 4316)

232.    Plaintiff Sweeney incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

233.    USERRA § 4316(b) provides in relevant part that a person who is absent from a position of employment by reason of service in the uniformed services shall be:

> (A) deemed to be on furlough or leave of absence while performing such service; and

> (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service

234.    Accordingly, if an employer provides non-seniority rights and benefits to similarly situated employees when they take comparable types of leave, USERRA § 4316 requires the employer to provide the same rights and benefits to employees when they take military leave. *Id.*; 20 C.F.R. § 1002.150(a). As the USERRA regulations state, the "most significant factor to compare" two types of leave to determine if they are a "comparable form of leave" is "the duration of the leave." 20 C.F.R. § 1002.150(a). In addition, "other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." *Id.*

235.    The City maintains a written policy, as set forth in the Civil Service Commission Rules, that employees who are on furlough shall continue to accrue vacation and sick leave with pay credits at the normal rate, for a maximum of up to ten days per fiscal year.

236.    The City maintains a policy or practice of providing employees who are on jury duty or union leave with the continued accrual of vacation and sick leave with pay credits at the normal rate.

237.    The City maintains a policy or practice of denying employees on unpaid military leave with the continued accrual of vacation and sick leave with pay credits at the normal rate,

even though such vacation and sick leave is provided to employees who are on comparable forms of leave, including furlough, jury duty, or union leave.

238.    For employees of the City, jury duty, union duty, furlough, and military leave are comparable in terms of the duration, purpose, and the ability of the employee to determine whether to take the leave.

239.    The City's policy of refusing to provide for accrual of vacation and paid sick leave to employees who engage in unpaid military leave violates USERRA § 4316(b), because the City denies employees rights and benefits that the City provides to similarly situated employees who are on similar types of leave. Vacation and paid sick leave are "rights and benefits" under USERRA § 4303(2).

240.    Due to the City's failure to comply with USERRA § 4316(b), Plaintiff Sweeney and other members of the Class received lower wages, salaries, and compensation than they would have received had the City complied with USERRA.

241.    Upon information and belief, the above violations of USERRA § 4316(b) and its implementing regulations were willful. Accordingly, the City should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

**<u>COUNT III</u>**
**Claim for Failure to Provide Compensation for Travel Time To and From Military Leave**
**By Plaintiffs Anderson and Sweeney on Behalf of the Class Against the City**
**(Cal. Mil. & Vet. Code §§ 395(a) & 395.01(a))**

242.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

243.    Under Cal. Mil. & Vet. Code § 395.01(a):

> Any public employee who is on temporary military leave of absence for military duty ordered for purposes of active military training, inactive duty training, encampment, naval cruises, special exercises, or like activity as such member, provided that the period of ordered duty does not exceed 180 calendar days including time involved in going to and returning from the duty, and who has been in the service of the public agency from which the leave is taken for a period of not less than one year immediately prior to the day on which the absence begins, is entitled to receive his or her salary or compensation as a public employee for the first 30 calendar days of any such absence.

CLASS ACTION COMPLAINT

244.   Cal. Mil. & Vet. Code § 395(a) specifies that time involved in going to or returning from duty is included in counting the length of military leave.

245.   On information and belief, the City maintains a policy or practice of compensating employees only for days for which they have presented military orders. Time spent traveling to and from military duty is not compensated, even if it is necessary to complete military service.

246.   This policy violates MVC §§ 395.01(a) and 395(a).

247.   Due to the City's failure to comply with MVC §§ 395.01(a) and 395(a), Plaintiffs and other members of the Class received lower wages, salaries, and compensation (including final wages, salaries, and compensation) than they would have received had the City complied with the MVC.  For example, Plaintiff Anderson did not receive pay for his travel time to and from his military unit in Georgia during his military leave from the City. Plaintiff Sweeney did not receive pay but had to use her accrued sick leave (which the City allowed her to do) to cover her time on February 25, 2008 to travel to her active duty at Fort Lewis in Washington.

**COUNT IV**
**Claim for Unlawful Procedure for Pension Buyback**
**By Plaintiffs Anderson and Sweeney on Behalf of the Class Against the City**
**(38 U.S.C. §§ 4302(b) & 4318(b)(1))**

248.   Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

249.   USERRA § 4302(b) provides that it supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by USERRA, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such right or benefit.

250.   USERRA § 4318(b)(1) provides that any employer reemploying a servicemember shall allocate the amount of any employer contribution to the returning servicemember in the same manner and to the same extent that such amount is allocated to other employees during the period of service.

251.   USERRA § 4318(a)(1)(A) and 20 C.F.R. § 1002.260 provide that the employee

1    pension benefit plans covered by USERRA § 4318 include those sponsored by a State or

2    government entity for governmental employees.

3        252.    Pursuant to a written policy, the City requires employees who seek to buy back

4    pension credit for time spent on military leave to submit: (1) induction papers, (2) discharge

5    papers, (3) civil service certification of military leave, (4) Application for Purchase of Military

6    Service (which must be notarized if not completed in the SFERS office), and (5) a record of pay

7    made during military service.  As described above, these procedures prescribe a different manner

8    of receiving employer contributions to returning servicemembers than to other employees who

9    seek to make employee contributions to receive pension credit (either during work periods or non-

10   military leave periods).  In addition, some of these requirements—such as providing a record of

11   military pay during the leave—are not necessary for the City to determine what the employee and

12   employer should contribute for the employee to receive pension credit for the period of military

13   leave.

