1  R. Joseph Barton (Cal. Bar No. 212340)
   THE BARTON FIRM LLP
2  1633 Connecticut Avenue NW, Suite 200
   Washington DC 20009
3  Telephone: (202) 734-7046
   Email: jbarton@thebartonfirm.com
4
5  Michael J. Scimone (admitted *pro hac vice*)
   OUTTEN & GOLDEN LLP
6  685 Third Avenue
   25th Floor
7  New York, NY 10017
   Telephone: (212) 245-1000
8  mscimone@outtengolden.com
9  *Attorneys for Plaintiffs and the Proposed Class*
10 *Additional counsel listed on signature page*

11        **UNITED STATES DISTRICT COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**
12        **SAN FRANCISCO/OAKLAND DIVISION**

13 DEVON ANDERSON and BEVERLY L.          Case No. 4:20-cv-01149-DMR
   SWEENEY on behalf of themselves and all
14 others similarly situated,               **PLAINTIFFS' & CLASS COUNSEL'S**
                                            **NOTICE OF MOTION AND MOTION**
15             *Plaintiffs*,                **FOR ATTORNEYS' FEES &**
                                            **REIMBURSEMENT OF LITIGATION**
16                                          **EXPENSES**
17        v.
                                            Date: December 12, 2024
18 THE CITY AND COUNTY OF SAN              Time: 1:00 p.m.
   FRANCISCO, SAN FRANCISCO               Courtroom: 4, 3rd Floor
19 DEPARTMENT OF PUBLIC HEALTH, and        Judge: Donna M. Ryu
   SAN FRANCISCO MUNICIPAL
20 TRANSPORTATION AGENCY,
21             *Defendants*,
22
23        and
24 SAN FRANCISCO EMPLOYEES'
   RETIREMENT SYSTEM
25
               *Nominal Defendant*
26
27
28

**Table of Contents**

I.    Introduction ................................................................................................. 1

II.   Background .................................................................................................. 1

      A.    The Claims & Relief Sought. ............................................................ 1

      B.    Settlement Negotiations of the Class Claims .................................... 2

      C.    The Class Action Settlement Agreement. ......................................... 4

      D.    Negotiation of the Individual Claims. ............................................... 5

      E.    Negotiation of Attorneys' Fees & Expenses. .................................... 5

      F.    Agreement Regarding Attorneys' Fees and Expenses. ...................... 6

      G.    Amount of Attorneys' Fees & Expenses Incurred Through October 19, 2024. .................................................................................................... 6

III.  Plaintiffs' Counsel Are Entitled to An Award of Attorneys' Fees & Expenses. ................. 7

      A.    Plaintiffs Are Prevailing Parties Under USERRA. ........................... 7

      B.    Plaintiffs Are Entitled to Attorneys' Fees & Expenses Under USERRA § 4323(h) Incurred After May, 28, 2024. .............................................. 8

      C.    The Fee Agreement Entitled Class Counsel to Attorneys' Fees & Expenses Incurred Before May 28, 2024. ........................................ 9

      D.    The Requested Fee is "Presumptively Reasonable" When it is At or Less Than Counsel's Actual Lodestar. ............................................. 9

IV.   The Lodestar Method is the Appropriate Metric For Awarding Attorneys' Fees. ........... 10

V.    The Requested Fees are Reasonable Under the Lodestar Method. .................................. 12

      A.    Plaintiffs' Counsel's Hourly Rates Are Reasonable. ........................ 12

            1.    The Rates Are Reasonable Based on the Forum Rates. ............. 13

            2.    The Rates Are Reasonable Based on Paying Clients. ............... 15

            3.    The Hourly Rates Are Reasonable Based on Prior Awards. ..... 16

      B.    The Hours Expended Are Reasonable ............................................. 17

      C.    None of the Factors Support Reducing the Lodestar. ...................... 18

|    |    |      |                                                                           |    |
|----|----|------|---------------------------------------------------------------------------|----|
|    |    | 1.   | Time & Labor Required. .................................................. | 19 |
|    |    | 2.   | Preclusion of Other Employment ........................................ | 19 |
|    |    | 3.   | The Customary Fee. ..................................................... | 19 |
|    |    | 4.   | Time Limitations Imposed by the Client or the Circumstances. ........ | 20 |
|    |    | 5.   | Results Obtained. ....................................................... | 20 |
|    |    | 6.   | The Undesirability of the Case. ......................................... | 20 |
|    |    | 7.   | The Nature and Length of the Professional Relationship with the Client. .................................................................. | 20 |
|    |    | 8.   | Awards in Similar Cases. ................................................ | 20 |
|    | D. |      | Proportionality of Fees to the Monetary Recovery Is Not a Consideration. ......... | 21 |
|    | E. |      | Plaintiffs' Counsel Are Entitled to Fees In Connection with This Motion. .......... | 23 |
| VI. |   |      | There is No Indication of Collusion Between the Parties ................................. | 23 |
| VII. |  |      | Plaintiffs and Class Counsel are Entitled to Reimbursement of Litigation Expenses. .................................................................. | 24 |
| VIII. | |      | Conclusion ................................................................. | 25 |

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Am. Small Bus. League v. United States Small Bus. Admin.*,
5      No. 21-cv-02877-DMR, 2023 WL 12080957 (N.D. Cal. Jan. 18, 2023) ...........................8, 23

*Anderson v. AB Painting & Sandblasting Inc.*,
6      578 F.3d 542 (7th Cir. 2009) .............................................................................................21

7
*In re Bluetooth Headset Prod. Liab. Litig.*,
8      654 F.3d 935 (9th Cir. 2011) .......................................................................................10, 24

9
*Blum v. Stenson*,
      465 U.S. 886 (1984) ..........................................................................................................12
10
*Bratton v. FCA US LLC*,
11      No. 17-cv-01458-JCS, 2018 WL 5270581 (N.D. Cal. Oct. 22, 2018) ...................................13

12
*Bravo v. City of Santa Maria*,
13      810 F.3d 659 (9th Cir. 2016) .............................................................................................20

14
*Camacho v. Bridgeport Fin. Inc.*,
      523 F.3d 973 (9th Cir. 2008) ....................................................................................12, 14, 19
15

16
*Cancilla v. Ecolab, Inc.*,
      No. 12-cv-03001-JD, 2016 WL 54113 (N.D. Cal. Jan. 5, 2016)............................................25

17
*Carlotti v. ASUS Comput. Int'l*,
18      No. 18-cv-03369-DMR, 2020 WL 3414653 (N.D. Cal. June 22, 2020) ................................15

19
*Castaneda v. Burger King Corp.*,
      No. C 08–04262 WHA, 2010 WL 2735091 (N.D.Cal. July 12, 2010)...................................25
20

21
*Chalmers v. City of Los Angeles*,
      676 F.Supp. 1515 (C.D. Cal. 1987) ...............................................................................19, 20

22
*Chapman v. NJ Props. Inc.*,
23      No. 5:16-cv-02893-EJD, 2019 WL 3718585 (N.D. Cal. Aug. 7, 2019)...................................7

24
*Chaudhry v. City of Los Angeles*,
      751 F.3d 1096 (9th Cir. 2014) ...........................................................................................13
25

26
*Chen v. Chase Bank USA, N.A.*,
      No. 19-cv-01082-JSC, 2020 WL 3432644 (N.D. Cal. June 23, 2020)..............................10, 25

27

28

*City of Burlington v. Dague,*
    505 U.S. 557 (1992) ................................................................................................ 9

*City of Riverside v. Rivera,*
    477 U.S. 561 (1986) .............................................................................................. 21

*Clarkson v. Alaska Airlines, Inc.,*
    No. 2:19-CV-0005-TOR, 2025 WL 243024 (E.D. Wash. Jan. 15, 2025) ............. 20

*Cottle v. Plaid Inc.,*
    No. 20-cv-03056-DMR, 2022 WL 2829882 (N.D. Cal. July 20, 2022) ........ 15, 24, 25

*Cunningham v. Wawa, Inc.,*
    No. CV 18-3355, 2021 WL 1626482 (E.D. Pa. Apr. 21, 2021) ............................ 16

*Dowd v. City of L.A.,*
    28 F.Supp.3d 1019 (C.D. Cal. 2014) .................................................................... 24

*Downes v. Unum Life Ins. Co. of Am.,*
    No. 23-cv-01643-RS, 2024 WL 4876940 (N.D. Cal. Nov. 22, 2024) ................... 14

*Erickson Prods Inc. v. Kast,*
    No. 13-cv-05472-DMR, 2024 WL 5011954 (N.D. Cal. Dec. 6, 2024) ................. 14

*Felton v. City of Adrian,*
    No. 11-00632-CV-W-JTM, 2013 U.S. Dist. LEXIS 31100 (W.D. Mo. Mar. 6,
    2013) ..................................................................................................................... 21

*In re Ferrero Litig.,*
    583 F. App'x 665 (9th Cir. 2014) ......................................................................... 24

*Forks v. SPM, Inc.,*
    No. 98-15650, 1999 WL 439441 (9th Cir. 1999) ................................................ 22

*Foster v. Adams and Assoc., Inc.,*
    No. 18-cv-02723-JSC, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ................... 16

*Fox v. Vice,*
    563 U.S. 826 (2011) .............................................................................................. 12

*Franchek v. Workrite Ergonomics, LLC,*
    No. 16-cv-02789-JSW (DMR), 2022 WL 3137928 (N.D. Cal. May 9, 2022) ...... 23

*G.F. v. Contra Costa City,*
    No. 13 CV 3667, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ......................... 24

*Gonzalez v. City of Maywood,*
    729 F.3d 1196 (9th Cir. 2013) .............................................................................. 17

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
    No. 05-05437 RBL, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008)....................................11

*Gusman v. Unisys Corp.*,
    986 F.2d 1146 (7th Cir. 1993) ...............................................................................13, 15, 16

*Hammond v. Antinoro*,
    No. 3:17-cv-00618-CLB, 2020 WL 10575293 (D. Nev. June 22, 2020) ...............................22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .........................................................................................11

*Hanson v. Cty. of Kitsap*,
    No. 13-5388, 2015 U.S. Dist. LEXIS 85990 (W.D. Wash. June 30, 2015) ...........................21

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...............................................................................................25

*Hensley v. Eckhart*,
    461 U.S. 424 (1983).............................................................................................12, 17, 20

*Huhmann v. FedEx Corp.*,
    No. 13-cv-00787-BAS(NLS), 2015 WL 6127198 (S.D. Cal. Oct. 16, 2015)....................8, 19