14       253.    By imposing these procedures on employees who take military leave but not on

15   employees who routinely make employee contributions for pension credit when they are working,

16   the City has not "allocate[d] the amount of the employer contribution for the person in the same

17   manner and to the same extent the allocation occurs for other employees during the period of

18   service." 38 U.S.C. § 4318(b).

19       254.    These unique and unnecessary procedures imposed on employees who take military

20   leave, which are not required of other City employees making pension buybacks, are additional

21   prerequisites to the exercise of rights or benefits that employees have under USERRA § 4318, in

22   violation of USERRA § 4302(b).

23       255.    Upon information and belief, the above violations of USERRA §§ 4302 and 4318

24   and their implementing regulations were willful. Accordingly, the City should be required to pay

25   liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

26

27

28

CLASS ACTION COMPLAINT

**COUNT V**
**Claim for Unlawful Interest on Pension Buybacks**
**By Plaintiffs Anderson and Sweeney on Behalf of the Class Against the City**
**(38 U.S.C. § 4318(b)(2), 20 C.F.R. § 1002.263)**

256.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

257.     As set forth in 38 U.S.C. § 4318 and its implementing regulations, including 20 C.F.R. § 1002.263, it is unlawful to require or permit an employee returning from military leave to make up a missed retirement contribution in an amount that exceeds the amount he or she would have been permitted or required to contribute if he or she had not taken military leave.

258.     Pursuant to a written policy, the City requires all employees, including employees returning from military leave, to pay interest on any pension buybacks they make in order to receive pension credit for a period of military leave.

259.     This policy violates USERRA § 4318 and its implementing regulations.

260.     Due to the City's failure to comply with USERRA and its implementing regulations, Plaintiffs and other members of the Class received lower wages, salaries, and compensation than they would have received had the City complied with USERRA.

261.     Upon information and belief, the above violations of USERRA § 4318 and its implementing violations were willful.  Accordingly, the City should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

**COUNT VI**
**Claim for Unlawful Reemployment Procedure**
**By Plaintiffs Anderson and Sweeney on Behalf of the Class Against the City**
**(38 U.S.C. §§ 4312, 4313; 20 C.F.R. § 1002.181)**

262.     Plaintiffs Anderson and Sweeney incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

263.     USERRA guarantees "prompt" reemployment for servicemembers returning to their civilian jobs.  38 U.S.C. § 4313(a); 20 C.F.R. § 1002.181; *see also* 38 U.S.C. § 4312(a) (guaranteeing reemployment for employees who meet certain requirements); *id.* § 4301(a)(2) (stating that the purpose of USERRA is "providing for the prompt reemployment of" employees

CLASS ACTION COMPLAINT

who perform military service).

264.   USERRA's implementing regulations define "prompt reemployment" as reemployment as soon as practicable under the circumstances of each case. 20 C.F.R. § 1002.181.

265.   Because all City employees on military leave for more than five days must complete a Request for Leave and Leave Protections form or risk termination, the City ordinarily is on notice of the date that employees intend to return to work following any military leave of more than five days from the very beginning of their military service.

266.   The City provides notice to employees that they must begin the return-to-work process at least five days prior to their intended return to work. This procedure requires employees to report to the applicable human resources return to work unit in person.

267.   Employees returning from military leave of more than five days are required to comply with these procedures.

268.   Compliance with the City's return-to-work procedures routinely requires employees who are returning from military leave of more than five days to take an additional day off from work and to use some other type of leave, such as vacation, to receive pay for that additional day. This is because employees must appear in person at the relevant human resources department to fill out paperwork prior to being reemployed. Completing the necessary paperwork may also require employees to get several additional signatures, all of which involve in-person trips to the locations where the relevant signatories work.

269.   Compliance with these return-to-work procedures frequently requires employees to submit to medical examinations or other testing. Employees returning from military leave are not permitted to start work until such testing has been completed, even to perform clerical work.

270.   These policies violate USERRA §§ 4312 and 4313, because they routinely deny employees prompt reemployment by delaying the reemployment of employees who are willing, able, and qualified to work.

271.   Due to the City's failure to comply with USERRA and its implementing regulations, Plaintiffs and other members of the Class received lower wages, salaries, and compensation than they would have received had the City complied with USERRA.

CLASS ACTION COMPLAINT

272.    Upon information and belief, the above violations of USERRA § 4312 and its implementing violations were willful.  Accordingly, the City and MTA should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

**COUNT VII**
**Claim for Denial of a Proper Reemployment Position**
**By Plaintiff Sweeney on Behalf of the Class Against the City**
**(38 U.S.C. §§ 4312, 4313; 20 C.F.R. §§ 1002.191-192)**

273.    Plaintiff Sweeney incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.`

274.    USERRA § 4313(a) requires that a person entitled to reemployment under USERRA § 4312 must be promptly reemployed in "the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service," or, in cases of leave that lasts more than 90 days, "a position of like seniority, status and pay, the duties of which the person is qualified to perform." This is known as the "escalator position." 20 C.F.R. § 1002.191. An employee may be reemployed at the position he or she was employed in on the date of the commencement of military service only if the employee is not qualified for the escalator position after reasonable efforts by the employer to qualify the employee. 38 U.S.C. § 4313(a)(1)-(2).