*Hurtado v. Rainbow Disposal Co.*,
    No. 17-01605 JLS DFM, 2021 WL 2327858 (C.D. Cal. May 21, 2021) ...............................16

*In re Hyundai and Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) (*en banc*) .............................................................................11

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016) .....................................................................................12, 13

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir.1975) ...............................................................................................18

*Lopez v. Uber Techs., Inc.*,
    No. 17 Civ. 6255, 2018 U.S. Dist. LEXIS 196430 (N.D. Cal. Nov. 14, 2018)......................17

*Lou v. Am. Honda Motor Co., Inc.*,
    No. 16-cv-04384-JST, 2025 WL 1359067 (N.D. Cal. May 9, 2025) ...................11, 13, 14, 22

*Loughner v. Univ. of Pittsburgh*,
    260 F.3d 173 (3d Cir. 2001)..............................................................................................15

*Lowery v. Rhapsody International, Inc.*,
    75 F.4th 985 (9th Cir. 2023) .....................................................................................21, 22, 23

*Marshall v. Northrop Grumman Corp.*,
   No. 2:16-CV-06794-AB-JCX, 2020 WL 5668963 (C.D. Cal. Sept. 18, 2020).......................16

*McGrath v. Cty. of Nev.*,
   67 F.3d 248 (9th Cir. 1995) ........................................................................................17

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ..........................................................................18, 19, 24

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
   No. 19-cv-07087-DMR, 2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) ..................................9

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ........................................................................................17

*NE. Women's Ctr. v. McMonagle*,
   889 F.2d 466 (3d Cir. 1989)............................................................................................21

*Norton v. LVNV Funding, LLC*,
   No. 18-cv-05051-DMR, 2022 WL 562831 (N.D. Cal. Feb. 24, 2022) (Ryu, J.)............. *passim*

*Oliveria v. Language Line Servs.*,
   767 F.Supp.3d 984 (N.D. Cal. 2025) ..............................................................................20

*In re Outlaw Labs., LP Litig.*,
   No.: 18-cv-840-GPC-BGS, 2023 WL 6522383 (S.D. Cal. Oct. 5, 2023)..............................22

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010)........................................................................................9, 12

*Perez v. Discover Bank*,
   No. 20 Civ. 6896-SI, 2024 WL 4340397 (N.D. Cal. Sept. 23, 2024)....................................16

*PFA Ins. Mktg. Litig.*,
   No. 4:18-CV-03771 YGR, 2024 WL 1145209 (N.D. Cal. Feb. 5, 2024)..............................22

*Richard S. v. Dep't of Dev. Servs. of State of Cal.*,
   317 F.3d 1080 (9th Cir. 2003) .......................................................................................7

*Ricksecker v. Ford Motor Co.*,
   No. 21-cv-04681-HSG (SK), 2023 WL 1542199 (N.D. Cal. Feb. 3, 2023)....................13, 14

*Rollins v. Dignity Health*,
   No. 13-CV-01450-JST, 2022 WL 20184568 (N.D. Cal. July 15, 2022).............................14

*S.G. v. City of Los Angeles*,
   No. LA CV17-09003 ........................................................................................7

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. 2020) ............................................................................14

*Schwarz v. Sec'y of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995) ..................................................................................13

*Shuman v. SquareTrade Inc.*,
   No. 20-cv-02725-JCS, 2023 WL 2311950 (N.D. Cal. Mar. 1, 2023) ....................10

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ..............................................................................10

*Sorensen v. City of Calhoun*,
   No. 1:11-CV-307, 2016 WL 716885 (E.D. Tenn. Feb. 22, 2016) .........................21

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ................................................................................12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................12

*Staub v. Proctor Hosp.*,
   562 U.S. 411 (2011) .............................................................................................22

*Tole v. Amazon.com, Inc.*,
   No. C22-594 MJP, 2025 WL 474248 (W.D. Wash. Feb. 12, 2025) ..................7, 8

*Tomazzoli v. Sheedy*,
   804 F.2d 93 (7th Cir. 1986) ..................................................................................15

*In re Toys R Us-Del., Inc -FACTA Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) .........................................................................11

*TPCO US Holding, LLC v. Fussell*,
   No. 23-cv-01324-EMC, 2023 WL 5111986 (N.D. Cal. Aug. 9, 2023) .................12

*Trs. of the Const. Indus. and Laborers Health and Welfare Tr. v. Redland Ins.
   Co.*,
   460 F.3d 1253 (9th Cir. 2006) ..............................................................................25

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ................................................................................13

*Van Gerwen v. Guar. Mut. Life Co.*,
   214 F.3d 1041 (9th Cir. 2000) ...........................................................................9, 12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..............................................................................12

*Ward v. Shelby Cnty.*,
No. 2:20-cv-02407-JPM-cgc, 2023 WL 6050229 (W.D. Tenn. Sept. 15, 2023)...............21, 22

*Wu v. BMW of N. Am., LLC*,
No. 21-cv-03485-DMR, 2022 WL 2802979 (N.D. Cal. July 18, 2022) ................................13

*Zamora Jordan v. Nationstar Mortg., LLC*,
No. 14 CV 175, 2019 WL 1966112 (E.D. Wash. May 2, 2019) ...........................................13

*Zamora v. Lyft, Inc.*,
No. 16 Civ. 2558, 2018 U.S. Dist. LEXIS 166618 (N.D. Cal. Sept. 26, 2018).......................17

**Statutes**

38 U.S.C. § 4323(h)(2) .....................................................................................................7, 24

*Action for Employment Discrimination Based on Military Service under the
Uniformed Services Employment and Reemployment Act* 2d 1 (Oct. 2025
Update)...............................................................................................................................8

Cal. Govt. Code § 12940(a) .....................................................................................................2

Cal Labor Code § 201(a) ..........................................................................................................2

Cal. Mil. & Vet. Code § 395(a) ...............................................................................................2

Cal. Mil. & Vet. Code § 395.01(a) ..........................................................................................2

USERRA § 4311 .......................................................................................................................2

USERRA § 4312 ....................................................................................................................1, 2

USERRA § 4313 .......................................................................................................................2

USERRA § 4316 .......................................................................................................................1

USERRA § 4318 .......................................................................................................................2

USERRA § 4323 ................................................................................................................ *passim*

**Other Authorities**

20 C.F.R. § 1002.310 ..............................................................................................................24

Fed. R. Civ. P. 23 ...................................................................................................1, 9, 23, 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Index of Exhibits**

Declaration of R. Joseph Barton with the following attachments:

Exhibit 1:    Colin M. Downes Biography

Exhibit 2:    Marie-Lise Baroutjian Biography

Exhibit 3:    Ming Siegel Biography

Exhibit 4:    Vincent Cheng Biography

Exhibit 5:    Matthew Smith Biography

Exhibit 6:    Agreement Regarding Attorneys' Fees & Litigation Expenses Through May 28, 2024

Exhibit 7:    The Barton Firm Time Report January 1, 2023 to May 28, 2024

Exhibit 8:    The Barton Firm Time Report May 29, 2024 to October 19, 2025

Exhibit 9:    Block & Leviton Time Report through December 31, 2022

Declaration of Michael J. Scimone with the following attachment:

Exhibit A:    Outten & Golden's Time Records

Declaration of Beverly L. Sweeney with the following attachments:

Exhibit 1:    HP Instant Ink Printing History through May 28, 2024

Exhibit 2:    Pacer Monitor Charges through May 28, 2024

Exhibit 3:    HP Instant Ink Printing History After May 28, 2024

Exhibit 4:    Pacer Monitor Charges After May 28, 2024

Declaration of Daniel Feinberg

Declaration of Todd Jackson

Declaration of David A. Lowe

**Summary of Class Counsel's Lodestar**

| Fees Through May 28, 2024 | | | | | |
|---|---|---|---|---|---|
| **Lodestar** | **Class** | **Sweeney** | **Anderson** | **Both** | **Total** |
| Barton | $68,848.50 | $6,673.00 | | $57,462.50 | $132,984.00 |
| Block & Leviton | $436,727.00 | $271,915.00 | | $54,290.00 | $762,932.00 |
| Outten Golden | $47,005.50 | | $49,505.00 | $334,436.00 | $430,946.50 |
| **Total** | **$552,581.00** | **$278,588.00** | **$49,505.00** | **$446,188.50** | **$1,326,862.50** |

| Fees After May 28, 2024 | | | | | |
|---|---|---|---|---|---|
| **Lodestar** | **Class** | **Sweeney** | **Anderson** | **Both** | **Total** |
| Barton | $200,870.50 | $1,890.50 | | $ 44,449.00 | $247,210.00 |
| Block & Leviton | | | | | |
| Outten Golden | $44,425.50 | | | $19,092.00 | $63,517.50 |
| **Total** | **$245,296.00** | **$1,890.50** | | **$63,541.00** | **$310,727.50** |

**Summary of Class Counsel's Expenses**

| The Barton Firm Expenses | | |
|---|---|---|
| Expense Category | **Amount through 05/28/2024** | **Amount 05/29/2024 to Present** |
| Pacer | $12.20 | $20.00 |
| Shipping | | $51.77 |
| Website Domain | | $14.00 |
| Travel Lodging | | $954.92 |
| Travel Meals | | $18.69 |
| Travel Transport | | $1,436.53 |
| Total | $12.20 | $2,495.91 |
| **The Barton Firm's Total Expenses** | | **$2,508.11** |

| Outten & Golden Expenses | |
|---|---|
| **Category** | **Costs** |
| Mailing and Printing | $1,273.35 |
| Legal Research | $1,378.93 |
| Document Hosting & eDiscovery | $1,024.18 |
| Expert fees | $5,000.00 |
| Filing fees | $718.40 |
| **Total** | **$9,394.86** |

1
2
3
4
5
6
7

| Block & Leviton Expenses | |
|---|---|
| **Expense Category** | **Amount** |
| Delivery | $506.95 |
| Notice Administration | $1,087.99 |
| Pacer | $30.75 |
| Postage | $0.57 |
| Printing/Copying | $304.87 |
| Travel/Transport | $6,028.62 |
| Travel/Meals | $681.26 |
| Travel/Lodging | $1,689.09 |
| | |
| **Total** | **$10,330.10** |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3    PLEASE TAKE NOTICE THAT on December 11, 2025 at 1:00 p.m., in Courtroom 4,

4  3rd Floor of the Oakland Division of the United States District Court, Northern District of

5  California, 1301 Clay Street, Oakland California, Class Counsel and Plaintiffs Devon Anderson

6  and Beverly L. Sweeney will move, and hereby do move, the Court to enter an order

7    1.    Pursuant to USERRA, 38 U.S.C. 4323(h) and Rule 54(d) of the Federal Rules of

8  Civil Procedure, to award Plaintiffs attorneys' fees and expenses for fees and expenses incurred

9  and to the extent that such amounts are for fees or expenses incurred in connection with the

10  claims of the Class, approve those attorneys' fees and expenses pursuant to Rule 23(h) of the

11  Federal Rules of Civil Procedure.

12    2.    To the extent that the previously-entered agreement with City remains in effect,

13  approval of the Agreement Regarding Attorneys' Fees & Expenses Through May 28, 2024 ("Fee

14  Agreement") pursuant to Rule 23(h) of the Federal Rules of Civil Procedure.[1]

15    3.    Allowing Plaintiffs and Class Counsel to file another motion for attorneys' fees

16  and expenses incurred after the Final Approval Hearing as provided by the Section XI.B of the

17  Class Action Settlement Agreement for any attorneys' fees and expenses incurred after October

18  19, 2025.