275.    Upon information and belief, the City has a policy or practice of reemploying returning servicemembers at the position of employment they held on the date of the commencement of military service, without considering whether they are eligible and qualified for their escalator positions and without taking any reasonable efforts to qualify them for their escalator position.

276.    This policy or practice violates USERRA §§ 4312 and 4313, because it fails to consider whether employees can be reemployed in escalator positions and/or fails to reemploy employees in their escalator positions, including when employees would be qualified to perform an escalator position with or without reasonable efforts made by the City to qualify such employees.

277.    Due to the City's failure to comply with USERRA and its implementing

CLASS ACTION COMPLAINT

regulations, Plaintiff Sweeney and other members of the Class received lower wages, salaries, and compensation than they would have received had the City complied with USERRA.

278.     Upon information and belief, the above violations of USERRA §§ 4312 and 4313 and their implementing violations were willful.  Accordingly, the City and MTA should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

<u>COUNT VIII</u>
**Claim for Discrimination, Retaliation, and Hostile Work Environment
By Plaintiff Anderson Individually Against the City and the MTA
(38 U.S.C. § 4311)**

279.     Plaintiff Anderson incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

280.     USERRA § 4311(a) prohibits an employer from discriminating against any person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform uniformed service with respect to, among other things, employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

281.     USERRA § 4311(b) prohibits an employer from discriminating in employment against or taking any adverse employment action against any person because such person has taken an action to exercise a right provided by USERRA or enforce a protection afforded any person under USERRA.

282.     The City and the MTA discriminated against Mr. Anderson on the basis of his military service by, *inter alia*, maintaining policies and practices that deprived him of his rights under USERRA; forcing him to delay his start date with the City and lose seniority as a result of his military service; requiring him to miss or delay military service to avoid termination; subjecting him to a hostile work environment where his commitment and performance to the City were questioned due to his military obligations and service; classifying him as AWOL while he was on protected military leave; and denying him the rights and privileges of employment afforded to his civilian colleagues, including rights related to his seniority and the ability to take

1  vacation when he wanted. Mr. Anderson's military service and obligations were a motivating

2  factor behind the City's decisions to take these adverse actions against Mr. Anderson.

3      283.    The City and the MTA retaliated against Mr. Anderson for exercising and

4  attempting to enforce his rights under USERRA by, *inter alia*, maintaining policies and practices

5  that deprived him of his rights under USERRA; forcing him to delay his start date and lose

6  seniority as a result of his military service; requiring him to miss or delay military service to avoid

7  termination; subjecting him to a hostile work environment where his commitment and

8  performance to the City were questioned due to his military obligations and service; classifying

9  him as AWOL while he was on protected military leave; and denying Mr. Anderson the rights and

10  privileges of employment afforded to his civilian colleagues, including rights related to his

11  seniority. Mr. Anderson's exercising and attempting to enforce his rights under USERRA were a

12  motivating factor behind the City's decisions to take these adverse actions against Mr. Anderson.

13      284.    Due to the City and the MTA's failure to comply with USERRA, Mr. Anderson

14  received lower wages, salary, and compensation than he would have received had the City

15  complied with USERRA, and was terminated from his position in the Reserves and forced to

16  transfer to a new unit.

17      285.    Due to the City and the MTA's failure to comply with USERRA, Mr. Anderson

18  suffered from emotional distress.

19      286.    Upon information and belief, the above violations of USERRA § 4311 and its

20  implementing regulations were willful. Accordingly, the City and MTA should be required to pay

21  liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

22  **COUNT IX**
**Claim for Discrimination and Hostile Work Environment**
23  **By Plaintiff Anderson Individually Against the City and the MTA**
**(California Military and Veterans Code § 394)**
24

25      287.    Plaintiff Anderson incorporates the allegations contained in the foregoing

26  paragraphs as if fully set forth herein.

27      288.    Section 394 of the MVC proscribes discrimination against members of the military

28  or Navy forces of the state or of the United States because of that membership or military service.

61                    CLASS ACTION COMPLAINT

MVC § 394(b).

289.    The City and the MTA discriminated against Mr. Anderson on the basis of his military service by, *inter alia*: forcing him to delay his start date with the City and lose seniority as a result of his military service; requiring him to miss or delay military service to avoid termination; subjecting him to a hostile work environment where his commitment and performance to the City were questioned due to his military obligations and service; classifying him as AWOL while he was on protected military leave; and denying him the rights and privileges of employment afforded to his civilian colleagues, including rights related to his seniority and the ability to take vacation when he wanted.  Mr. Anderson's military service and obligations were a motivating factor behind the City's decisions to take these adverse actions against Mr. Anderson.

290.    By discriminating against Plaintiff Anderson because of his membership and service in the military, the City and the MTA violated the California Military and Veterans Code § 394.