19    This Motion is supported by the accompanying Memorandum of Law, the Declaration of

20  R. Joseph Barton ("Barton Decl."), the Declaration of Michael Scimone ("Scimone Decl."), the

21

22

23

24

25

26

27

[1] As explained in the Motion for Preliminary Approval, the parties previously reached an agreement on the amount that the City would pay for attorneys' fees and expenses incurred through May 28, 2024 (subject to approval by the Court). ECF No. 122 at 7:4-6. Under the terms of the Agreement, the City was required to pay this amount into an Escrow Account at least 14 days before the deadline to file this motion (i.e. by no later than October 7, 2025). Fee Agmt. § I.1 As explained in the Barton Declaration, the City failed to do so, and Plaintiffs' counsel has sent them a notice of termination of the Fee Agreement. Barton Decl. ¶ 34-39. Plaintiffs' counsel has proposed that the City agree to pay the lost interest on the amount, but the City has not yet agreed to that request. *Id.* ¶ 36-37. If no agreement is reached then Plaintiffs seek their full lodestar for the period through May 28, 2024 (as well as lodestar after May 29, 2024).

28  PLS.' NOTICE OF MOTION FOR FEES & EXPENSES
CASE NO. 4:20-cv-01149-DMR        1

Declaration of Beverly Sweeney ("Sweeney Decl."), the Declaration of Daniel Feinberg ("Feinberg Decl."), the Declaration of David Lowe ("Lowe Decl."), the Declaration of Todd Jackson ("Jackson Decl."), the Class Action Settlement Agreement, the Agreement Regarding Attorneys' Fee & Expenses Through May 28, 2024 and the Proposed Order filed herewith, all of the pleadings and documents on file with the Court in this action, and further evidence and argument as may be submitted prior to the Court's decision on this motion.

Pursuant to Local Rule 54-5(b)(1), Plaintiffs state as follows:

1.    With respect to the amount of attorneys' fees and expenses incurred on or before May 28, 2024, Plaintiffs and Defendants previously reached an agreement on the amount of attorneys' fees and expenses that Defendants would pay for attorneys' fees and expenses through May 28, 2024, which is set forth in a written agreement entitled "Agreement Regarding Attorneys' Fees & Expenses Through May 28, 2024." Barton Decl. Ex. 6. That The Fee Agreement required the City to pay $977,916.12 into an Escrow Account by no later than 14 days before the deadline for Class Counsel to file any motion for attorneys' fees and expenses. *Id.* § I.1. That deadline was October 7, 2025. *See id.* The City did not make that payment. Barton Decl. ¶ 36. Section III.4 of that Agreement provides that if the City has not funded the amount set forth in Section I.1, Class Counsel has the right to withdraw and void that agreement providing written notice to Defendants' counsel prior to the deadline for Class Counsel to file their Motion for Attorneys' Fees & Expenses. Fee Agmt § III.4. In that event, Plaintiffs then are entitled to file a motion that is not subject to the limitation of the amount set forth in the Agreement. *Id.* Section III.5 of the Agreement also provides that a Termination Notice will void the agreement only if the Parties fail to reach written agreement to modify the Agreement within 30 days of the Termination Notice although Section III.4 suggests that this 30 days may not apply to withdrawl under Section III.4. As the City has not timely funded $977,916.12 and has not responded to Plaintiffs' proposal about a resolution of this issue, pursuant to Section III.4 of the Agreement Regarding Attorneys' Fees & Expenses through May 28, 2024, Class Counsel provided counsel for the City with written notice to withdraw from the Agreement under Section

III.4 on October 21. 2025. While Section III.4 suggests that the Notice is effective immediately and the 30 day effective date in Section III.5 may not apply to a withdrawl under Section III.4, Plaintiffs' counsel advised the City that it was willing to agree that the 30 days applies to this notice so long as written agreement on a resolution of this issue within that 30 days and that Plaintiffs' prior proposal to resolve this the City agreeing to pay additional amount as to what the $977,916.12 would have earned from October 7, 2025 until the time that the City make the payment remained open..

2.    With respect to attorneys' fees and expenses incurred after May 28, 2024, on October 3, 2025, Plaintiffs' counsel discussed with counsel for the City the possibility of reaching agreement with the City on the amount of attorneys' fees and expenses incurred since May 28, 2024.  Barton Decl. ¶ 40. In that conversation, counsel for the City expressed that the City would likely be interested in reaching a resolution of that issue, but due to the procedures necessary to obtain authority, the City would probably not be in a position to discuss a resolution of the fees and expenses incurred since May 28, 2024 until after Plaintiffs filed their motion for attorneys' fees and expenses. *Id.* On October 17, 2025, Plaintiffs' counsel sent an email to counsel for the City asking whether the City would be in a position to discuss a resolution of the attorneys' fees and expenses incurred since May 28, 2024.  *Id.* ¶ 41. Plaintiffs' counsel have not received a response to that email only shortly before this motion was filed. *Id.*

3.    Even if Defendants had agreed to the amount of fees and expenses, the Court will still need to approve them under Fed. R. Civ. P. Rule 23(h).

4.    Based on the foregoing, Plaintiffs and Class Counsel respectively submit that the requirements of Local Rule 54-5(b) are met.

**Memorandum of Points and Authorities**

**I.    Introduction**

Pursuant to Fed. R. Civ. P. 23(h) and USERRA § 4323(h), Plaintiffs and Class Counsel seek an award of attorneys' fees and expenses. After nearly six years, Plaintiffs' counsel's efforts resulted in a Settlement, which was reached after more than 20 settlement conferences and provides substantial monetary and prospective relief to the Class. For most claims, Class members will receive 100% of what they would have been entitled and many Class members will not need to file a claim. For fees and expenses incurred through May 28, 2024, the City previously agreed to pay $977,916.23 ($77,916.12 in expense and $900,000 toward fees) into an escrow account to resolve those claims (although the City has not paid that amount). Plaintiffs' counsel's lodestar for that period exceeds $1.3 million, that would represent 67% of lodestar. That agreement, even if it remains in effect, expressly did not resolve claims for fees or expenses after May 28, 2024. Since May 28, 2024, Plaintiff's counsel has incurred an additional $310,727.50 in lodestar and $2,591.04 in expenses. Plaintiffs only seek their counsel's lodestar and reimbursement of their expenses, which to date, are $1,637,590.00 in lodestar and $22,233.07 in expenses. Given the time, the efforts and the results obtained, these amounts are more than reasonable and should be awarded.

**II.    Background**

**A.    The Claims & Relief Sought.**

After over a year of investigation and review of numerous documents from Plaintiffs, Class Counsel drafted and filed a 75-page Complaint against the City with nineteen claims, with ten filed on behalf of a Class (or Subclass) of employees who took military leave during their employment with the City since October 10, 2004, and the remaining claims were on behalf of Plaintiffs individually. Barton Decl. ¶ 26; ECF No. 1. The Class (and Subclass) Claims (detailed on Preliminary Approval) are summarized as follows: The City (Count I) violated USERRA § 4312 by requiring approval for military leaves of more than 5 days; (Count II) violated USERRA § 4316 by denying vacation and sick leave accrual to employees on unpaid military leave while

providing those benefits to employees on other forms of leave; (Count III) violated Cal. Mil. & Vet. Code ("MTA")§§ 395(a) & 395.01(a) by failing to pay employees for certain periods of military leave (i.e. travel to/from duty); (Count IV) violated USERRA § 4318 by imposing administrative requirements that discouraged employees on military leave from purchasing pension credits; (Count V) violated USERRA § 4318 by requiring employees to pay interest on those pension buybacks; (Count VI and VII) violated USERRA §§ 4312 and 4313 by failing to promptly reemploy employees on military leave; (Count XII) violated USERRA § 4318 by failing to make proper pension contributions; (Count XIII) violated USERRA § 4311(a) by failing to pay employees on military leave for the first 30 calendar days of leave as required by MVC § 395l; (Count XIV) violated the City's Annual Salary Ordinance by failing to pay employees on military leave.

The Complaint alleges three claims by Plaintiff Anderson individually: The City (Count VIII) violated USERRA § 4311(a) by discriminating and retaliating against him; (Count IX) violated the MTA § 394 by discriminating and retaliating against him; and (Count X) violated Cal. Govt. Code § 12940(a) by discriminating and retaliating against him.

The Complaint alleges six claims by Plaintiff Sweeney individually: The City (Count XI) violated USERRA §§ 4312 and 4313 by failing to promptly reemploy Sweeney; (Count XV) violated Cal Labor Code § 201(a) by failing to pay wages to her; (Count XVI) violated USERRA § 4311(a) by discriminating and retaliating against her; (Count XVII) by discriminating and retaliating against her; (Count XVIII) violated the MTA § 394 by discriminating and retaliating against her; and (Count XIX) wrongfully terminated her in violation of public policy.

### B.    Settlement Negotiations of the Class Claims

Shortly after the complaint was filed, the Parties jointly requested a stay of litigation and referral to a magistrate judge. ECF No. 9. The Court granted the request and referred the case to then-Magistrate Judge Corley. ECF No. 15. While this case proceeded to settlement discussions shortly after the case was filed, the more than 20 pre-settlement and settlement conferences with Judge Corley illustrates that resolution of these 19 claims required significant work.

1

2      Judge Corley held initial settlement conferences on April 8, 2020, May 1, 2020, May 20,

3  2020 and June 24, 2020 to discuss the pre-settlement discovery. ECF No. 17, 21, 23, 26 ¶ 1(f).