## COUNT X
### Claim for Discrimination and Hostile Work Enviornment
### By Plaintiff Anderson Individually Against the City and the MTA
### (Cal. Gov't Code § 12940(a))

291.    Plaintiff Anderson incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

292.    Section 12940 of the California Government Code makes it unlawful for any employer "to discriminate against the person in compensation or in terms, conditions, or privileges of employment" as a result of, among other characteristics, military and veteran status.

293.    The City and the MTA discriminated against Mr. Anderson on the basis of his military service by, *inter alia*: forcing him to delay his start date with the City and lose seniority as a result of his military service; requiring him to miss or delay military service to avoid termination; subjecting him to a hostile work environment where his commitment and performance to the City were questioned due to his military obligations and service; classifying him as AWOL while he was on protected military leave; and denying him the rights and privileges of employment afforded to his civilian colleagues, including rights related to his seniority and the

ability to take vacation when he wanted.  Mr. Anderson's military service and obligations were a motivating factor behind the City's decisions to take these adverse actions against Mr. Anderson.

294.    Plaintiff Anderson received a Right to Sue notice from the California Department of Fair Employment and Housing on November 26, 2019.

295.    By discriminating against Plaintiff Anderson because of his membership and service in the military, the City and the MTA violated the California Government Code § 12940(a).

**COUNT XI**
**Claim for Unlawful Reemployment Procedure and Failure to Reemploy**
**By Plaintiff Sweeney Individually Against the City and the DPH**
**(38 U.S.C. §§ 4302(b), 4312; 20 C.F.R. §§ 1002.180 & 1002.181)**

296.    Plaintiff Sweeney incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

297.    USERRA § 4302(b) provides that USERRA supersedes any state law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by USERRA, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

298.    Pursuant to USERRA § 4312(a), any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to reemployment rights and benefits and other employment benefits under USERRA so long as: (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer; (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; (3) the person serves honorably; and (4) the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of USERRA § 4312(e).

299.    Pursuant to USERRA § 4312(e)(2)(A) and (f)(1) and 20 C.F.R. § 1002.123, a servicemember who is hospitalized for or convalescing from an illness or injury incurred in or

CLASS ACTION COMPLAINT

1  aggravated during the performance of service in uniformed services must request reemployment

2  within a period of up to two years and provide documentation, such as a DD 214 Certificate of

3  Release or Discharge from Active Duty.

4       300.    Pursuant to the DOL regulations, 20 C.F.R. §§ 1002.180 and 1002.181, the

5  employer must promptly reemploy the employee when he or she returns from a period of service,

6  where "prompt reemployment" means as soon as practicable under the circumstances of each case.

7  Absent unusual circumstances, reemployment must occur within two weeks of the employee's

8  application for reemployment.

9       301.    Ms. Sweeney met all the applicable preconditions for reemployment rights and

10  benefits and other employment benefits provided by USERRA, because (1) Ms. Sweeney

11  provided advance notice of her military service beginning July 7, 2014; (2) the cumulative length

12  of her military leave with the City is less than five years, as her periods of military service from

13  February 26, 2008 to November 19, 2010, from April 20, 2011 to April 18, 2012, and from July 7,

14  2014 to May 30, 2015 were exempt from the 5-year cumulative service limit on reemployment

15  rights under USERRA; (3) Ms. Sweeney performed her military service honorably; (4) as she was

16  convalescing for a service-connected injury after her release from active duty on May 30, 2015,

17  she submitted her timely May 20, 2017 reemployment application within two years; and (5) she

18  provided the City and DPH with documentation including her DD 214.

19       302.    Although Ms. Sweeney met all the applicable preconditions for reemployment

20  rights and benefits and other employment benefits provided by USERRA, the City and the DPH

21  established and imposed on Ms. Sweeney the additional prerequisites of completing medical

22  clearance and engaging in an interactive process with the City and the DPH for a reasonable

23  accommodation, even though Ms. Sweeney was qualified to perform one or more positions

24  (including non-field Public Health Nurse positions) without a reasonable accommodation. Ms.

25  Sweeney declined to agree to comply with such additional prerequisites prohibited by USERRA

26  before her reemployment.

27       303.    The City and the DPH did not reemploy Ms. Sweeney within two weeks of her

28  reemployment application. Instead of promptly reemploying her, the City and the DPH terminated

Ms. Sweeney's employment and denied her reemployment.

304.    By establishing additional prerequisites to the exercise of Ms. Sweeney's USERRA rights, denying her reemployment, and/or terminating her, the City and the DPH violated USERRA §§ 4302(b) and 4312 and 20 C.F.R. §§ 1002.180 and 1002.181.

305.    Upon information and belief, the above violations of USERRA §§ 4302(b) and 4312 and their implementing regulations were willful.  Accordingly, the City and DPH should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

## COUNT XII
### Claim for Failure to Provide Proper Pension Credits
### By Plaintiff Sweeney on Behalf of Subclass I Against the City
### (38 U.S.C. §§ 4318(a) & (b))

306.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

307.    USERRA § 4318(a)(2)(B) provides that each period served by a person in the uniformed services must, upon reemployment, be deemed to constitute service with the employer or employers maintaining an employee pension benefit plan for the purposes of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

308.    USERRA § 4318(b)(1) provides that an employer reemploying a person is, with respect to a period of service described in USERRA § 4318(a)(2)(B), liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits described in § 4318(a)(2), and must allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service.