4  Plaintiffs' counsel explained that a settlement would require the City to provide certain

5  discovery, to reform the City policies and practices and to provide for a claims process. ECF No.

6  32 ¶ B(h). At a September 1, 2020 conference, the parties discussed the drafts and additional

7  discovery that were exchanged as well as the potential use of employee samples. *Id.* at ¶ B(k).

8      By the September 16, 2020 conference, the parties agreed on a mechanism to assess the

9  Class claims, and a written proposal regarding that mechanism, exchanging comments on other

10  documents that would be part of a settlement agreement, proposing a process for resolving the

11  more complex claims concerning reemployment positions under USERRA, providing additional

12  leave data that the City would provide, including the use of employee samples. At the October

13  30, 2020 conference, the parties agreed on a timeline for a Court approved Notice and Survey to

14  potential class members. ECF No. 43 ¶ 10. At the December 1, 2020 settlement conference, the

15  parties discussed the Notice and Survey, the City's requirements for Class Member notice of

16  military leave, damages and the availability of various types of data. *Id.* at ¶ 11. On December 4,

17  2020, the parties agreed on a Notice and Survey to potential Class Members, which this Court

18  approved. ECF Nos. 39, 40. The Parties hired a notice administrator, reviewed and analyzed the

19  responses and utilized those responses in settlement discussions. Barton Decl. ¶ 29.

20      At a February 11, 2021 conference, the parties discussed the survey, damages, and a

21  settlement timeline. ECF No. 48. at ¶ 10. At an April 12, 2021, settlement conference, the parties

22  discussed additional data sources and data analysis, survey responses and damages. *Id.* at ¶ 11.

23      Judge Corley held settlement conferences on August 4, 2021, August 30, 2021, and

24  October 22, 2021. ECF No. 60 ¶ 7. Between these conferences, the parties exchanged and

25  discussed the parties' proposals to resolve the Class Claims. *Id.* at ¶ 8. The City also produced

26  additional data on October 14, 2021 for a significant part of the class period that Defendants had

27  previously believed was unavailable. *Id.* at ¶ 9. At and between these settlement conferences, the

28  PLS.' MEMO ISO MOTION FOR FEES & EXPENSES
CASE NO. 4:20-cv-01149-DMR                3

1  parties further discussed various proposals to resolve the class claims. *Id.* at ¶ 10.

2      Judge Corley set a conference for January 21, 2022. ECF No. 64 ¶ 7. Before that

3  conference, the parties exchanged and discussed proposals to resolve the Class claims and

4  Defendants produced additional data on November 16, 2021. *Id.* at ¶ 8- 9. On January 3, 2022,

5  Plaintiffs' counsel sent Defendants' counsel a draft 19-page agreement in principle to settle the

6  class claims. *Id.* at ¶ 11. At the January 2022 settlement conference, the City expressed essential

7  agreement on outstanding issues regarding the Class claims, agreed to provide edits to the class

8  settlement term sheet and provide additional information regarding certain outstanding issues

9  necessary to resolve class claims. *Id.* at ¶ 12. The parties continued to exchange edits. *Id.* at ¶ 8.

10  Judge Corley held a conference on August 8, 2022, where the parties discussed remaining issues

11  related to the draft settlement in principle for the class claims. ECF No. 76 ¶¶ 9-11.

12      The Parties entered into a 19-page class settlement term sheet on November 15, 2022.

13  Agmt. at Recital E. The final written Class Action Settlement Agreement, which consists of 95

14  pages including exhibits, was fully executed on November 19, 2024, after which Plaintiffs'

15  counsel promptly filed for preliminary approval of the settlement. ECF No. 122.

16      **C.  The Class Action Settlement Agreement.**

17      The result of these lengthy negotiations was a Settlement that provides for comprehensive

18  changes in the City's military leave procedures that will end the unlawful practices complained

19  of by Counts I, II, III, IV, and V. Agmt. §§ VI(D)(1), (E)(3), (F)(3), (G)(1). Class members

20  identified in the City's data with claims for money or benefits under Count II, III, V, XII, XIII

21  and XIV will receive 100% of the benefits to which they ought to have been entitled, without the

22  need to submit a claim form. *Id.* § VI(E)(1), (F)(1), (G)(6), (J)(2), (K)(1). For Counts IV and V,

23  Class members have the right to purchase service credit for all periods of qualifying military

24  leave during the Class Period. *Id.* § VI(G)(1). For claims under Count I, Count VI or VII and any

25  Class members not identified by the City or who dispute the data for any claims can submit

26  claims to a neutral claims adjudicator through a Claims Process that includes a hearing, a right to

27

28

1   request information from the City, and the right to an appeal before a different adjudicator (Judge
2   Corley). *Id.* §§ VI(C), VI(E)(2), (F)(2), (G)(4), (J)(3)-(4), (K)(3)-(4).

3       **D.    Negotiation of the Individual Claims.**

4       At an October 22, 2021 conference, the parties began discussing Sweeney's individual
5   claims for reemployment and wrongful termination of her employment. ECF No. 60 ¶ 12. ECF
6   No. 79 ¶ 14. At an April 25, 2022 conference, the parties discussed Sweeney's individual claims.
7   ECF No. 76 ¶¶ 9-11. Judge Corley held an in-person conference on November 16, 2022, to
8   address Sweeney's individual claims. ECF No. 79 ¶¶ 15-16. A term sheet was eventually reached
9   and signed on December 20, 2022. Barton Decl. ¶ 30. The term sheet was expressly conditioned
10  settlement on "Final Approval of the Class Settlement by the District Court becoming Non-
11  Appealable." *Id.*; Agmt. at Recital I. Additionally, City agreed that it would pay an amount of
12  attorneys' fees and expenses related to her individual claims "in addition to and separate from
13  attorneys' fees and expenses for the class claims" and "[i]n the event that Plaintiff and the City
14  cannot agree on the amount of fees and expenses, the amount of attorneys' fees and expenses
15  will be decided by the Court." Barton Decl. ¶ 30.

16      Judge Corley held a settlement conference on May 9, 2022 to discuss Anderson's
17  individual claims. ECF No. 70 ¶ 9. Anderson and the City reached a settlement in principle on
18  May 9, 2022. *Id.* at ¶ 11. That agreement is contingent on final approval of the Class Settlement
19  and exclusive of any attorneys' fees or expenses on the individual claim. *See* Agmt. at Recital I.

20      **E.    Negotiation of Attorneys' Fees & Expenses.**

21      On November 17, 2023, Plaintiffs' counsel sent a demand to the City for attorneys' fees
22  and expenses through that date. ECF No. 94 ¶¶ 9, 11. On April 23, 2024, Judge Corley ordered
23  the City to provide (among other items) a counter to Plaintiff's demand regarding attorneys' fees
24  and expenses. ECF Nos. 99, 102. At the May 28, 2024 settlement conference, the parties reached
25  an agreement on the amount that Defendants would pay in attorneys' fees and expenses incurred
26  through May 28, 2024 (with the amount to resolve class claims being subject to approval by the
27  Court). ECF No. 107 ¶ 12. A final settlement conference was held with Judge Corley on July 18,
28  PLS.' MEMO ISO MOTION FOR FEES & EXPENSES

2024, at which the parties agreed on the form of the Settlement Agreement (except one exhibit) and the agreement for attorneys' fees and expenses through May 28, 2024. *Id.* at ¶ 14.

### F.    Agreement Regarding Attorneys' Fees and Expenses.

The Class Settlement Agreement recites that the City and Class Counsel had reached an agreement on the amount of attorneys' fees and expenses for the Class Claims through May 28, 2024. Agmt §XI.A. The Settlement Agreement provides that if Class Counsel incurs more than nominal attorneys' fees or expenses after May 28, 2024, including in connection with the Claims Process or administration of the settlement, Class Counsel will be entitled to file another motion seeking an award of additional attorneys' fees and expenses after Final Approval (including in connection with representing Class Members in the Claims Process). *Id.* § XI.B. The Agreement also provides that rejection or modification of Class Counsel's requested fees by the Court will not void the Settlement or provide a basis for any party to withdraw. *Id.* § XI.D. The Class Settlement Agreement does not release any claims for attorneys' fees or expenses. *Id.* § XII.A.

Plaintiffs and their counsel entered into a separate agreement with the City, subject to Court approval on the amount of attorneys' fees and expenses that the City will pay for fees and expenses incurred through May 28, 2024. Barton Decl. Ex 6 ("Fee Agmt") § I.1. The Fee Agreement required the City to pay $977,916.12 into an Escrow Account 14 days before this motion was due, which consists of $900,000 in fees and $77,916.12 in expenses. *Id.* The Agreement does not address or release any claims for fees or expenses incurred *after* May 28, 2024. *Id.* § I.1 & IV.1. The Fee Agreement specifies the amounts attributable to the Class Claims (66.67% or $608,940) versus Plaintiffs' individual claims. *Id.* § I.2. The amounts payable for fees related to the Class claims are subject to approval by the Court. *Id.* § I.3. If the Court does not approve the full amount of the fees for the Class claims before May 28, 2024, the excess will be used to pay amounts owed for fees or expenses for Class Claims after May 28, 2024 or individual claims or any remainder to the Class. *Id.* § I.7.

### G.    Amount of Attorneys' Fees & Expenses Incurred Through October 19, 2024.

Plaintiffs' counsel spent over 2,000 hours on this case from inception. Barton Decl. ¶¶

1  42-45; Scimone Decl. ¶ 5. Based on their customary hourly rates, counsel's lodestar totals $

2  $1,637,590.00. *Id.* Of that amount, $280,279 is attributable solely to Sweeney's individual claim

3  and $49,505 is attributable solely to Anderson's claim. *Id.* Additionally, Plaintiffs and Plaintiffs'

4  counsel have incurred $81,749.32 in expenses in connection with these claims. Barton Decl. ¶¶

5  51, 53; Scimone Decl. ¶ 16; Sweeney Decl. ¶¶ 5,7.

6  **III.    Plaintiffs' Counsel Are Entitled to An Award of Attorneys' Fees & Expenses.**

7  **A.    Plaintiffs Are Prevailing Parties Under USERRA.**

8  USERRA § 4323 provides that "the court shall award" a plaintiff who obtained private

9  counsel to bring a USERRA action "reasonable attorney fees, expert witness fees, and other

10  litigation expenses." 38 U.S.C. § 4323(h)(2). The Ninth Circuit has held that "a plaintiff

11  'prevails' when he or she enters into a legally enforceable settlement agreement against the

12  defendant." *Richard S. v. Dep't of Dev. Servs. of State of Cal.,* 317 F.3d 1080, 1086 (9th Cir.