309.    20 C.F.R. § 1002.260 provides that the employee pension benefit plans covered by USERRA include those sponsored by a State or government entity for governmental employees.

310.    Pursuant to provisions of the Memoranda of Understanding that covered positions held by the Subclass and were in effect during their periods of qualified military service, the City was required to pick up and pay the full amount of mandatory employee contributions to the

1    SFERS Pension Plan.

2        311.    On information and belief, the City has applied a policy or practice of failing to pay

3    and allocate to the SFERS Pension Plan the full amount of mandatory employee contributions on

4    behalf of the Subclass for periods of qualified military leave and thus failing to credit them with

5    proper years of service credit under the SFERS Pension Plan.

6        312.    By failing to make full required pension allocations on behalf of the Subclass for

7    periods of military service in the same manner and to the same extent that the same allocations

8    were required for other employees, and failing to provide the Subclass with proper years of service

9    credit for the purpose of determining their benefit accruals under the Plan, the City violated and

10   continues to violate USERRA §§ 4318(a) and (b).

11       313.    Upon information and belief, the above violations of USERRA § 4313(a) and its

12   implementing regulations were willful.  Accordingly, the City and DPH should be required to pay

13   liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

14                                    **COUNT XIII**
                    **Claim for Discrimination in Denial of Benefits of Employment**
15          **By Plaintiffs Anderson and Sweeney on Behalf of Subclass II Against the City**
                                    **(38 U.S.C. § 4311)**
16

17       314.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if

18   fully set forth herein.

19       315.    USERRA § 4311(a) prohibits an employer from discriminating against any person

20   who is a member of, applies to be a member of, performs, has performed, applies to perform, or

21   has an obligation to perform uniformed service with respect to, among other things, employment,

22   reemployment, retention in employment, promotion, or any benefit of employment by an

23   employer on the basis of that membership, application for membership, performance of service,

24   application for service, or obligation.

25       316.    Pursuant to MVC § 395.01(a), the City is required to pay City employees who are

26   on military leave other than temporary military leave his or her salary or compensation as a City

27   employee for the first 30 calendar days of any such leave.

28       317.    Pursuant to MVC § 395.02, the City is required to pay City employees who are on

1  military leave other than temporary military leave his or her salary or compensation as a City

2  employee for the first 30 calendar days of any such leave.

3        318.    Pursuant to the Supplemental Pay Provision of the City's Annual Salary Ordinance,

4  the City must provide Supplemental Pay to a City employee who (i) is a member of the reserve

5  corps of the United States Armed Forces, National Guard or other uniformed service organization

6  of the United States and (ii) is called to active military duty (iii) on or after September 11, 2001

7  (iv) in response to the September 11, 2001 terrorist attacks, international terrorism, conflict in Iraq

8  or related extraordinary circumstances (v) for a period greater than 30 consecutive days.

9        319.    Pursuant to the Supplemental Pay Provision, the City must provide employees on

10  qualified military leave Supplemental Pay in the amount of the difference between the amount of

11  the individual's gross military pay and the amount of gross pay the individual would have received

12  as a City employee, had the officer or employee worked his or her normal work schedule.

13        320.    On information and belief, the City has engaged in a policy or practice of failing to

14  provide members of Subclass II: (a) their full City salary or compensation for the first 30 days of

15  their periods of qualified military leave; (b) Supplemental Pay after those 30 days; (c)

16  Supplemental Pay calculated at the correct hourly rate that members of the Subclass would have

17  received had they worked their normal work schedule at the City; and/or (d) Supplemental Pay

18  calculated without including non-taxable allowances provided by the military or, to the extent that

19  such allowances are included, by also including benefits or allowances provided by the City.

20        321.    On information and belief, as a result of the City's refusal to adequately provide all

21  benefits mandated by California Military and Veterans Code §§ 395.01(a) and 395.02 and the

22  Supplemental Pay Provision, members of Subclass II were also denied these and other benefits of

23  employment, including adequate accrual of vacation and sick leave, which they would have been

24  entitled to if they had not been called to active duty.

25        322.    Based on the legislative and City mandates to provide the benefits at issue and the

26  City and the DPH's obligations, statements, and actions, the military status and service and

27  obligation to perform such service of Subclass II, including the extended length of their leaves,

28  which were non-temporary and often exceeded 30 days, was a motivating factor in the City's

CLASS ACTION COMPLAINT

1    actions.

2    323.    By denying Subclass II benefits of employment because of their military status or

3    service, the City violated USERRA, 38 U.S.C. § 4311.

4    324.    Upon information and belief, the above violations of USERRA § 4311 and its

5    implementing regulations were willful. Accordingly, the City should be required to pay liquidated

6    damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

7    **<u>COUNT XIV</u>**
     **Claim for Violation of the Supplementation of Military Pay Provision**
8    **By Plaintiffs Anderson and Sweeney on Behalf of Subclass II Against the City**
     **(City and County of San Francisco Annual Salary Ordinances)**
9

10    325.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if

11    fully set forth herein.