13  2003) (citing *Barrios v. Cal. Interscholastic Fed'n,* 277 F.3d 1128, 1134 (9th Cir. 2002)). The

14  plaintiff in *Richard S.* sought attorneys' fees under a fee-shifting statute that required the plaintiff

15  to be a prevailing party. *Id.* The Ninth Circuit explained that the plaintiff was not merely a

16  catalyst for change, but the settlement agreement "afforded him a legally enforceable instrument

17  which made him a prevailing party." *Id.* Judicially enforceable settlement agreements meet this

18  standard "because the defendants [are] required to do something directly benefitting the plaintiffs

19  that they otherwise would not have had to do." *Id.* at 1087; *S.G. v. City of Los Angeles*, No. LA

20  CV17-09003 JAK (MRWx), 2024 WL 5286227, at *4 (C.D. Cal. Nov. 26, 2024) (finding

21  plaintiffs were the prevailing party where they previously reached a settlement of a putative class

22  action); *Chapman v. NJ Props. Inc.*, No. 5:16-cv-02893-EJD, 2019 WL 3718585, at *3 (N.D.

23  Cal. Aug. 7, 2019) (reaching similar conclusion), *aff'd, Chapman v. Panchal*, 834 Fed.Appx.

24  333, 334 (9th Cir. 2021) (affirming award of fees and finding plaintiff was prevailing party as a

25  result of settlement). This same rule applies to USERRA claims. *Tole v. Amazon.com, Inc*., No.

26  C22-594 MJP, 2025 WL 474248, at *4 (W.D. Wash. Feb. 12, 2025) (finding settling plaintiff

27  was entitled to award of attorneys' fees).

28  PLS.' MEMO ISO MOTION FOR FEES & EXPENSES

1
2

**B.    Plaintiffs Are Entitled to Attorneys' Fees & Expenses Under USERRA §**
**4323(h) Incurred After May, 28, 2024.**

3       "Attorney's fees [under USERRA] are calculated based on a lodestar analysis: taking the

4   total number of hours reasonably spent by counsel on preparing and litigating the matter and

5   multiplying by the fair market rate for the attorney's time." 47 *Causes of Action for Employment*

6   *Discrimination Based on Military Service under the Uniformed Services Employment and*

7   *Reemployment Act* 2d 1 (Oct. 2025 Update) (citing cases); *see Huhmann v. FedEx Corp.*, No. 13-

8   cv-00787-BAS(NLS), 2015 WL 6127198, at *1 (S.D. Cal. Oct. 16, 2015) (applying lodestar to

9   award fees under USERRA § 4323(h)); *see Tole v. Amazon.com, Inc.,* No. C22-594 MJP, 2025

10  WL 474248, at *3 (W.D. Wash. Feb. 12, 2025) (same). "If a case is unusually complex or

11  difficult, a higher fee may be awarded." 47 Causes of Action 2d 1 (citing *Fink v. City of New*

12  *York*, 154 F.Supp.2d 403, 408-409 (E.D. N.Y. 2001) (finding that the complexity and difficulty

13  of the USERRA claims supported a fee award that was a "bit higher than the hourly rate awarded

14  for more conventional employment discrimination cases")). As in other cases involving a fee-

15  shifting statute, the lodestar figure is "presumptively reasonable." *Huhman*, 2015 WL 6127198,

16  at *1; *see Am. Small Bus. League v. United States Small Bus. Admin.*, No. 21-cv-02877-DMR,

17  2023 WL 12080957, at *2 (N.D. Cal. Jan. 18, 2023) (Ryu, J.) (explaining same in non-USERRA

18  case). As this Court explained, "[o]nce a party is deemed both eligible and entitled to fees," then

19  "the award must be given and the only room for discretion concerns the reasonableness of the

20  amount requested." *Id.* (citing *Long v. U.S. I.R.S.*, 932 F.2d 1309, 1314 (9th Cir. 1991)). As

21  Plaintiffs are considered prevailing parties, they are entitled to attorneys' fees and expenses

22  incurred after May 28, 2024 (in addition to the amount agreed upon for fees and expenses

23  incurred through May 28, 2024). The Fee Agreement provided that Plaintiffs may seek an award

24  of attorneys' fees and expenses incurred after May 28, 2024. Fee Agmt § I.1. To the extent that

25  agreement no longer applies any award of fees and expenses must be evaluated under USERRA

26  § 4323(h).

27

28

**C.      The Fee Agreement Entitled Class Counsel to Attorneys' Fees & Expenses Incurred Before May 28, 2024.**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As this Court has explained: "Even where, as here, the parties' agreement provides for attorneys' fees, 'courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable.'" *Norton v. LVNV Funding, LLC,* No. 18-cv-05051-DMR, 2022 WL 562831, at *10 (N.D. Cal. Feb. 24, 2022) (Ryu, J.) (awarding fees in a class action based on lodestar where the underlying statute had a fee-shifting provision). Any amount on which the Parties have reached an agreement on the amount to be paid for fees (e.g. such as those agreed to pay for amounts incurred on or before May 28, 2024), should be evaluated under Rule 23(h).

**D.      The Requested Fee is "Presumptively Reasonable" When it is At or Less Than Counsel's Actual Lodestar.**

There is a "strong" presumption that the lodestar method is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The court may, if circumstances warrant, adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The fee applicant who seeks more than the lodestar figure has the burden of showing that an adjustment is "*necessary* to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (emphasis in original). Here, Plaintiffs do not seek any multiplier of the lodestar figure.

Under the Fee Agreement, the attorneys' fees will be *less than the* actual lodestar (even if the Court awards the full amount of fees after May 28, 2024). This Court and others in this District have concluded that a fee award that is less than lodestar "strongly suggests the reasonableness" of the fee. *Norton*, 2022 WL 562831, at *12 (reaching this conclusion in a class action where the amount of fees were agreed upon); *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc*., No. 19-cv-07087-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021)

1  (finding requested attorneys' fees in class action reasonable); *see Shuman v. SquareTrade Inc.,*

2  No. 20-cv-02725-JCS, 2023 WL 2311950, at *7 (N.D. Cal. Mar. 1, 2023) (reaching this

3  conclusion in a class action settlement involving a contested fee petition where defendant

4  challenged the fee request); *Chen v. Chase Bank USA, N.A.,* No. 19-cv-01082-JSC, 2020 WL

5  3432644, at *11 (N.D. Cal. June 23, 2020) (reaching this conclusion in a class action settlement

6  where the amount of fees were agreed upon, but paid separately from the common fund for the

7  class). The amount of fees incurred before May 28, 2024 that the City agreed to pay is only 67%

8  of the lodestar. If the Court also awards full lodestar after May 28, 2024 and what the City

9  previously agreed to pay, that would be 73% of lodestar. Thus, Plaintiffs' request either for full

10  lodestar or at 73% is presumptively reasonable.

11  **IV.    The Lodestar Method is the Appropriate Metric For Awarding Attorneys' Fees.**

12          There are two basic methods for calculating attorneys' fees: (1) the percentage-of-

13  recovery method and (2) the lodestar method. *In re Bluetooth Headset Prod. Liab. Litig.*, 654

14  F.3d 935, 941-42 (9th Cir. 2011). The Ninth Circuit has not dictated which method should be

15  applied, but has suggested circumstances where the lodestar method is appropriate. *See id.*

16  Several of these rationales apply here, any one of which would be sufficient reason to use the

17  lodestar method to calculate attorneys' fees.

18          First, "[t]he 'lodestar method' is appropriate in class actions brought under fee-shifting

19  statutes." *Id.*, at 941; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th

20  Cir. 1990) (explaining that "statutory awards of attorneys' fees are subject to 'lodestar'

21  calculation procedures"). This Court has concluded that the "lodestar method" is appropriate in

22  class actions brought under fee-shifting statutes." *Norton,* 2022 WL 562831, at *10 (Ryu, J.).

23  "Where, as here, Plaintiff is entitled to attorneys' fees under the statute and the fees are to be

24  paid out of a fund separate from the common fund, the lodestar method is the appropriate method

25  for calculating attorneys' fees." *Chen*, 2020 WL 3432644, at *9 (applying lodestar method in

26  class action settlement where fees are paid separately). As USERRA contains a fee-shifting

27  provision, that alone suffices to apply the lodestar method to assess fees.

28  PLS.' MEMO ISO MOTION FOR FEES & EXPENSES

Second, the *en banc* Ninth Circuit affirmed the use of the lodestar method to award attorneys' fees on a contested motion for attorneys' fees where "it is difficult to estimate the settlement value's upper bound." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (*en banc*) (finding fee award based on lodestar was appropriate because the value of the benefits to the class would be ongoing for many years); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *1 (W.D. Wash. Apr. 24, 2008) ("Where, as here, Settlement relief will be paid on a claims made basis with no cap to the relief available, consideration of attorneys' fees lends itself more readily to the lodestar method."). Here, it is difficult (and may be impossible) to estimate the settlement value's upper bound. For certain claims, the Settlement requires the City to pay 100% of what class members would be entitled. *Supra* II.D. While the Settlement requires the City to provide an accounting to Class Members for many claims, Class Members are entitled to challenge that accounting and the ultimate determination will not be known until all claims have been adjudicated by the claims adjudicator and the appeal adjudicator. *Id.*

*Third*, the Ninth Circuit has approved the use of a lodestar calculation where there is no common fund "because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998); *Lou v. Am. Honda Motor Co., Inc.,* No. 16-cv-04384-JST, 2025 WL 1359067, at *7 (N.D. Cal. May 9, 2025) (awarding fees under a lodestar method in a class action where cash benefits would be paid to class members who submitted claims to defendant); *In re Toys R Us-Del., Inc -FACTA Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) (finding the lodestar method appropriate because "there is no common fund"). Here, there is no common fund. This is not a claims-made settlement as most Class members (for whom the City has identified) will simply receive a payment. *Supra* II.D. But there is also no common fund. And the Settlement includes substantial injunctive relief. *Id.*

*Finally,* with respect to the attorneys' fees for which there is no agreed-upon amount, those fees are sought based on USERRA's fee shifting statute, 38 U.S.C. § 4323(h). Where a plaintiff seeks attorneys' fees under a fee-shifting statute, the court "must calculate awards for

1   attorneys' fees using the 'lodestar' method." *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir.