12    326.    Pursuant to the Supplemental Pay Provision, the City must provide employees on

13    qualified military leave Supplemental Pay in the amount of the difference between the amount of

14    the individual's gross military pay and the amount of gross pay the individual would have received

15    as a City employee, had the officer or employee worked his or her normal work schedule.

16    327.    On information and belief, the City has engaged in a policy or practice of failing to

17    provide members of Subclass II (a) Supplemental Pay; (b) Supplemental Pay calculated at the

18    correct hourly rate that members of the Subclass would have received had they worked their

19    normal work schedule at the City; and/or (c) Supplemental Pay calculated without including non-

20    taxable allowances provided by the military or, to the extent that such allowances are included, by

21    also including benefits or allowances provided by the City.

22    328.    On information and belief, as a result of Defendants' refusal to adequately provide

23    all benefits mandated by the Supplemental Pay Provision, members of Subclass II were also

24    denied other benefits of employment, including adequate accrual of vacation and sick leave, which

25    they would have been entitled to if they had not been called to active duty.

26    329.    This policy or practice violates the Supplemental Pay Provision of the City's

27    Annual Salary Ordinances.

28    330.    Due to the City's failure to comply with the Supplemental Pay Provision, Plaintiffs

CLASS ACTION COMPLAINT

and other members of Subclass II received lower wages, salaries, and compensation than they would have received had the City complied with the Supplemental Pay Provision.

### COUNT XV
**Claim for Failure to Pay Wages When Due**
**By Plaintiff Sweeney Individually Against the City**
**(Cal. Labor Code §§ 201(a) & 203(a))**

331.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

332.    California Labor Code § 201(a) provides that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

333.    California Labor Code § 203(a) provides that if an employer willfully fails to pay any wages of an employee who is discharged in accordance with California Labor Code § 201(a), the wages of the employee will continue as a penalty from the due date thereof at the same rate until paid or an action therefor is commenced, but the wages will not continue for more than 30 days.

334.    Pursuant to the Supplemental Pay Provision, the City must provide employees on qualified military leave Supplemental Pay in the amount of the difference between the individual's gross military pay and the gross pay the individual would have received as a City employee, had the individual worked his or her normal work schedule.

335.    Pursuant to the Supplemental Pay Provision, a City employee's entitlement to any Supplemental Pay or other compensation or benefits provided under the Provision is conditioned upon the employee (a) returning to City service within 60 days of release from active duty or (b) if the individual is not fit for employment at that time, returning to City service within 60 days of a determination that the individual is fit for employment. Otherwise, the individual must repay any Supplemental Pay received, as a loan payable to the City with interest at a rate commencing 90 days after the individual's release from active service or return to fitness for employment.

336.    Ms. Sweeney returned to fitness for employment with the City on May 20, 2017, the date she submitted her application for reemployment. On that date, she became entitled to the

outstanding Supplemental Pay and other compensation and benefits that the City failed to provide her with under the Supplemental Pay Provision for any of her periods of military leave between February 2008 and May 2015, subject to the repayment limitations or conditions of the Provision.

337.    The City terminated Ms. Sweeney's employment on May 9, 2018. By failing to pay Ms. Sweeney on May 9, 2018 or after the outstanding Supplemental Pay and other compensation and benefits for any of her periods of military leave between February 2008 and May 2015, the City violated and continues to violate California Labor Code § 201(a).

338.    Upon information and belief, the above violation of California Labor Code § 201(a) was willful. Accordingly, the City should be required to pay waiting time penalties pursuant to California Labor Code § 203(a).

**COUNT XVI**
**Claim for Discrimination and Retaliation**
**By Plaintiff Sweeney Individually Against the City and DPH**
**(38 U.S.C. § 4311)**

339.    Plaintiff Sweeney incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

340.    USERRA § 4311(a) prohibits an employer from discriminating against any person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform uniformed service with respect to, among other things, employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

341.    USERRA § 4311(b) prohibits an employer from discriminating in employment against or taking any adverse employment action against any person because such person has taken an action to exercise a right provided by USERRA or enforce a protection afforded any person under USERRA.

342.    The City and the DPH discriminated against Ms. Sweeney on the basis of her military service by, *inter alia*, maintaining policies and practices that deprived her of her rights under USERRA and the MVC; forcing her to submit written military orders and written leave

CLASS ACTION COMPLAINT

1    requests to avoid being placed on AWOL status or terminated while she was on extended active-

2    duty military service; subjecting her to a hostile work environment where her commitment and

3    performance to the City were questioned due to her military obligations and service and her

4    military leave was judged negatively in her performance evaluation and considered as a nuisance

5    to her colleagues and as a subject of ridicule; repeatedly threatening employment termination or

6    separation while she was on active duty or convalescing from service-related injuries; and denying

7    her the rights and privileges of employment afforded to her civilian colleagues, including rights

8    related to seniority, future job opportunities, promotions, and advancement. Ms. Sweeney's

9    military service and obligations were a motivating factor behind the City and the DPH's decisions

10   to take these adverse actions against Ms. Sweeney.