2   2003); *TPCO US Holding, LLC v. Fussell*, No. 23-cv-01324-EMC, 2023 WL 5111986, at *1

3   (N.D. Cal. Aug. 9, 2023) ('[I]n the Ninth Circuit, '[u]nder a fee-shifting statute, the court must

4   calculate awards for attorneys' fees using the lodestar method.'"); *Perdue*, 559 U.S. at 552

5   (finding awards under fee-shifting are usually limited to lodestar). Thus, for fees for which there

6   is no agreement (e.g. incurred after May 28, 2024), the  appropriate method is the lodestar.

7   **V.    The Requested Fees are Reasonable Under the Lodestar Method.**

8           The lodestar figure "roughly approximates the fee that the prevailing attorney would have

9   received if he or she had been representing a paying client who was billed by the hour in a

10   comparable case." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). When calculating the

11   lodestar, a court takes "the number of hours reasonably expended on the litigation multiplied by

12   a reasonable hourly rate." *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983). The lodestar "measures

13   the lawyers' investment of time in the litigation." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

14   1050 (9th Cir. 2002). "[T]he determination of fees 'should not result in a second major

15   litigation'" and "trial courts need not, and indeed should not, become green-eyeshade

16   accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). Rather,

17   the courts seek "to do rough justice, not to achieve auditing perfection." *Id.*

18          The lodestar method consists of two steps. *Kelly*, 822 F.3d at 1099. *First*, a court

19   multiplies a reasonable number of hours expended on the litigation by a reasonable hourly rate to

20   arrive at a lodestar figure. *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016);

21   *Kelly*, 822 F.3d at 1099. *Second,* the court determines whether to adjust the lodestar figure

22   upward or downward using a multiplier based on factors not subsumed in the lodestar

23   calculation. *Id.*; *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

24   **A.    Plaintiffs' Counsel's Hourly Rates Are Reasonable.**

25          The established standard for determining a reasonable hourly rate is the rate "prevailing

26   in the community for similar services of lawyers of reasonably comparable skill, experience, and

27   reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Camacho v. Bridgeport Fin. Inc.*,

28   PLS.' MEMO ISO MOTION FOR FEES & EXPENSES

523 F.3d 973, 979 (9th Cir. 2008). "Lawyers do not come from cookie cutters" and better lawyers who handle complex cases charge more. *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993). A reasonable hourly rate should account for factors such as the attorney's customary hourly billing rate, the level of skill required by the litigation, the time limitations imposed on the litigation, the amount of potential recovery, the attorney's reputation, and the undesirability of the case. *Zamora Jordan v. Nationstar Mortg., LLC,* No. 14 CV 175, 2019 WL 1966112, at *8 (E.D. Wash. May 2, 2019). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014).

### 1.    The Rates Are Reasonable Based on the Forum Rates.

"A reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly*, 822 F.3d at 1099 (internal quotation marks and citation omitted). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Norton,* 2022 WL 562831, at *11 (quoting *Camacho*, 523 F.3d at 979); *see Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906–07 (9th Cir. 1995). For this District, the relevant community is the San Francisco Bay Area. *Lou*, 2025 WL 1359067, at *8 (N.D. Cal. 2025). As courts in this District have repeatedly observed, "'the prevailing rates charged in the San Francisco legal market are among the highest in the state.'" *Ricksecker v. Ford Motor Co.,* No. 21-cv-04681-HSG (SK), 2023 WL 1542199, at *3 (N.D. Cal. Feb. 3, 2023); *Wu v. BMW of N. Am., LLC*, No. 21-cv-03485-DMR, 2022 WL 2802979, at *3 (N.D. Cal. July 18, 2022) (noting that the "relevant forum" for consideration is the San Francisco Bay Area)); *Bratton v. FCA US LLC*, No. 17-cv-01458-JCS, 2018 WL 5270581, at *5 (N.D. Cal. Oct. 22, 2018) ("[T]he prevailing rates charged in the San Francisco legal market are among the highest in the state"). The Ninth Circuit has held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the

attorneys actually rendered their services." *Camacho,* 523 F.3d at 981 (citing *Bell v. Clackamas County,* 341 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of discretion to apply market rates in effect more than two years before the work was performed)). As this Court has recognized, awarding fees based on unadjusted hourly rates is inappropriate. *Erickson Prods Inc. v. Kast*, No. 13-cv-05472-DMR, 2024 WL 5011954, at *9 (N.D. Cal. Dec. 6, 2024) (Ryu, J.) ("Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor.") (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)). [2] "[I]n calculating the lodestar, counsel may use their current hourly rates." *Ricksecker*, 2023 WL 1542199, at *3.

Earlier this year, another court in this District found that the following hourly rates were "consistent with prevailing rates in the community" in approving the settlement of a consumer class action: $700 to $1275 per hour for partners, associates up to $750 per hour and paralegals at $295 per hour. *Lou*, 2025 WL 1359067, at *9 (citing cases); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 600–01 (N.D. Cal. 2020) (approving rates of $830 and $1,275 for partners and $425 to $695 for associates "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"). In an employee benefit class action, another court in this District approved similar rates in 2022. *Rollins v. Dignity Health*, No. 13-CV-01450-JST, 2022 WL 20184568, at *6 (N.D. Cal. July 15, 2022) (approving rates ranging from $625 to $1,060 for partners and of-counsel, and $215 to $625 for non-partner and non-counsel attorneys, including associates, litigation assistants, and document analysts).

This Court previously found the following attorney rates were "reasonable and in line with prevailing rates in this community for similar services performed by attorneys of comparable skill and experience:" $950 and $1050 per hour for partners; $465 to $600 per hour

---

[2] "The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement." *Id.; Downes v. Unum Life Ins. Co. of Am.*, No. 23-cv-01643-RS, 2024 WL 4876940, at *2 (N.D. Cal. Nov. 22, 2024) (using current rates).

for associates. *Cottle v. Plaid Inc.,* No. 20-cv-03056-DMR, 2022 WL 2829882, at \*11 (N.D. Cal.

July 20, 2022). This Court also approved rates of $325 to $425 for paralegals, which although

"high" was "similar [to] rates [that] have been awarded by courts in other class action litigation,

including courts in this district." *Id.* Adjusting the attorney rates for inflation would result in

rates between $1051 to $1162 per hour for partners, $514 to $664 for associates.[3] Attorneys in

the Bay Area who handle employment and employee benefits case who are familiar with the

work of attorneys at The Barton Firm (previously at Block & Leviton) and Outten & Golden

attest that their rates are consistent with or lower than the equivalent rates charged by attorneys

in this District. Feinberg Decl. ¶¶ 8-9; Lowe Decl. ¶¶ 12-13; Jackson Decl. ¶¶ 10-11.

The rates sought by Plaintiffs' counsel here are in line with the rates approved in this

District in similar complex class action cases:

|  | Barton[4] | Block & Leviton | Outten & Golden |
|---|---|---|---|
| Partners | $655-$995 | $950 | $1275 |
| Associates | $400 | $650 | $700 Assoc ($900 counsel) |
| Paralegals | $285 | $280 | $285 |

### 2.    The Rates Are Reasonable Based on Paying Clients.

The rates that counsel actually charge their paying clients is "the best measure" of the

appropriate market value of their services. *Gusman*, 986 F.2d at 1150; *Loughner v. Univ. of*

*Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (explaining that an attorney's usual billing rate is

"the starting point in ascertaining a reasonable hourly rate"); *Tomazzoli v. Sheedy*, 804 F.2d 93,

98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly

---

[3] Thes numbers were calculated using the following: https://www.usinflationcalculator.com/ and https://www.calculator.net/inflation-calculator.html

[4] This Court noted the *Laffey* matrix has been accepted by the Ninth Circuit as evidence of reasonable hourly rates charged by Washington, D.C. attorneys for cases in this District as those likely fall below billing rates in the Bay Area. *Carlotti v. ASUS Comput. Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653, at \*5 (N.D. Cal. June 22, 2020) (relying on the *Laffey* matrix to find fees of D.C. based attorneys reasonable). All of The Barton Firm attorneys (and its predecessor) are D.C. based. That was true for the attorneys on this case at Block & Leviton except Mr. Cheng and Mr. Smith, but their rates are at or lower than those in the Laffey Matrix. http://www.laffeymatrix.com/see.html

rate customarily charged by counsel or by her law firm."). These rates are the best evidence of what the market will bear, as compared to a "rate devised by the court" because "[c]lients are willing to pay more, per hour, for . . . better lawyers." *Gusman*, 986 F.2d at 1150. Not only do Plaintiffs' counsel have extensive employment and employee benefits experience (and more experience than some attorneys charging higher rates), but each have clients who pay their hourly rates. Barton Decl. ¶¶ 4-5, 11-13; Scimone Decl. ¶¶ 19-20, 23.

### 3.    The Hourly Rates Are Reasonable Based on Prior Awards.

Other courts, including those in this Circuit and District, have approved Class Counsel's customary hourly rates in complex employment and employee benefit litigation.

**Barton/Block & Leviton:** Another court in this District found that the rates charged by Joseph Barton (and attorneys and the paralegal working on this case) were "in line with the rates charged by other [employee benefit] litigators in the San Francisco Bay Area." *Foster v. Adams and Assoc., Inc.,* No. 18-cv-02723-JSC, 2022 WL 425559, at *9 (N.D. Cal. Feb. 11, 2022). Likewise, other courts inside and outside this Circuit have approved Mr. Barton's rates (and the rates of other attorneys and paralegals who worked with him on this case). *E.g. Hurtado v. Rainbow Disposal Co.*, No. 17-01605 JLS DFM, 2021 WL 2327858, at *6 (C.D. Cal. May 21, 2021) (approving then-hourly rate of $900 for Mr. Barton and between $260-$600 for paralegals and associates); *Marshall v. Northrop Grumman Corp.,* No. 2:16-CV-06794-AB-JCX, 2020 WL 5668963, at *4 (C.D. Cal. Sept. 18, 2020) (finding the then-hourly rates of Mr. Barton and the paralegals and associates affiliated with him to be reasonable on a contested fee motion because those "rates are within the range of prevailing rates within the community"); *Cunningham v. Wawa, Inc.*, No. CV 18-3355, 2021 WL 1626482, at *8 (E.D. Pa. Apr. 21, 2021) (approving hourly rates for Mr. Barton and attorneys and paralegals working with him at Block & Leviton LLP between $235-875 per hour).