11        343.    The City and the DPH retaliated against Ms. Sweeney for exercising and

12   attempting to enforce her rights under USERRA by, *inter alia*, maintaining policies and practices

13   that deprived her of her rights under USERRA and the MVC; forcing her to submit written

14   military orders and written leave requests to avoid being placed on AWOL status or terminated

15   while she was on extended active-duty military service; subjecting her to a hostile work

16   environment where her commitment and performance to the City were questioned due to her

17   military obligations and service and her military leave was judged negatively in her performance

18   evaluation and considered as a nuisance to her colleagues and as a subject of ridicule; repeatedly

19   threatening employment termination or separation while she was on active duty or convalescing

20   from service-related injuries; and denying her the rights and privileges of employment afforded to

21   her civilian colleagues, including rights related to seniority, future job opportunities, promotions,

22   and advancement. Ms. Sweeney's exercising and attempting to enforce her rights under USERRA

23   were a motivating factor behind the City and the DPH's decisions to take these adverse actions

24   against Ms. Sweeney.

25        344.    Due to the City and the DPH's failure to comply with USERRA, Ms. Sweeney

26   received lower wages, salary, and compensation than she would have received had the City and

27   the DPH complied with USERRA.

28        345.    Due to the City and the DPH's failure to comply with USERRA, Ms. Sweeney

1  suffered from emotional distress.

2      346.    Upon information and belief, the above violations of USERRA § 4311 and its

3  implementing regulations were willful.  Accordingly, the City and DPH should be required to pay

4  liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

5                                **COUNT XVII**
                **Claim for Discriminatory and Retaliatory Termination**
6                   **of Employment and Denial of Reemployment**
                **By Plaintiff Sweeney Individually Against the City and DPH**
7                                **(38 U.S.C. § 4311)**

8      347.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if

9  fully set forth herein.

10      348.    USERRA § 4311(a) prohibits an employer from discriminating against any person

11  who is a member of, applies to be a member of, performs, has performed, applies to perform, or

12  has an obligation to perform uniformed service with respect to, among other things, employment,

13  reemployment, retention in employment, promotion, or any benefit of employment by an

14  employer on the basis of that membership, application for membership, performance of service,

15  application for service, or obligation.

16      349.    USERRA § 4311(b) prohibits an employer from discriminating in employment

17  against or taking any adverse employment action against any person because such person has

18  exercised a right under USERRA or has taken an action to enforce a protection afforded any

19  person under USERRA.

20      350.    Plaintiff Sweeney filed her complaint with the DOL in December 2012 to enforce

21  her USERRA rights and benefits and made numerous statements to the DOL, the City, and the

22  DPH opposing the many actions that the City and the DPH took in violation of USERRA and the

23  hostility that the City and the DPH had for Ms. Sweeney's military status and service and her

24  obligation to perform such service, including the extended length of her leave (ranging between 11

25  months and 32 months for each period of service). Ms. Sweeney's exercising her rights to take

26  military leave, seek reemployment rights and benefits, and receive pension credit under USERRA

27  was a motivating factor in the City and DPH's decision and adverse employment action to

28

terminate Ms. Sweeney. In addition, Ms. Sweeney's complaint and statements opposing the City and the DPH's USERRA violations were a motivating factor in the City and DPH's decision and adverse employment action to terminate Ms. Sweeney.

351. By terminating Ms. Sweeney because of her military status or service and because she exercised and attempted to enforce her USERRA rights, the City and the DPH violated USERRA § 4311(a)-(b).

352. Upon information and belief, the above violations of USERRA § 4311 and its implementing regulations were willful. Accordingly, the City and DPH should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

## COUNT XVIII
### Claim for Discriminatory Termination of Employment and Denial of Reemployment
### By Plaintiff Sweeney Individually Against the City and the DPH
### (California Military and Veterans Code § 394)

353. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

354. Section 394 of the MVC proscribes discrimination against members of the military or Navy forces of the state or of the United States because of that membership or military service, including discharging a person because of his or her membership or service in the military. MVC § 394(b), (d).

355. The City and the DPH terminated Plaintiff Sweeney's employment at the City because of her repeated and extended periods of service in the military and her ongoing membership in the military. In addition, the City and the DPH terminated her because she filed a complaint with the DOL against the City in December 2012 to enforce her USERRA rights and benefits and because she submitted an application for reemployment in May 2017 to exercise her rights to reemployment under USERRA. The City and the DPH's actions were motivated by and in retaliation for Ms. Sweeney's actions.

356. By terminating Plaintiff Sweeney and failing to reemploy her because of her membership and service in the military, the City and the DPH violated the MVC § 394.

**COUNT XIX**
**Claim for Wrongful Termination in Violation of Public Policy**
**By Plaintiff Sweeney Individually Against the City and the DPH**

357.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

358.    California law allows for a "tort cause of action for wrongful termination that violates public policy." *Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003).

359.    The elements of this tort are a public policy that is: (1) delineated in either constitutional or statutory provisions; (2) "public" in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental.

360.    Both USERRA and the MVC were enacted to encourage service in the armed forces of the United States and in the National Guard of California by providing broad protections for servicemembers' civilian employment. These statutes inure to the benefit of the public, are well-established, and constitute fundamental, longstanding policies. They are codified in statute and promote the nation's military preparedness. Hundreds of thousands of military reservists rely on such laws to perform service in national guard and reserve units.