**Outten & Golden**: Another court in this District approved the rates of Outten & Golden just last year. *E.g. Perez v. Discover Bank*, No. 20 Civ. 6896-SI, 2024 WL 4340397, at *4 (N.D. Cal. Sept. 23, 2024) (approving O&G rates up to $1,200 per hour for senior attorneys and up to

$350 per hour for paralegals). Courts in this District have approved prior hourly rates of Outten & Golden. *Zamora v. Lyft, Inc.*, No. 16 Civ. 2558, 2018 U.S. Dist. LEXIS 166618, at *10 (N.D. Cal. Sept. 26, 2018) (finding O&G hourly rates from $280 to $850 "reasonable in light of the market for legal services of this type and quality"); *Lopez v. Uber Techs., Inc.*, No. 17 Civ. 6255, 2018 U.S. Dist. LEXIS 196430, at *11 (N.D. Cal. Nov. 14, 2018) (same); Scimone Decl. ¶ 14.

## B.     The Hours Expended Are Reasonable

A reasonable number of hours expended "is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).[5] The party seeking the fee award bears the "the burden of submitting billing records to establish that the number of hours it has requested are reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209–10 (9th Cir. 2013). Counsel "should exercise 'billing judgment' with respect to hours worked and "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434, 437. Defendant "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. Cty. of Nev.*, 67 F.3d 248, 255 (9th Cir. 1995).

As this Court has previously recognized, the number of hours is often a product of the work that went into the case. *Norton,* 2022 WL 562831, at *11. The amount of work is evident from the time entries in the case. Barton Decl Exs. 7-9; Scimone Decl. Ex. A. The large number of hours reflects the nearly six years that this case has been pending and the numerous settlement conferences and extensive negotiations in between the formal conferences. *See id.* While there was no formal discovery, there was an exchange of information and data, and even a pre-certification notice and survey to the class. *Supra* II.B.

---

[5] A chronological summary of their work is sufficient to evaluate their hours worked. *Norton,* 2022 WL 562831, at *11. Here, Plaintiffs' counsel included their detailed time records.

To litigate this case efficiently, Plaintiffs' Counsel assigned work to junior attorneys and paralegals with lower hourly rates as appropriate. Barton Decl. ¶ 28. Of the over 2,000 hours expended on this litigation, 55% was performed by associates/counsel, and 15% by paralegals. For example, the attorneys from The Barton Firm/Block & Leviton, which performed nearly 78% of the work, over 75% of the hours were billed by associates. *Id*. Similarly, at Outten & Golden, 70% of the hours were billed by associates or paralegals. Scimone Decl. ¶ 6. Plaintiffs' counsel also coordinated between the two firms so that tasks involving the Class claims were not duplicated. Barton Decl. ¶ 28; Scimone Decl. ¶ 10. For example, The Barton Firm took the lead in drafting the Settlement Agreement, the motion for class certification and preliminary approval; the Firms divided the work on the Settlement Agreement exhibits. Barton Decl. ¶ 46. Each firm reviewed time entries, and, just as they do before sending bills to paying clients, removed time entries for duplicative or unnecessary work that would not be billed. *E.g.* Barton Decl. ¶ 32; Scimone Decl. ¶ 9.[6] Given the efforts by Plaintiffs' counsel to litigate this case efficiently, the significant work performed over the past six years, the complexity of the legal issues, and the number of settlement conferences, the over 2,000 hours are reasonable.

### C.    None of the Factors Support Reducing the Lodestar.

Once the presumptively reasonable lodestar amount is determined, the court must consider the factors set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975),[7] to the extent not already subsumed in the lodestar analysis, to determine the reasonableness of the

---

[6] Outten & Golden, removed entries by timekeepers with fewer than 6 hours on the file, who worked on an as-needed basis to assist with filings and other matters. Scimone Decl. ¶ 8.

[7] The *Kerr* factors are (1) time and labor required; (2) novelty and difficulty of the questions involved; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 70; *Morales v. City of San Rafael,* 96 F.3d 359, 363–64 (9th Cir. 1996).

fee. *Huhmann,* 2015 WL 6127198, at *3 (awarding fees under USERRA § 4323). After the subsumed factors are removed, the remaining factors are (1) the time and labor required; (2) preclusion of other employment due to the case; (3) the customary fee; (4) time limitations imposed by the client or the circumstances; (5) undesirability of the case; (6) results obtained; (7) nature and length of the professional relationship with the client; and (8) awards in similar cases. *See id.* at *3, 8-9.[8] It is a "rare case" where those factors justify "downward adjustments to the presumptively reasonable lodestar." *Camacho,* 523 F.3d at 982 (reversing adjustment). The *Huhmann* court considered these factors and, as all were neutral, the factors did not reduce the "presumptively reasonable" lodestar. *Huhmann,* 2015 WL 6127198, at *8-9. Even though some of the factors might support higher award, Plaintiffs here only seek their counsel's lodestar.

　　　　1.　　**Time & Labor Required.** This litigation required over 2,000 hours. Barton Decl. ¶ 42-45; Scimone Decl. ¶ 5. The 19 claims detailed in a 75-page Complaint and 95-page settlement agreement illustrate the complexity of the case.

　　　　2.　　**Preclusion of Other Employment.** The "expenditure of time, energy, and resources—especially by a small firm to the preclusion of other employment—on civil rights litigation that entailed a substantial risk of failure and hence of nonpayment" weighs in favor of an enhancement. *Chalmers v. City of Los Angeles,* 676 F.Supp. 1515, 1524 (C.D. Cal. 1987). The Barton Firm (f/k/a Barton & Downes) has only two attorneys so this factor weighs against a downward adjustment. Outten & Golden is a larger firm, but has a robust practice and could have taken on more lucrative cases. Thus, this weighs against any downward adjustment.

　　　　3.　　**The Customary Fee.** The hourly rates sought are what counsel charge clients who pay by the hour and what other courts have found reasonable. *Supra* V.A.2 & 3. These rates are reasonable in this District. *Supra* V.A.1. This weighs in favor of the requested fee.

---

[8] The subsumed factors taken into account in the reasonable hours component or the reasonable rate component of the lodestar calculation are: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales,* 96 F.3d at 364 n.9.

**4.     Time Limitations Imposed by the Client or the Circumstances.** None.

**5.     Results Obtained**. The result obtained for the Class is the most "critical factor." *Bravo v. City of Santa Maria*, 810 F.3d 659, 666 (9th Cir. 2016) ("[T]he degree of success obtained is the most critical factor"); *see Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." ); *Oliveria v. Language Line Servs.*, 767 F.Supp.3d 984, 1007 (N.D. Cal. 2025) (finding an upward departure appropriate based upon the "strong results achieved" for a class). Here, the settlement provides full relief to the Class on many claims and important prospective relief. This most important factor weighs in favor of the fee.

**6.     The Undesirability of the Case.** When "other attorneys refused to take the case," that evidences the case is undesirable. *Chalmers*, 676 F.Supp. at 1524. Sweeney's experience illustrates the undesirability of this case. She first hired attorneys on an hourly basis who charged her $40,000 but never filed litigation. Sweeney Decl. ¶ 2. She then contacted another experienced USERRA attorney who declined the case but referred her to Joseph Barton. *Id.* ¶ 3. The undesirability of the case weighs in favor of the requested fee.

**7.     The Nature and Length of the Professional Relationship with the Client.** Before this case, Ms. Sweeney was not a client of The Barton Firm (or Block & Leviton). Barton Decl. ¶ 23. Before this case, Mr. Anderson was not a client of Outten & Golden. Scimone Decl. ¶ 26. Neither counsel expects that either Ms. Sweeney or Mr. Anderson will have an ongoing or further professional relationship. This weighs in favor of the requested fee.

**8.     Awards in Similar Cases.** Plaintiffs have found no reported decision of fee awards for USERRA cases in this District or in a USERRA class action in California. Earlier this year, another court in this Circuit awarded these Plaintiffs' counsel $1.425 million in fees in a USERRA class action (at 84% of lodestar at local rates). *Clarkson v. Alaska Airlines, Inc.,* No. 2:19-CV-0005-TOR, 2025 WL 243024, at *8 (E.D. Wash. Jan. 15, 2025). This weighs in favor of the requested fee.

**D.        Proportionality of Fees to the Monetary Recovery Is Not a Consideration.**

In the context of fee-shifting civil rights statutes, the Supreme Court has rejected a rule of proportionality because that "would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). "Congress provided fee shifting to enhance enforcement of important" rights, and "providing competitive rates" through fee-shifting statutes assures that "attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated." *NE. Women's Ctr. v. McMonagle*, 889 F.2d 466, 474 (3d Cir. 1989). "Fee-shifting statutes remove this normative decision" – i.e. comparing the size of the claim to the amount of the fees – "from the court." *Anderson v. AB Painting & Sandblasting Inc.,* 578 F.3d 542, 546 (7th Cir. 2009). In such cases, "it is absolutely permissible to spend $100,000 litigating what is known to be a $10,000 claim if that is a reasonable method of achieving the result." *Id.* Applying this principle, courts often award attorneys' fees in USERRA cases that far exceed the plaintiffs' recovery. *Hanson v. Cty. of Kitsap*, No. 13-5388, 2015 U.S. Dist. LEXIS 85990, at 15 (W.D. Wash. June 30, 2015) (awarding $471,050.00 in fees where plaintiff only recovered nominal back pay damages); *see Sorensen v. City of Calhoun*, No. 1:11-CV-307, 2016 WL 716885 (E.D. Tenn. Feb. 22, 2016) (awarding $55,000 in fees on recovery of $8,300 in USERRA case); *Felton v. City of Adrian*, No. 11-00632-CV-W-JTM, 2013 U.S. Dist. LEXIS 31100, at *10 (W.D. Mo. Mar. 6, 2013) (awarding fees and costs of $51,289.05 where no damages were awarded); *see Ward v. Shelby Cnty.*, No. 2:20-cv-02407-JPM-cgc, 2023 WL 6050229, at *1 (W.D. Tenn. Sept. 15, 2023) (awarding $850,000 in fees in a USERRA case based on an underlying judgment of $1.2 million).