361.    On May 9, 2018, the City and the DPH illegally terminated Plaintiff Sweeney from her employment after she had submitted an application for reemployment to exercise her rights under USERRA in violation of public policy expressed in the 38 U.S.C. § 4301, *et seq*. and the MVC § 394.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and respectfully request that this Court award the following relief:

A.    Declare that Defendants' policies and practices described herein violated the rights of Plaintiffs, the Class, and the Subclasses under USERRA, the MVC, the Supplementation of Military Pay Provision of the City's Annual Salary Ordinances, the California Labor Code, the California Government Code, and California public policy;

CLASS ACTION COMPLAINT

B.      Declare that Plaintiffs, the Class, and the Subclasses were and are entitled under USERRA, the MVC, the Supplementation of Military Pay Provision of the City's Annual Salary Ordinances, the California Labor Code, the California Government Code, and California public policy to the rights and benefits of employment protected therein;

C.      Require Defendants to fully compensate Plaintiffs, the Class, and the Subclasses for the loss of wages, compensation, and benefits suffered by reason of Defendants' failure to comply with the provisions of USERRA, the MVC, the City's Annual Salary Ordinances, the California Labor Code, the California Government Code, and California public policy by awarding an amount that fully compensates Plaintiffs, the Class, and the Subclasses for their losses, including any lost earnings, wages, or benefits, and/or by awarding Plaintiffs and the Class pre-judgment and post-judgment interest and statutory penalties on the amount of any earnings and benefits that were required to be provided under USERRA, the MVC, the City's Annual Salary Ordinances, the California Labor Code, the California Government Code, and California public policy but which Defendants failed to provide (whichever amount is greater);

D.      Order that Plaintiffs and the Class be retroactively reinstated to the "escalator positions" to which they were entitled under USERRA, and that they receive commensurate backpay for any period of time during which the City failed to cause them to return to work in such escalator positions;

E.      Order Defendants to comply with USERRA and its implementing regulations, the MVC, the Supplementation of Military Pay Provision of the City's Annual Salary Ordinances, the California Labor Code, the California Government Code, and California public policy;

F.      Require that Defendants City and DPH offer reemployment to Plaintiff Sweeney;

G.      Require that Defendants City and DPH compensate Plaintiff Sweeney for any losses of wages or benefits in the amount to be proven at trial, including back pay, front pay, pre- and post-judgment interest, lost benefits of employment, negative tax consequences of any award, and for Defendants' failure to comply with USERRA, the MVC, the California Labor Code and/or California public policy and pay statutory penalties;

H.      Require that Defendants City and MTA compensate Plaintiff Anderson for any

CLASS ACTION COMPLAINT

1    losses of wages or benefits in the amount to be proven at trial, including back pay, pre- and post-

2    judgment interest, lost benefits of employment, negative tax consequences of any award, and for

3    Defendants' failure to comply with USERRA, the MVC, and/or the California Government Code

4    and pay statutory penalties;

5           I.      Enjoin Defendants from taking any future retaliatory actions against Plaintiffs or

6    other servicemembers who attempt to exercise or enforce their rights under USERRA, the MVC,

7    the City's Annual Salary Ordinances, the California Labor Code, the California Government

8    Code, and/or California public policy;

9           J.      Order the Defendants to pay Plaintiffs and all members of the Class and the

10   Subclasses liquidated damages in an amount to be determined at trial, 38 U.S.C. § 4323(d)(1)(C);

11          K.      Require the Defendants to pay attorneys' fees and costs pursuant to 38 U.S.C.

12   § 4323(h), MVC § 394(g), California Labor Code § 218.5, and other law, and/or this Court's

13   inherent equitable authority and powers, and order the payment of reasonable attorneys' fees and

14   expenses of this action to Plaintiffs' Counsel on the basis of the common benefit and/or common

15   fund doctrine (or other applicable law) out of any money or benefit recovered for the Class or

16   Subclasses in this Action; and

17          L.      Pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, grant all relief to

18   which Plaintiffs, the Class or Subclasses are entitled including, without limitation, allowing for

19   any adverse tax consequence multiplier to be applied to any jury award.

20                                        **JURY DEMAND**

21          Plaintiffs hereby demand a trial by jury.

22

23

24

25

26

27

28

Respectfully submitted,

Dated: February 13, 2020

By: _____

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel Williams Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, California 94111
Telephone:   (415) 638-8800
Facsimile:    (415) 638-8810
Email:        jsagafi@outtengolden.com
Email:        rdempsey@outtengolden.com

R. Joseph Barton (Cal. Bar No. 212340)
BLOCK & LEVITON LLP
1735 20th St NW
Washington DC 20009
Telephone:  (202) 734-7046
Facsimile:   (617) 507-6020
Email:        jbarton@blockesq.com

Vincent Cheng, (Cal. Bar No. 230827)
BLOCK & LEVITON LLP
100 Pine St., Suite 1250
San Francisco, CA 94111
Telephone:    (415) 968-8999
Facsimile:     (617) 507-6020
Email:          vincent@blockesq.com

*Attorneys for Plaintiffs and the proposed Class Members*