In *Lowery v. Rhapsody International, Inc.,* 75 F.4th 985 (9th Cir. 2023), the Ninth Circuit reversing a fee award of $1.7 million in a copyright infringement class action that resulted in only $52,000 being paid to the class by explaining "[e]xcept in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class." *Id.* at 994. But the *Lowery*

court explicitly recognized that this cap did not apply to fee awards in civil rights cases under long-standing Ninth Circuit precedent. *Id.* The *Lowery* court explained that "attorneys' fees awarded in civil rights cases need not be strictly proportional to monetary damages" because "[e]ven though damages in civil rights cases are often small, ... these lawsuits can provide considerable benefit to society through nonmonetary relief such as 'ending institutional civil rights abuses or clarifying standards of constitutional conduct.'" *Id.* at 994–95 (quoting *Gonzalez*, 729 F.3d at 1209–10). There should be no question that USERRA is a civil rights statute. *See Ward,* 2023 WL 6050229, at *1 (concluding that that a fee award in a USERRA case was "not limited to a proportion of the damages" because it was a "civil rights" case). The Supreme Court has recognized the USERRA "statute is very similar to Title VII" because it "prohibits employment discrimination." *Staub v. Proctor Hosp.,* 562 U.S. 411, 417 (2011). "USERRA cases … use a burden shifting analysis similar to that used in Title VII cases." *Forks v. SPM, Inc.,* No. 98-15650, 1999 WL 439441, at *1 (9th Cir. 1999). And courts refer to USERRA claims as a "civil rights claims." *Hammond v. Antinoro,* No. 3:17-cv-00618-CLB, 2020 WL 10575293, at *9 (D. Nev. June 22, 2020). Thus, any limitation under *Lowery* does not apply to the USERRA claims here.

Even if USERRA was not a civil rights statute, courts in this District have distinguished *Lowery* and awarded attorneys' fees in class actions that did not involve civil rights claims. *Lou,* 2025 WL 1359067, at *15 (awarding $8 million in fees for consumer claims where the amount paid to the class was approximately $540,000); *PFA Ins. Mktg. Litig.*, No. 4:18-CV-03771 YGR, 2024 WL 1145209, at *17 (N.D. Cal. Feb. 5, 2024) (distinguishing *Lowery* and awarding $6 million in attorneys' fees in an insurance class action with a $4.2 million recovery); *In re Outlaw Labs., LP Litig.*, No.: 18-cv-840-GPC-BGS, 2023 WL 6522383, at *8 (S.D. Cal. Oct. 5, 2023) (awarding over $800,000 in fees in non-class RICO case where verdict was only $12,000). These policy considerations apply to USERRA cases and the need to attract qualified counsel make it appropriate to award a fee that may exceed the amount recovered for the class.

Ms. Sweeney's situation illustrates that need. She initially hired attorneys to represent her

1    in 2014 on an hourly basis and those attorneys charged her $40,000 without filing any litigation.

2    Sweeney Decl. ¶ 2. She then sought representation from another USERRA attorney who

3    declined to take her case. *Id.* ¶ 3. She hired her present counsel who agreed to pursue the case on

4    a contingency basis. Barton Decl. ¶ 24. As there was no way to ascertain the size of the class or

5    the potential monetary recovery, Plaintiff's counsel could accept the case on contingency only

6    because USERRA's fee-shifting provision allowed them to represent clients like Sweeney and

7    Anderson on a contingency basis without a concern about the potential percentage of the

8    recovery. *Id.*. Without such a fee-shifting provision, this case would not have been brought (at

9    least not on a class-wide basis) and the excellent result for the Class would not exist.

10           **E.      Plaintiffs' Counsel Are Entitled to Fees In Connection with This Motion.**

11           The Ninth Circuit has long held that a prevailing party in a civil rights action may be

12    entitled to an award of fees related to their fee motion ("fees on fees"). *Franchek v. Workrite*

13    *Ergonomics, LLC*, No. 16-cv-02789-JSW (DMR), 2022 WL 3137928, at *13 (N.D. Cal. May 9,

14    2022) (citing cases and rejecting defendants' argument to limit work on fees to 20 hours). This

15    Court reduced the amount of fees to prepare the fee motion, which represented 45% of the

16    requested fee for a relatively simple fee motion. *Am. Small Bus.*, 2023 WL 12080957, at *13.

17    Here, the amount of fees on the fee motion is 23 hours (through October 19, 2025) or only 4.75%

18    of the fees. Barton Decl. ¶ 47. This motion required Plaintiffs' counsel to address fees under both

19    Rule 23(h) and USERRA § 4323(h), to address the Ninth Circuit *Lowery* decision, and to review

20    nearly 6 years of time records and procedural history. As such, these factors weigh against any

21    reduction in the "fees on fees."

22    **VI.    There is No Indication of Collusion Between the Parties**

23           The Ninth Circuit has advised courts to be concerned when the following are present: (1)

24    "when counsel receive a disproportionate distribution of the settlement, or when the class

25    receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties

26    negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and

27    apart from class funds, which carries the potential of enabling a defendant to pay class counsel

28    PLS.' MEMO ISO MOTION FOR FEES & EXPENSES

excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947. These are merely "warning signs" that must be explained to ensure the settlement "does not betray the class's interests." *Id.* at 948-949. Factors weighing in favor of a finding of non-collusiveness include working with "a neutral mediator," *id.* at 948 and the settlement "largely accomplishes the injunctive relief sought." *G.F. v. Contra Costa City*, No. 13 CV 3667, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015).

There was no collusion and the fees are reasonable. *First,* all settlement negotiations, including fees, were conducted with then-Magistrate Judge, now District Judge Corley. *Supra* II.B. *Second*, the Parties did not begin discussing fees and expenses until after an agreement had been reached. *Supra* II.E. *Third,* the Settlement provides for significant prospective benefits that essentially ends the challenged practices. *Supra* II.C. Courts have approved fees where the settlement obtained significant or even exclusively injunctive relief. *See Dowd v. City of L.A.*, 28 F.Supp.3d 1019, 1063-64 (C.D. Cal. 2014) (awarding fees where plaintiff successfully challenged city policies and "secur[ing] important social benefits" not included in damages award); *G.F.*, 2015 WL 7571789, at **9, 16 (awarding $2.5 million in attorneys' fees in class action where class relief was wholly injunctive); *In re Ferrero Litig.*, 583 F. App'x 665, 667, 668-69 (9th Cir. 2014) (affirming $985,920 fee award where settlement provided significant injunctive relief and $550,000 fund for class); *Morales*, 96 F.3d at 364 (finding significant non-monetary results should be considered in determining reasonable fee award). *Fourth,* any amount of excess fees that is not approved by the Court will be paid to the Class. Fee Agnt ¶ I.7. *Finally,* the amount the City agreed to pay is significantly less than counsel's lodestar. *Supra* III.D.

## VII. Plaintiffs and Class Counsel are Entitled to Reimbursement of Litigation Expenses.

Both USERRA and Rule 23 provide for the award of "litigation expenses." 38 U.S.C. § 4323(h)(2); *Cottle,* 2022 WL 2829882, at *13 (explaining that Class Counsel are also entitled to reimbursement of reasonable expenses under Rule 23(h)). USERRA specifically allows for an award of "expert witness expenses." 20 C.F.R. § 1002.310. Reasonable out-of-pocket litigation

1    expenses are those that "would normally be charged to a fee paying client." *Trs. of the Const.*

2    *Indus. and Laborers Health and Welfare Tr. v. Redland Ins. Co*., 460 F.3d 1253, 1257 (9th Cir.

3    2006). "[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—

4    including photocopying, printing, postage, court costs, research on online databases, experts and

5    consultants, and reasonable travel expenses—" because "attorneys routinely bill private clients

6    for such expenses in non-contingent litigation." *Chen*, 2020 WL 3432644, at *11; *see Harris v.*

7    *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (explaining same); *Cottle*, 2022 WL 2829882, at *13

8    (same); *Morris*, 2022 WL 3013076, at *7 (same); *Norton*, 2022 WL 562831, at *12 (same).

9    Here, Plaintiffs' counsel seek to recover the following expenses: court fees, experts, electronic

10    discovery expenses, postage and courier fees, and travel/lodging. Barton Decl. ¶¶ 51, 53;

11    Scimone Decl. ¶ 16. Counsel's expenses to date total $22,233.07. Of that amount, $19,642.03

12    were incurred through May 28, 2024 and $2,591.04 were incurred after May 28, 2024. *Id.*

13    Courts in this District have awarded out-of-pocket expenses to plaintiffs (including in

14    class action cases). *Cancilla v. Ecolab, Inc*., No. 12-cv-03001-JD, 2016 WL 54113, at *5 (N.D.

15    Cal. Jan. 5, 2016) (awarding named plaintiffs their out-of-pocket costs in addition to service

16    award); *Castaneda v. Burger King Corp.,* No. C 08–04262 WHA, 2010 WL 2735091, at *4

17    (N.D.Cal. July 12, 2010) (finding "named plaintiffs should be compensated for their out-of-

18    pocket expenses"). Sweeney incurred $57,449.56 in expenses before May 28, 2024 of which the

19    City previously agreed to pay $56,002.02. Fee Agmt § I.2; Sweeney Decl. ¶ 5. Sweeney has

20    incurred additional $2,066.69 in expenses. *Id.* ¶ 7.

21    **VIII.    Conclusion**

22    For the foregoing reasons, Plaintiffs and Class Counsel's motion should be granted, and

23    any agreed-upon fees and expenses should be approved and Plaintiffs and Class Counsel should

24    be awarded fees and expenses under USERRA § 4323(h) for any other fees and expenses.

25

26

27

28    PLS.' MEMO ISO MOTION FOR FEES & EXPENSES
     CASE NO. 4:20-cv-01149-DMR                   25

1    Dated: October 21, 2025

2

3                                                  Respectfully submitted,

4                                                  /s/ R. Joseph Barton
                                                   R. Joseph Barton (Cal Bar No. 212340)
5                                                  Email: jbarton@thebartonfirm.com
                                                   THE BARTON FIRM LLP
6                                                  1633 Connecticut Ave. Suite 200
                                                   Washington, DC 20009
7                                                  Tel: (202) 734-7046

8                                                  Attorneys for Plaintiff Sweeney

9                                                  Michael J. Scimone (admitted pro hac vice)
                                                   OUTTEN & GOLDEN LLP
10                                                 685 Third Avenue
                                                   25th Floor
11                                                 New York, NY 10017
                                                   Tel: (212) 245-1000
12                                                 Email: mscimone@outtengolden.com

13                                                 Jahan C. Sagafi (Cal. Bar No. 224887)
                                                   OUTTEN & GOLDEN LLP
14                                                 One California Street, 12th Floor
                                                   San Francisco, California 94111
15                                                 Telephone: (415) 638-8800
                                                   Facsimile: (415) 638-8810
16                                                 Email: jsagafi@outtengolden.com

17                                                 Attorneys for Plaintiff Anderson

18

19

20

21

22

23

24

25

26

27

28    PLS.' MEMO ISO MOTION FOR FEES & EXPENSES
      CASE NO. 4:20-cv-01149-DMR                    26