R. Joseph Barton (Cal. Bar No. 212340)
THE BARTON FIRM LLP
1633 Connecticut Avenue NW, Suite 200
Washington DC 20009
Telephone: (202) 734-7046
Email: jbarton@thebartonfirm.com

Michael J. Scimone (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue
25th Floor
New York, NY 10017
Telephone: (212) 245-1000
mscimone@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| DEVON ANDERSON and BEVERLY L. SWEENEY on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH, and SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY, <br><br> *Defendants*, <br><br> and <br><br> SAN FRANCISCO EMPLOYEES' RETIREMENT SYSTEM <br><br> *Nominal Defendant* | Case No. 4:20-cv-01149-DMR <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: December 12, 2024 <br> Time: 1:00 p.m. <br> Courtroom: 4, 3rd Floor <br> Judge: Donna M. Ryu |

# TABLE OF CONTENTS

I.    Introduction .................................................................................................. 1

II.   Background ................................................................................................... 2

    A.    The Claims & Relief Sought. ............................................................ 2

    B.    Negotiations to Settle the Class Claims. ........................................... 3

    C.    Agreements to Settle the Individual Claims. ..................................... 4

    D.    The Agreement on Attorneys' Fees & Expenses. ............................. 5

    E.    Notice to the Class. ........................................................................... 6

III.  The Class Action Settlement Satisfies the Standards for Final Approval. ....... 6

IV.  The Ninth Circuit's Churchill Factors Favor Final Approval of the Settlement. ............... 7

    A.    The Strength of Plaintiffs' Case & Risks of Litigation Favors Approval. ............... 7

    B.    The Amount Offered in Settlement Strongly Favors Approval. ............................ 9

    C.    The Stage of the Proceedings Supports Final Approval. ...................................... 10

    D.    The Views of Experienced Counsel Supports Final Approval. ........................... 11

    E.    The Presence of A Government Participant Weighs in Favor of Approval. ........ 12

    F.    The Reaction of Class Members Supports Approval of the Settlement. ............. 12

V.   The Rule 23(e) Factors Favor Final Approval of the Settlement..................................... 12

    A.    Class Representative & Counsel Have Adequately Represented the Class.......... 13

    B.    The Proposal Was Negotiated At Arms Length. ................................................. 13

    C.    The Settlement Provides More Than Adequate Relief. ....................................... 13

          1.    The Costs, Risks, Delay of Trial and Appeal Favor Approval. ................ 14

          2.    The Method of Distributing Relief Will Be Highly Effective. ................. 14

          3.    The Attorneys' Fees & Expenses Are Appropriate. ............................... 15

          4.    The Separate Agreements Do Not Undermine the Fairness of the Class Settlement. ............... 16

    D.    The Settlement Treats Class Members Equitably. ............................................... 18

VI.  The Settlement Satisfies the Northern District Guidelines. ................................. 19

    A.  The Settlement Class is the Same as the Class in the Complaint. ........................ 19

    B.  The Scope of the Release is Appropriate and Favorable to the Class. ................. 19

    C.  The Anticipated Class Recovery Provides Nearly Full Relief Without the Need for A Claim Form or A Plan of Allocation.................................................... 20

    D.  The Settlement Does Not Contain Any Express Reversion Provisions............... 20

    E.  Lack of CAFA Notice Does Not Prevent Final Approval. .................................... 21

    F.  Co-Lead Counsel's Most Comparable Settlement is Similar to the One Here.......................................................................................................................... 22

VII.  Plaintiffs' Version of the Military Leave Form & FAQs Should Be Approved.............. 22

VIII.  The Court Should Enter Judgment Pursuant to Rule 54(b) on the Class Claims. ........... 23

IX.  The Court Should Retain Jurisdiction Over the Class Claims After Judgment............... 24

X.  Conclusion ...................................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acevedo v. Workfit Med. LLC*,
  187 F.Supp.3d 370 (W.D.N.Y. 2016) ......................................................................17

*Anderson v. City and Cnty. of San Francisco*,
  No. 4:20-cv-01149-DMR, 2025 WL 2957810 (N.D. Cal. June 18, 2025) ..................... *passim*

*Arata v. Nu Skin Int'l, Inc.*,
  96 F.3d 1265 (9th Cir. 1996) ...........................................................................24, 25

*In re Blue Cross Blue Shield Antitrust Litig.*,
  85 F.4th 1070 (11th Cir. 2023) ...........................................................................18

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...........................................................................15

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ...........................................................................15

*Campbell v. Best Buy Stores, L.P.*,
  LACV1207794JAKSHX, 2015 WL 9685556 (C.D. Cal. Aug. 19, 2015) ............................17

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ...........................................................................7, 14

*Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*,
  No. 15–cv–00216–DMR, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016) ...........................11

*Clarkson v. Alaska Airlines Inc.*,
  No. 2:19-CV-0005-TOR, 2020 WL 4495278 (E.D. Wash. Aug. 4, 2020) ................11, 14, 22

*Cohen v. Resolution Tr. Corp.*,
  61 F.3d 725 (9th Cir. 1995) ...........................................................................18

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) ...................................................................9, 10, 13

*Cottle v. Plaid Inc.*,
  No. 20-cv-03056-DMR, 2022 WL 2829882 (N.D. Cal. July 20, 2022) ...............................6

*Estakhrian v. Obenstine*,
  2019 WL 3035119 (C.D. Cal. 2019) ....................................................................23

*Ferrari v. Autobahn, Inc.,*
  No. 4:17-CV-00018-YGR, 2019 WL 295260 (N.D. Cal. Jan. 23, 2019) ...............................23

*Foster v. Adams and Assocs., Inc.,*
  No.18-cv-02723-JSC, 2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ...................................11

*Foster v. Adams and Assocs., Inc.,*
  No. 18-cv-02723-JSC, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ..............................11, 12

*Garcia v. City of King City,*
  No. 14-cv-01126-BLF, 2017 WL 363257 (N.D. Cal. Jan. 25, 2017) ....................................12

*Gonzalez v. Cnty. of Alameda,*
  No. 3:19-cv-07423-JSC, 2024 WL 4752091 (N.D. Cal. Oct. 16, 2024) ...............................23

*Gutierrez v Wells Fargo Bank, N.A.,*
  704 F.3d 712 (9th Cir. 2012) ..................................................................................................8

*Hill-Colbert v. City of Roseville,*
  No. 2:22-cv-1651 WBS DB, 2025 WL 2651490 (E.D. Cal. Sept. 16, 2025) .........................12

*In re Homestore.com Inc. Secs. Litig.,*
  225 F.R.D. 252 (C.D. Cal. 2004) ..........................................................................................23

*Hunt v. Imperial Merchant Servs,*
  No. C-05-04993 DMR, 2010 WL 11627814 (N.D.Cal. Sept. 27, 2010) ...............................25

*Huntsman v. Sw. Airlines Co.,*
  No. 19-cv-00083-PJH, 2021 WL 391300 (N.D. Cal. Feb. 3, 2021) ......................................11

*Knapp v. Art.*
  283 F.Supp.3d 823 (N.D. Cal. Aug. 22, 2017) .....................................................................11

*Laguna v. Coverall N. Am., Inc.,*
  753 F.3d 918 (9th Cir. 2014) ................................................................................................21

*Lovell v. Chandler,*
  303 F.3d 1039 (9th Cir. 2002) ..............................................................................................23

*McCoy v. Nationstar Mortgage, LLC,*
  No.: 15cv2366, 2020 WL 1530859 (S.D. Cal. Mar. 31, 2020)..........................................17, 18

*In re Mego Fin. Corp. Secs. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ............................................................................................9, 16

*Messineo v. Ocwen Loan Servicing, LLC,*
  No. 15-cv-02076-BLF, 2017 WL 733219 (N.D. Cal. Feb. 24, 2017) .....................................9

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
    No. 19-cv-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021) ..................................14

*Morris v. FPI Mgmt., Inc.*,
    No. 2:19-CV-0128-TOR, 2022 WL 3013076 (E.D. Wash. Feb. 3, 2022).........................13, 14

*Munday v. Navy Fed. Credit Union*,
    No. SACV151629, 2016 WL 7655807 (C.D. Cal. Sept. 15, 2016)..........................................8

*N.D. v. Reykdal*,
    No. 2:22-cv-01621-LK, 2025 WL 1736639 (W.D. Wash. June 23, 2025) ...........................12

*Norton v. LVNV Funding, LLC*,
    No. 18-cv-05051-DMR, 2021 WL 3129568 (N.D. Cal. July 23, 2021)...............15, 18, 19, 20

*Norton v. LVNV Funding, LLC*,
    No. 18-cv-05051-DMR, 2022 WL 562831 (N.D. Cal. Feb. 24, 2022)............................14, 18

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .......................................................................................7, 9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    No. 01-CV-12257-PBS, 2008 WL 11440614 (D. Mass. Jan. 22, 2008) ...............................23

*Quiroz Sandoval v. Roadlink USA P., Inc.*,
    EDCV1000973VAPDTBX, 2012 WL 13070777 (C.D. Cal. Feb. 28, 2012)...................17, 18

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .........................................................................................8, 13

*Sandoval Ortega v. Aho Enters., Inc.*,
    No. 19-cv-00404-DMR, 2021 WL 5584761 (N.D. Cal. Nov. 30, 2021)........................ *passim*

*Santos v. Camacho*,
    No. Civil 04-00006, 2008 WL 8602098 (D. Guam Apr. 23, 2008) ......................................18

*Schuman v. Microchip Tech. Inc.*,
    139 F.4th 1045 (9th Cir. 2025) ............................................................................................23

*Tibble v. Edison Int'l*,
    CV 07-5359, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)...................................................8

*Tussey v. ABB, Inc.*,
    850 F.3d 951 (8th Cir. 2017) .................................................................................................8

*In re Volkswagen Clean Diesel Mktg., Sales Prac., and Prod. Liab. Litig.*,
    975 F.3d 770 (9th Cir. 2020) ................................................................................................24

*Wit v. United Behav. Health,*
  58 F.4th 1080 (9th Cir. 2023) ................................................................8

**Statutes**

28 U.S.C. § 1715 ....................................................................................21

Cal. Govt. Code § 12940(a) .....................................................................2

Cal Labor Code § 201(a) ..........................................................................3

Cal. Mil. & Vet. Code § 394 ..................................................................2, 3

Cal. Mil. & Vet. Code § 395 .....................................................................2

USERRA § 4311 .....................................................................................2, 3

USERRA § 4312 .......................................................................................2

USERRA § 4313 .....................................................................................2, 3

USERRA § 4316 .......................................................................................2

USERRA § 4318 .......................................................................................2

**Other Authorities**

Fed. R. Civ. P. Rule 23 .................................................................. *passim*

Fed. R. Civ. P. Rule 54 .........................................................................23, 24

# INDEX OF EXHIBITS

Declaration of R. Joseph Barton with the following attachments:

Exhibit 1:    Clean Version of Plaintiffs' Draft Notice of Military Leave Form

Exhibit 2:    Redline Version of Plaintiffs' Draft Notice of Military Leave Form

Exhibit 3:    Clean Version of Plaintiffs' Draft Informational FAQ Sheet

Exhibit 4:    Redline Version of Plaintiffs' Draft Informational FAQ Sheet

Declaration of Michael J. Scimone with the following attachment:

Exhibit A:    Press Release

Declaration of Jonathan Rolnick with the following attachment:

Exhibit A:    Publication Notice from November Newsletter

Exhibit B:    Screenshot of Publication Notice on DHR MyPortal Site

Exhibit C:    Publication Notice Published on SFERS Online Portal

Declaration of Lisa Pavlik with the following attachment:

Exhibit A:    Class Notice Sent by Email

Exhibit B:    Class Notice Sent as Postcard

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

**To All Parties and Their Attorneys of Record:**

PLEASE TAKE NOTICE THAT on December 11, 2025 at 1:00 p.m., in Courtroom 4, 3rd Floor of the Oakland Division of the United States District Court, Northern District of California, 1301 Clay Street, Oakland California, Class Counsel and Plaintiffs Devon Anderson and Beverly L. Sweeney will move, and hereby do move, the Court to enter an order:

1.    Entering final approval of the Class Action Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

2.    Approving Plaintiffs' versions of the Military Leave Forms and FAQs;

3.    Entering final judgment only on the Class Claims (Counts I, II, III, IV, V, VI, VII, XII, XII, and XIV)[1] pursuant to Rule 54(b) of the Federal Rules of Civil Procedure;[2]

4.    Retaining jurisdiction as to the Class Claims with respect to (a) enforcement, interpretation and implementation of the Settlement Agreement; (b) distribution of the Settlement payments to the Class; (c) disputes about the payment of, division of or claims for additional attorneys' fees and reimbursement of expenses to Plaintiff's counsel, (d) enforcement

---

[1] The Court certified Counts I, II, III VI and VII on behalf of the Class under Rule 23(b)(3). The Court certified Count IV under Rule 23(b)(2) on behalf of the Pension Subclass, Count V under Ruel 23(b)(2) on behalf of the Pension Interest Subclass, Count XII under Rule 23(b)(3) on behalf of the Pension Pickup Subclass and Count XIII and XIV under Rule 23(b)(3) on behalf of the Long-Term Leave Subclass. For purpose of this Motion, Plaintiffs refer to all of these claims as the Class Claims.

[2] Plaintiff Anderson also brought three individual claims: Count VII (alleging the City violated USERRA § 4311(a) by discriminating and retaliating against him; Count IX (alleging the City violated the MVC § 394 by discriminating and retaliating against him); and Count X (alleging the City violated Cal. Govt. Code § 12940(a) by discriminating and retaliating against him). Plaintiff Sweeney also brought six individual claims Count XI (alleging the City violated USERRA §§ 4312 and 4313 by failing to promptly reemploy her; Count XV (alleging the City violated Cal Labor Code § 201(a) by failing to pay wages to her); Count XVI (alleging the City violated USERRA § 4311(a) by discriminating and retaliating against her); Count XVII (alleging the City violated USERRA § 4311 by discriminating and retaliating against her; Count XVIII (alleging the City violated the MVC § 394 by discriminating and retaliating against her); and Count XIX (alleging the City wrongfully terminated her in violation of public policy). As final written settlement agreements have not yet been reached on those claims, judgment should not be entered as to those individual claims.

PLS.' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:20-cv-01149-DMR                    1

1  and administration the Settlement, including the non-monetary terms (i.e. the prospective relief),

2  including the Claims Process and administration of the Settlement; and (e) enforcement of any

3  order of this Court.

4         This Motion is supported by the accompanying Memorandum of Law, the Declaration of

5  R. Joseph Barton ("Barton Decl."), the Declaration of Michael Scimone ("Scimone Decl."), the

6  Declaration of Lisa Pavlik ("Pavlik Decl."); the Declaration of Jonathan Rolnick ("Rolnick

7  Decl."), the Class Action Settlement Agreement, and the Proposed Order filed herewith, all of

8  the pleadings and documents on file with the Court in this action, and further evidence and

9  argument as may be submitted prior to the Court's decision on this motion.

10  Dated:  November 6, 2025                    Respectfully submitted,

11                                             */s/ R. Joseph Barton*
                                               R. Joseph Barton (Cal Bar No. 212340)
12                                             Email: jbarton@thebartonfirm.com
                                               THE BARTON FIRM LLP
13                                             1633 Connecticut Ave. Suite 200
                                               Washington, DC 20009
14                                             Tel: (202) 734-7046

15
                                               *Attorneys for Plaintiff Sweeney*
16

17                                             Michael J. Scimone (admitted *pro hac vice*)
                                               OUTTEN & GOLDEN LLP
18                                             685 Third Avenue
                                               25th Floor
19                                             New York, NY 10017
                                               Tel: (212) 245-1000
20                                             Email: mscimone@outtengolden.com

21                                             Jahan C. Sagafi (Cal. Bar No. 224887)
22                                             OUTTEN & GOLDEN LLP
                                               One California Street, 12th Floor
23                                             San Francisco, California 94111
                                               Telephone: (415) 638-8800
24                                             Facsimile: (415) 638-8810
                                               Email: jsagafi@outtengolden.com
25

26                                             *Attorneys for Plaintiff Anderson*

27

28  PLS.' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
    CASE NO. 4:20-cv-01149-DMR                    2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

Pursuant to Rule 23(e), Plaintiffs, on behalf of the certified Class and Subclasses, request final approval of the Class Action Settlement Agreement that resolves the Class Claims. Pursuant to the Settlement Agreement, Defendant the City and County of San Francisco and its agencies (the "City") have agreed to (1) effectively provide all Class Members entitled to monetary relief or benefits with the maximum relief that they would likely have been able to obtain at trial (other than liquidated damages) and (2) substantial prospective non-monetary relief that end the practices challenged in the Complaint. For Class Members identified by the City in its data, the City will pay or provide benefits to those Class members without the need for a claim form and other Class Members will have the ability to submit documents through a claims process overseen by an independent adjudicator. The City has also agreed to pay for all of the settlement administration expenses in addition to the amounts being paid to the Class. In exchange, Plaintiffs will dismiss with prejudice the Class Claims asserted in the Complaint against Defendants. The Class will also release Defendants from any claims relating to or arising out of the allegations of the Second Amended Complaint.

This Settlement is not merely "fair, reasonable, and adequate" but is an excellent result for the Class as it provides nearly all the monetary and non-monetary relief requested in the Complaint. The settlement was negotiated with the assistance and under the supervision of Judge Corley through more than 20 settlement conferences and after an exchange of data and other information, including a court-approved survey of Class members. Notice was sent to the Class by email or U.S. mail to those Class members that the City was able to identify in its data. Publication Notice was made on the City's HR website, in the City's employee newsletters and on the San Francisco Employees' Retirement System ("SFERS") website and on a dedicated settlement website. The Parties also issued a joint press release that has received local news coverage. To date, no Class Member has objected to the Settlement or requested exclusion. Thus, the Court should grant final approval of this Class Action Settlement.

1    **II.    Background**

2        **A.    The Claims & Relief Sought.**

3        After over a year of investigation and review of numerous documents from Plaintiffs,

4    Class Counsel drafted and filed a 75-page Complaint against the City with nineteen claims, with

5    ten filed on behalf of a Class (or Subclass) of employees who took military leave during their

6    employment with the City since October 10, 2004, and the remaining claims were on behalf of

7    Plaintiffs individually. ECF No. 162-1 (Barton Decl.) ¶ 26; ECF No. 1. The Class (and Subclass)

8    Claims are summarized as follows: The City (Count I) violated USERRA § 4312 by requiring

9    approval for military leaves of more than 5 days; (Count II) violated USERRA § 4316 by

10   denying vacation and sick leave accrual to employees on unpaid military leave while providing

11   those benefits to employees on other forms of leave; (Count III) violated Cal. Mil. & Vet. Code

12   ("MVC") §§ 395(a) & 395.01(a) by failing to pay employees for certain periods of military leave

13   (i.e. travel to/from duty); (Count IV) violated USERRA § 4318 by imposing administrative

14   requirements that discouraged employees on military leave from purchasing pension credits;

15   (Count V) violated USERRA § 4318 by requiring interest on pension buybacks; (Count VI and

16   VII) violated USERRA §§ 4312 and 4313 by failing to promptly reemploy employees on

17   military leave; (Count XII) violated USERRA § 4318 by failing to make proper pension

18   contributions; (Count XIII) violated USERRA § 4311(a) by failing to pay employees on military

19   leave for the first 30 calendar days of leave as required by MVC § 395l; and (Count XIV)

20   violated the City's Annual Salary Ordinance by failing to pay employees on military leave.

21       The Complaint alleges three claims by Plaintiff Anderson individually: The City (Count

22   VIII) violated USERRA § 4311(a) by discriminating and retaliating against him; (Count IX)

23   violated the MVC § 394 by discriminating and retaliating against him; and (Count X) violated

24   Cal. Govt. Code § 12940(a) by discriminating and retaliating against him. Anderson and the City

25   reached a settlement in principle to settle these claims, but the agreement has not been set forth

26   in a final written agreement. Scimone Decl. ¶ 3.

27       The Complaint alleges six claims by Plaintiff Sweeney individually: The City (Count XI)

28   PLS.' MEMO ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
     CASE NO. 4:20-cv-01149-DMR                    2

violated USERRA §§ 4312 and 4313 by failing to promptly reemploy Sweeney; (Count XV)

violated Cal Labor Code § 201(a) by failing to pay wages; (Count XVI and Count XVII) violated

USERRA § 4311(a) by discriminating and retaliating against her at various time; (Count XVIII)

violated the MVC § 394 by discriminating and retaliating against her; and (Count XIX)

wrongfully terminated her in violation of public policy. Sweeney and the City reached a

settlement in principle to settle these claims, which is reflected in a two-page term sheet, but has

not been set forth in a final written agreement. Barton Decl. ¶ 6.

### B.    Negotiations to Settle the Class Claims.

Shortly after the complaint was filed, the Parties jointly requested a stay of litigation and

referral to a magistrate judge. ECF No. 9. The Court granted the request and referred the case to

then-Magistrate Judge Corley. ECF No. 15. Judge Corley held four initial settlement conferences

from April 8, 2020 to June 24, 2020 to discuss pre-settlement discovery. ECF No. 17, 21, 23, 26

¶ 1(f). Plaintiffs' counsel explained that a settlement would require the City to provide certain

discovery, to reform the City policies and practices and to provide for a claims process. ECF No.

32 ¶ B(h). At a September 1, 2020 conference, the parties discussed the discovery exchanged and

the potential use of employee samples. *Id.* at ¶ B(k). By the September 16, 2020 conference, the

parties agreed on a mechanism to assess the Class claims, a written proposal regarding that

mechanism, including other documents that would be part of a settlement agreement, a process

for resolving the more complex claims concerning reemployment positions under USERRA,

additional leave data from the City and the use of employee samples. At the October 30, 2020

conference, the parties agreed on a timeline for a Court approved Notice and Survey to potential

class members. ECF No. 43 ¶ 10. At the December 1, 2020 settlement conference, the parties

discussed the Notice and Survey, the City's requirements for notice of military leave, damages

and the availability of various types of data. *Id.* at ¶ 11. On December 4, 2020, the parties agreed

on a Notice and Survey to potential Class Members, which this Court approved. ECF Nos. 39,

40. The Parties hired a notice administrator, reviewed and analyzed the responses and utilized

those responses in settlement discussions. Barton Decl. ¶ 5. At a February 11, 2021 conference,

the parties discussed the survey, damages, and a settlement timeline. ECF No. 48. at ¶ 10. At an April 12, 2021 settlement conference, the parties discussed additional data sources and data analysis, survey responses and damages. *Id.* at ¶ 11.

Judge Corley held three more settlement conferences between August 4 and October 22, 2021. ECF No. 60 ¶ 7. Between these conferences, the parties exchanged proposals to resolve the Class Claims. *Id.* at ¶ 8. The City also produced additional data on October 14, 2021 for a significant part of the class period that the City had previously believed was unavailable. *Id.* at ¶ 9. At these settlement conferences, the parties further discussed various proposals to resolve the class claims. *Id.* at ¶ 10. Before a January 21 2022 conference, the parties exchanged proposals to resolve the Class Claims and the City produced more data on November 16, 2021. ECF No. 64 ¶ 8- 9. On January 3, 2022, Plaintiffs' counsel sent the City a draft 19-page term sheet to settle the Class Claims. *Id.* at ¶ 11. At the January 2022 settlement conference, the City expressed essential agreement on outstanding issues regarding the Class claims, subject to certain edits to the term sheet and agreed to provide additional information to resolve the Class Claims. *Id.* at ¶ 12. Judge Corley held a conference on August 8, 2022, where the parties discussed remaining issues related to the draft settlement term sheet for the Class Claims. ECF No. 76 ¶¶ 9-11.

The Parties entered into a 19-page class settlement term sheet on November 15, 2022. Agmt. at Recital E. The final written Class Action Settlement Agreement, which consists of 95 pages including exhibits, was fully executed on November 19, 2024, after which Plaintiffs' counsel promptly filed for preliminary approval of the settlement. ECF No. 122.

### C.    Agreements to Settle the Individual Claims.

Plaintiffs began discussing settlement of their individual claims only after the material terms for the Class Claims had been agreed upon and those discussions occurred in settlement conferences with Judge Corley. *See* ECF No. 60 ¶ 12, No. 79 ¶ 14; Barton Decl. ¶ 6; Scimone Decl. ¶ 3. The Class Notice discloses that Plaintiffs have reached agreement to settle their individual claims. ECF No. 150-1 (Pavlik Decl.) at Ex. A at 5.

Significant discussions with the City about Ms. Sweeney's claims occurred at an April

25, 2022 conference and November 16, 2022 conference. ECF No. 76 ¶¶ 9-11, No. 79 ¶¶ 15-16. A term sheet was reached on December 20, 2022. ECF No. 162-1 (Barton Decl.) ¶ 30. The term sheet contemplates a formal written agreement, but none has been finalized. Barton Decl. ¶ 6.

Anderson and the City discussed resolving his claims at a settlement conference on May 9, 2022 and reached an oral agreement on the terms to settle his claims. ECF No. 70 ¶ 9. Scimone Decl. ¶ 3. That oral agreement has not been reduced to a final written agreement. *Id.*

**D.    The Agreement on Attorneys' Fees & Expenses.**

Plaintiffs' counsel did not begin discussing attorneys' fees and expenses with the City until November 17, 2023 when they sent a demand for attorneys' fees and expenses through that date. ECF No. 94 ¶¶ 9, 11; Barton Decl. ¶ 7. On April 23, 2024, Judge Corley ordered the City to provide a counter to Plaintiff's demand regarding attorneys' fees and expenses. ECF Nos. 99, 102. At the May 28, 2024 settlement conference, the parties reached an agreement on the amount that Defendants would pay in attorneys' fees and expenses incurred through May 28, 2024 (with the amount to resolve class claims being subject to approval by the Court). ECF No. 107 ¶ 12. At the final conference on July 18, 2024, the parties agreed on the form of the agreement for attorneys' fees and expenses through May 28, 2024. *Id.* at ¶ 14.

The Class Settlement Agreement recites that the City and Class Counsel reached an agreement on the amount of attorneys' fees and expenses through May 28, 2024. Agmt § XI.A. The Settlement Agreement provides that if Class Counsel incurs more than nominal attorneys' fees or expenses after May 28, 2024, Class Counsel will be entitled to file another motion seeking an award of additional attorneys' fees and expenses after Final Approval (including in connection with representing Class Members in the Claims Process). *Id.* § XI.B. The Agreement also provides that it is not conditioned on the Court's rejection or modification of Class Counsel's requested fees. *Id.* § XI.D.

Plaintiffs and their counsel entered into a separate agreement with the City, subject to Court approval on the amount of attorneys' fees and expenses that the City will pay for fees and expenses incurred through May 28, 2024.ECF No. 162-7 (Barton Decl.) at Ex 6 ("Fee Agmt") §

I.1. As explained in Plaintiff's Motion for Attorneys' Fees, Plaintiffs' counsel has exercised its right to withdraw from the agreement due to City breaching that agreement. ECF No. 162 at 15-16. After Plaintiffs filed their Motion for Attorneys' Fees & Expenses, Plaintiffs' counsel and the City reached agreement on the amount of attorneys' fees and expenses that the City would pay from May 29, 2024 through October 19, 2025. *See* ECF No. 164.

### E.    Notice to the Class.

The Settlement Administrator sent the Court-approved notice by email or U.S. mail to the 318 Class Members identified in the data produced by the City. (ECF No. 150-1 (Pavlik Decl.) ¶¶ 8 & 9. The Settlement Administrator received only a handful of undeliverable notices and was able to re-send those notices. Pavlik Decl. ¶¶ 5-7. The Settlement Administrator established a dedicated webpage that has received over 1,559 visits. *Id.* ¶ 8. After counsel for the City informed Class Counsel that the data it produced may not have identified all Class Members who took military leave only before 2014, Class Counsel and the City agreed on a Publication Notice that would be (1) included in the City's Department of Human Resources ("DHR") monthly newsletter provided to all current City employees; (2) posted to the City's DHR's online MyPortal site which is accessible to all current City employees (3) posted on the San Francisco Employee Retirement System ("SFERS") online portal. ECF No. 157. Those publication notices have been made. Rolnick Decl. ¶¶ 2-5. Class Counsel and Defendants also agreed to issue a joint press release, which was issued on October 29, 2025. Scimone Decl. ¶¶ 4-5 & Ex. A. That press release has resulted in at least one San Francisco TV station covering this settlement. *Id.* ¶ 6.

### III.    The Class Action Settlement Satisfies the Standards for Final Approval.

In the Ninth Circuit, a "strong judicial policy [] favors settlements" of class actions. *Cottle v. Plaid Inc.,* No. 20-cv-03056-DMR, 2022 WL 2829882, at *4 (N.D. Cal. July 20, 2022) (Ryu, J.) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Rule 23(e) imposes on district courts an independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members." *Sandoval Ortega v. Aho Enters., Inc.*, No. 19-cv-00404-DMR, 2021 WL 5584761, at *5 (N.D. Cal. Nov.

30, 2021) (Ryu, J.) (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021)). In evaluating whether a class settlement meets those standards, courts in this District examine (1) the fairness factors set forth in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), (2) the factors in Rule 23(e)(2), and (3) this District's Procedural Guidance for Class Action Settlements to the extent not encompassed within the *Churchill* and Rule 23(e)(2). *Id.* "The relative degree of importance to be attached to any particular factor will depend upon ... the unique facts and circumstances presented by each individual case." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). This Settlement satisfies all of these standards.

## IV.    The Ninth Circuit's *Churchill* Factors Favor Final Approval of the Settlement.

The Ninth Circuit's *Churchill* factors require the court to evaluate the following:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575. These factors all favor final approval.

### A.    The Strength of Plaintiffs' Case & Risks of Litigation Favors Approval.

As this Court has explained, the first three factors should be addressed together and require the court to assess the plaintiffs' "'likelihood of success on the merits and the range of possible recovery' versus the risks of continued litigation and maintaining class action status through the duration of the trial." *Sandoval*, 2021 WL 5584761, at *6. The court should not "reach any ultimate conclusions on the contested issues" on "the merits of the dispute" because settlements are the product of uncertainty of outcome in litigation and "avoidance of wasteful and expensive litigation." *Officers for Justice*, 688 F.2d at 625. These first three factors weigh in favor of approval when a defendant has "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery." *Sandoval*, 2021 WL 5584761, at *6. There is

no "particular formula by which th[e] outcome [of litigation] must be tested" and "[u]ltimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625). The strength of Plaintiffs' claims is illustrated by a settlement which provides Class Members with 100% of the benefits to which Plaintiffs allege they were entitled (other than liquidated damages) and an end to the challenged practices. *Anderson v. City and Cnty. of San Francisco*, No. 4:20-cv-01149-DMR, 2025 WL 2957810, at *3 (N.D. Cal. June 18, 2025).

Even so the results at a jury trial in complex cases are always uncertain, even when litigated by experienced and skilled plaintiff's counsel. *Munday v. Navy Fed. Credit Union*, No. SACV151629, 2016 WL 7655807, *8 (C.D. Cal. Sept. 15, 2016) ("[I]n any case, there is a substantial risk of losing at trial."). Even plaintiffs in class actions who survive summary judgment and succeed at trial have had verdicts reversed on appeal. For example, the Ninth Circuit recently reversed a district court decision in favor of the class after a ten-day bench trial. *Wit v. United Behav. Health,* 58 F.4th 1080, 1090 (9th Cir. 2023); *see Gutierrez v Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012) (reversing in part a judgment in favor of a certified class, vacating a $203 million restitution award, and remanding for further proceedings). Even when plaintiff and a class succeed at trial and have the trial decision affirmed on appeal, it can result in significant delay, sometimes with multiple appeals. *E.g. Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting lengthy procedural history for case initially filed in 2006, and remanding for district court a second time); *Tibble v. Edison Int'l*, CV 07-5359 SVW (AGRx), 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007). As Class Counsel have tried several class actions, they are well-aware of both the risks and delays of a trial. *See* Barton Decl. ¶ 4.

As they did throughout the negotiations, the City denies any wrongdoing or liability. Agmt. at Recital G; *see* Scimone Decl. Ex. A. There are a number of issues on the merits or certification of the claims, if the case were litigated, which could have impeded or reduced the

recovery by the Class. For Count II, there was a risk of a finding that former employee class members were not harmed because they had not used the sick time and would have forfeited that extra leave. Barton Decl. ¶ 3. On Count III, there was a risk that the amounts for paid time off could not have been proved on class wide basis because it would have required individual proof by class members. *Id.* On Count III, there was also a risk that the statute of limitations under California law would limit claims to three years before the complaint was filed. *Id.* For Count IV, the City would have likely argued that their procedures were lawful and that any class member who had not requested a pension buyback should not be allowed to recover. *Id.* On Counts VI and VII, there was a risk that these claims would not be certified on behalf of a class due to individualized issues regarding reemployment. *Id.* On Count XIII, the City would have likely argued that employees who have not purchased service credits had not been harmed and employees who had already maxed out years of service and age and those who already on disability retirement were not harmed. *Id.* Finally on Counts XIII and XIV, the City would have likely argued that California's statute of limitations would limited claims to those filed within the three years before the Complaint. *Id.* Thus, this factor favors approval.

### B.  The Amount Offered in Settlement Strongly Favors Approval.

This factor addresses "the amount of recovery offered in settlement." *Cottle v. Plaid Inc.,* 340 F.R.D. 356, 374 (N.D. Cal. 2021) (Ryu, J.). When considering whether the amount offered in settlement is fair and adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding settlement that was "roughly one-sixth of the potential recovery" was fair and adequate). It is the "rare class action settlement which provides complete relief for all alleged harms." *Messineo v. Ocwen Loan Servicing, LLC,* No. 15-cv-02076-BLF, 2017 WL 733219, at *9 (N.D. Cal. Feb. 24, 2017). This factor probably weighs most heavily in favor of approval as this Settlement "will effectively provide all Class

Members entitled to monetary relief or benefits with the maximum relief they would likely have been able to recover at trial" other than liquidated damages. *Anderson*, 2025 WL 2957810, at *3.

This Settlement provides substantial monetary and non-monetary relief to the Class. *Id.* Class members identified in Defendants' data will receive 100% of the benefits without needing to submit a claim and those who are not identified will have an opportunity to establish their claim through a claims process with a neutral and independent adjudicator. *Id.* As to the non-monetary relief, the Settlement provides Class members with an opportunity to buy back pension credit for prior periods of military leave without paying interest. *Id.* And the Settlement requires the City to change its policies, procedures and practices alleged in Counts I, II, III, IV, and V. *Id.*

## C.    The Stage of the Proceedings Supports Final Approval.

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *Cottle,* 340 F.R.D. at 375. "[I]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Id.* (finding Class Counsel had sufficient information as they had conducted an extension pre-filing investigation, had obtained some formal discovery and also documents, data and other information as part of the settlement process). Here, this case resolved following the exchange of pre-settlement data and discovery between the parties. Barton Decl. ¶ 5. Because some information needed to fully evaluate and resolve the claims of the Class were not readily available from records maintained by the City and its constituent departments, on December 4, 2020, the Parties stipulated to a process which provided notice to the putative Class of this litigation and requested that they return a survey seeking information from putative Class Members relevant to their claims. ECF No. 39. The parties used the data obtained through that survey process to inform their negotiations. Barton Decl. ¶ 5. Thus, Class Counsel had sufficient information on which to negotiate and this ultimately resulted in the City agreeing to provide payments and benefits to Class members that were the equivalent to full value (other than liquidated damages) and also agreeing end the practices challenged in the Complaint.

1    The arms-length nature of the process is illustrated by a magistrate judge (now district

2    judge) overseeing the process and the number of settlement conferences. *See Anderson,* 2025

3    WL 2957810, at *3. Here, there were more than 20 settlement conferences assisted by Judge

4    Corley over a period of several years. And the numerous status reports document the efforts and

5    information that were exchanged over those years.

6    **D.      The Views of Experienced Counsel Supports Final Approval.**

7        "The Ninth Circuit recognizes that parties represented by competent counsel are better

8    positioned than courts to produce a settlement that fairly reflects each party's expected outcome

9    in litigation." *Knapp v. Art.com, Inc.*, 283 F.Supp.3d 823, 833 (N.D. Cal. Aug. 22, 2017) (citing

10   *Rodriguez*, 563 F.3d at 967). Courts give "great weight ... to the recommendation of counsel,

11   who are most closely acquainted with the facts of the underlying litigation." *Foster v. Adams and*

12   *Assocs., Inc.,* No. 18-cv-02723-JSC, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022). This

13   Court has found that the views of experienced counsel weigh in favor of approving settlements.

14   *Sandoval*, 2021 WL 5584761, at *8; *Civil Rights Educ. and Enforcement Ctr. v. Ashford*

15   *Hospitality Trust, Inc.,* No. 15–cv–00216–DMR, 2016 WL 1177950, at *4 (N.D. Cal. Mar. 22,

16   2016) (Ryu, J.) (finding the opinion of "highly skilled and experienced class action litigators

17   with significant expertise" in relevant area of law supported approval). Courts in this Circuit

18   have recognized the experience of these Class Counsel in USERRA, employment and employee

19   benefit class actions. *Clarkson v. Alaska Airlines Inc.,* No. 2:19-CV-0005-TOR, 2020 WL

20   4495278, at *5 (E.D. Wash. Aug. 4, 2020) (finding these same "counsel have significant

21   experience litigating class action and USERRA cases."); *see Huntsman v. Sw. Airlines Co.,* No.

22   19-cv-00083-PJH, 2021 WL 391300, at *10 (N.D. Cal. Feb. 3, 2021) (certifying a USERRA

23   class action after finding these same counsel had "experience in and knowledge regarding

24   litigating employment class action cases."); *Foster v. Adams and Assocs., Inc*., No.18-cv-02723-

25   JSC, 2019 WL 4305538, at *6 (N.D. Cal. Sept. 11, 2019) (finding co-lead counsel, which

26   included Joseph Barton, were "experienced class actions lawyers who specialize in employee

27   benefit cases."). Counsel's experience litigating employment class actions generally and

28   PLS.' MEMO ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
     CASE NO. 4:20-cv-01149-DMR                        11

USERRA class actions specifically is detailed in their declarations in support of class

certification. Barton Decl. (ECF No. 162-1) ¶¶ 2-5; Scimone Decl. (ECF No. 162-11) ¶¶ 18-20.

As Class Counsel endorses the settlement, this weighs in favor of approval. Agmt. at Recital F.

**E.    The Presence of A Government Participant Weighs in Favor of Approval.**

Courts in this Circuit have held that where the defendant is a governmental entity that has

agreed to the settlement, this factor weighs in favor of approval. *Hill-Colbert v. City of Roseville*,

No. 2:22-cv-1651 WBS DB, 2025 WL 2651490, at *5 (E.D. Cal. Sept. 16, 2025) (finding this

factor satisfied because the defendant city approved the settlement agreement); *Garcia v. City of*

*King City,* No. 14-cv-01126-BLF, WL 2017 WL 363257 at *8 (N.D. Cal. Jan. 25, 2017) (same);

*see N.D. v. Reykdal*, No. 2:22-cv-01621-LK, 2025 WL 1736639, at *12 (W.D. Wash. June 23,

2025) (reaching similar conclusion based on agreement by state "government defendants" as "in

the public's interest"). The Settlement requires approval by the City (including the Board and

Mayor). Agmt. § XIII.A. Thus, this factor weighs in favor of approval.

**F.    The Reaction of Class Members Supports Approval of the Settlement.**

"Courts have repeatedly recognized that the absence of a large number of objections to a

proposed class action settlement raises a strong presumption that the terms of a proposed class

settlement action are favorable to the class members." *Foster,* 2022 WL 425559, at *6. Here, no

class members have objected to the settlement or requested exclusion. Pavlilk Decl. ¶ 12. Thus,

this factor weighs in favor of approval.

**V.    The Rule 23(e) Factors Favor Final Approval of the Settlement.**

Rule 23(e) requires the court to consider whether: (A) the class representatives and class

counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay

of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims; (iii) the terms of any proposed

award of attorney's fees, including timing of payment; and (iv) any agreement required to be

identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. Rule 23(e)(2).

### A.    Class Representative & Counsel Have Adequately Represented the Class.

This factor is met when Plaintiffs' interests are aligned with the Class, they have "constructively and effectively contributed to the prosecution of the claims on behalf of the Class" and Class counsel "are experienced and competent." *Cottle,* 340 F.R.D. at 376. Mr. Anderson and Ms. Sweeney were actively involved and provided useful information throughout the litigation and the numerous settlement conferences. ECF No. 161-1 (Anderson Decl.) ¶ 11-13; ECF No. 161-2 (Sweeney Decl.) ¶ 11-13. Class Counsel have significant experience litigating USERRA class actions. *Supra* IV.D. Thus, this factor is satisfied.

### B.    The Proposal Was Negotiated At Arms Length.

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez,* 563 F.3d at 965. When a settlement is preceded by extensive, arms-length negotiations, that favors approval. *Morris v. FPI Mgmt., Inc.,* No. 2:19-CV-0128-TOR, 2022 WL 3013076, at *2 (E.D. Wash. Feb. 3, 2022); *see Sandoval,* 2021 WL 5584761, at *9. As this Court found, "the Settlement Agreement is the result of serious, informed, and non-collusive negotiations." *Anderson,* 2025 WL 2957810, at *3. Negotiations overseen by Judge Corley in over 20 settlement conferences "reinforces that the Settlement Agreement is non-collusive." *Id.*

### C.    The Settlement Provides More Than Adequate Relief.

Rule 23(e)(2)(C) identifies four subfactors for courts to consider: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C); *Morris,* 2022 WL 3013076, at *3. Each of these subfactors supports final approval.

1

### 1.    The Costs, Risks, Delay of Trial and Appeal Favor Approval.

Where plaintiff "would face several hurdles before resolution of the matter, including additional discovery, contested class certification, dispositive motion practice, and ultimately, trial and the potential for an appeal," this factor favors final approval. *Morris,* 2022 WL 3013076, at *3. This factor is identical to the *Churchill* factors. *Sandoval,* 2021 WL 5584761, at *10. The cost, risks and delay favors approval. *Supra* V.

### 2.    The Method of Distributing Relief Will Be Highly Effective.

Rule 23 requires the court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). A settlement that does not require class members to submit claims as a condition of recovery, but merely mails settlement checks to Class Members for whom the Settlement Administrator has data provides a straight-forward process and is an effective method for distributing the settlement payments to the Class. *Clarkson. Alaska Airlines, Inc*., No. 2:19-CV-0005-TOR, 2025 WL 243024, at *5 (E.D. Wash. Jan. 15, 2025). This Court has found that settlements where class members "will automatically receive their share of the settlement" without needing to submit a claim form provide an effective method of distributing relief. *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc*., No. 19-cv-07087-DMR, 2021 WL 1788447, at *12 (N.D. Cal. May 5, 2021); *Sandoval,* 2021 WL 5584761, at *10 (finding same where class members did not "need not submit a claim form in order to receive a Settlement Share"). In this Settlement, any Class member identified by the City will simply receive a check without having to submit a claim form. As such, this is an effective method of distribution.

This Court considers the adequacy of notice in assessing this factor. *Sandoval,* 2021 WL 5584761, at *10. In *Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2022 WL 562831 (N.D. Cal. Feb. 24, 2022), this Court found that notice by mail and a dedicated website constituted sufficient notice. *Id.* at *4. Here, the Court approved sending the Class Notice (and attachments) by email (if available) or U.S. Mail and posting them on a dedicated website. *Anderson*, 2025 WL 2957810, at *5. After Class Counsel learned that the data produced by the

City may not include all employees who only took military leave before 2014, Class Counsel and Defendants agreed on a Publication Notice that would be (1) included in the City's Department of Human Resources ("DHR") monthly newsletter provided to all current City employees; (2) posted to the City's DHR's online MyPortal site which is accessible to all current City employees; and (3) posted on the San Francisco Employee Retirement System ("SFERS") online portal. ECF No. 157; *see* Rolnick Decl. ¶¶ 2-5. Class Counsel and the City also issued a joint press release on October 29, 2025. Scimone Decl. ¶¶ 4-5 & Ex. A. That has resulted in coverage by at least one San Francisco TV station. *Id.* ¶ 6.

### 3.     The Attorneys' Fees & Expenses Are Appropriate.

The Ninth Circuit requires courts to "scrutinize agreements for 'subtle signs that class counsel have allowed pursuit of their own self-interests ... to infect negotiations.'" *Briseño*, 998 F.3d at 1023 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). The three "*Bluetooth* factors" are (1) "when counsel receive a disproportionate distribution of the settlement or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) when the payment of attorneys' fees is "separate and apart from class funds"; and (3) when the parties arrange for benefits that are not awarded to revert to the defendants rather than being added to the class fund. *In re Bluetooth*, 654 F.3d at 947.

First, when the requested fee is lower than lodestar, a "negative multiplier weighs in favor of reasonableness" because contingency cases may result in a positive multiplier *Norton v. LVNV Funding, LLC,* No. 18-cv-05051-DMR, 2021 WL 3129568, at *11 (N.D. Cal. July 23, 2021) (Ryu, J.). Here, the settlement will provide class members with the "maximum [monetary] relief they would likely have been able to recover at trial" plus prospective relief that ends the challenged practices. *Anderson*, 2025 WL 2957810, at *3. In such a circumstance, there can be little to no concern that Class counsel traded the class claims for their own benefit.

Second, a "clear sailing agreement" – where defendants have agreed on an amount or not oppose a certain amount of fees – is merely a "warning sign" and does not alone show collusion. *Sandoval*, 2021 WL 5584761, at *9. Here, all negotiations, including fees were supervised by

Judge Corley. The Parties did not begin to discuss fees until after the material terms for the Class settlement had been agreed upon. Even then, Plaintiff's counsel reached agreement with the City only as to fees through May 28, 2024 and for significantly less than lodestar. As of this filing, Plaintiff's counsel exercised their right to withdraw from that agreement, which illustrates that certainty about an amount of fees was not the motivating factor for settlement. Finally, for fees from May 29,2024 through October 19, 2025, Plaintiffs' counsel reached agreement as to the amount only after filing their motion for fees and expenses.

The third factor is not a concern when any excess funds do not revert to defendants. *Sandoval,* 2021 WL 5584761, at *10. As in *Sandoval*, any amount of fees that are not awarded to counsel will be distributed to Class Members, or to *cy pres* recipients. ECF No. 162-7 (Fee Agmt.) § I.2.7. And as there are no claim forms and class members will simply receive payment, there are no excess funds to revert. *See infra* VI.C.

### 4. The Separate Agreements Do Not Undermine the Fairness of the Class Settlement.

Rule 23(e)(2)(C)(iii) requires consideration of any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. Rule 23(2)(C)(iii). Rule 23(e)(3) requires the parties to identify any "agreement made in connection with" the settlement. Fed. R. Civ. P. Rule 23(e)(3). As the Manual for Complex Litigation explains, this rule merely requires "identification of any agreement or understanding that might have affected the interests of class members by altering what they may be receiving or foregoing." Manual Complex Litig. § 21.631 (4th ed.). Once the agreement is identified, the court can then "decide whether to require specified agreements to be revealed and whether to require filing complete copies or only summaries of the agreements." *Id.* There are two sets of such agreements here: (1) the agreements regarding fees and expenses and (2) agreements resolving Plaintiffs Anderson's and Sweeney's respective individual claims.

There are two agreements regarding fees and expenses. The first is a formal written Agreement Regarding Attorneys' Fees & Expenses Through May 28, 2024, that was submitted in connection with Plaintiffs' Motion for Fees and Expenses. ECF No. 162-7. The second

agreement is memorialized in an email, which was reached only after Plaintiffs filed their motion for Fees and Expenses and was filed by the City in response to that motion and addresses fees and expenses from May 29, 2024 through October 19, 2025. ECF No. 164-1 at 5. As "Rule 23(e)(2)(C)(iii) now independently requires consideration of fees at settlement, [the] reference to side agreements may simply be redundant as applied to fee agreements." 4 Newberg and Rubenstein on Class Actions § 13:55. These agreements are reasonable and appropriate. *See supra* V.C.3.

There are also two separate agreements in principle regarding Anderson's individual claims alleged in Counts VIII, IX and X and Sweeneys' individual claims in Counts XI, XVI, XVII, XVIII and XIX. *See* Compl. ¶¶ 279-305, 339-361. These agreements are contingent on settlement and approval of the Class Claims. ECF No. 162-7 at Recitals C, D. The agreement regarding Anderson's individual claims have not been reduced to a written agreement. Scimone Decl. ¶ 3. The agreement regarding Sweeney's individual claims currently exists only in a 2-page written term sheet. Barton Decl. ¶ 6. Courts approve class action settlements where the class representative has entered into a separate settlement agreement that resolves and releases individual claims that were not certified for class treatment. *Campbell v. Best Buy Stores, L.P.*, LACV1207794JAKSHX, 2015 WL 9685556, at *3 (C.D. Cal. Aug. 19, 2015) (approving class settlement where separate settlement for class representatives involved "non-certified claims" which were not inconsistent with the class claims and there is no evidence that they placed his own interests ahead of those of the Class); *Quiroz Sandoval v. Roadlink USA P., Inc.*, EDCV1000973VAPDTBX, 2012 WL 13070777, at *3 (C.D. Cal. Feb. 28, 2012) (same); *see Acevedo v. Workfit Med. LLC*, 187 F.Supp.3d 370, 384 (W.D.N.Y. 2016) (approving additional payments to class representative to settle individual case and providing broad release). In *McCoy v. Nationstar Mortgage, LLC*, No.: 15cv2366 DMS(AGS), 2020 WL 1530859 (S.D. Cal. Mar. 31, 2020), the court found a separate agreement by a class representative to settle an individual claim, not covered by the class claims, which was negotiated with the assistance and oversight of the Magistrate Judge and for which the payment was separate from the class payments, was

appropriate and did not undermine the fairness of the class settlement. *Id.* at \*6.[3] Those same facts apply here as these are individual claims, negotiated with the assistance of Judge Corley and the payments are entirely separate from the amounts paid for the Class claims.

**D.    The Settlement Treats Class Members Equitably.**

Rule 23(e)(2)(D) provides that one consideration in evaluating a settlement is whether, taken together and evaluated in its entirety, "the proposal treats class members *equitably* relative to each other." Rule 23(e)(2) (D) (emphasis added). As the Eleventh Circuit explained in rejecting an objector's argument, "the text of the amended rule requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.,* 85 F.4th 1070, 1093 (11th Cir. 2023). Put simply, this provision "ensure[s] that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." 4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed.). As the Ninth Circuit previously recognized, "[a] class action settlement need not necessarily treat all class members equally." *Cohen v. Resolution Tr. Corp.,* 61 F.3d 725, 728 (9th Cir. 1995) *vacated on other grounds,* 72 F.3d 686 (9th Cir. 1996). Differential treatment is appropriate when it is "rationally based on legitimate considerations." *Id.* Where the disparate treatment is rationally based on legitimate considerations and there was no indication of any collusion against them, the settlement may be approved. *See id.* at 727, 728 (approving such a settlement); *see also Santos v. Camacho,* No. Civil 04-00006, 2008 WL 8602098, \*10 (D. Guam Apr. 23, 2008) (same), *aff'd sub nom. Simpao v. Gov't of Guam,* 369 F.App'x 837 (9th Cir. 2010). As this Court has explained, "[c]ourts have approved settlement plans that pay monetary benefits based on the comparative strengths and weaknesses of certain claims." *Norton,* 2021 WL 3129568, at \*12. In *Norton,* this Court approved a settlement in which each class member who submits a valid claim "will receive a full

---

[3] As in *McCoy*, plaintiffs are willing to disclose the precise terms to the Court *in camera*. *See id*. Additionally, the existence of these individual settlements were disclosed to the Class in the Class Notice. ECF No. 150-2 at 5.

1    reimbursement of all amounts Defendants collected from them." *Id.* In this Settlement, the City

2    will pay or provide benefits to Class members for the full amount of their claim (other than

3    liquidated damages) without the need to submit a claim. Those class members not identified by

4    the City will also receive the full amount of their claim, and will be resolved by a neutral

5    adjudicator. The only difference among class members is whether the City identifies them in its

6    data and the amount to be paid, which is simply based on the amount of their claim. Thus, to the

7    extent that this is even considered differential treatment, it is based on legitimate considerations.

8    **VI.    The Settlement Satisfies the Northern District Guidelines.**

9        This District has procedural guidance for class action settlements, which courts consider,

10   "although the [guidelines] do not carry the weight of law." *Norton*, 2021 WL 3129568, at *12.

11       **A.    The Settlement Class is the Same as the Class in the Complaint.**

12       The Guidelines require the parties to state "any differences between the settlement class

13   and the class proposed in the operative complaint and an explanation as to why the differences

14   are appropriate in the instant case." Guideline § 1(a). The Class defined in the Settlement

15   Agreement is the same as the Complaint. *Compare* ECF No. 1 ¶¶ 19-21 *with* ECF No. 122 ¶ I.W.

16   Certain Subclass definitions were amended pursuant to this Court's order. ECF No. 145.

17       **B.    The Scope of the Release is Appropriate and Favorable to the Class.**

18       The Guidelines require the court to look at "any differences between the claims to be

19   released and the claims certified for class treatment and an explanation as to why the differences

20   are appropriate in the instant case." Guideline § 1(d). Here, the Settlement only releases claims

21   relating to or arising out of facts alleged or claims set forth in the Class Claims. Agmt. § XII; *see*

22   *Anderson,* 2025 WL 2957810, at *3. And *only* Class Members who receive a monetary payment

23   or additional benefits or submit a claim in the claims process will release claims. Agmt. § XII.

24   This unusual provision ensures that Class Members who receive no benefits or payments or do

25   not submit a claim will not release their claims.

26

27

28   PLS.' MEMO ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
     CASE NO. 4:20-cv-01149-DMR                  19

**C.    The Anticipated Class Recovery Provides Nearly Full Relief Without the Need for A Claim Form or A Plan of Allocation.**

The Guidelines require parties to explain "[t]he anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise." Guideline § 1(e). The Settlement "effectively provide[s] all Class Members entitled to monetary relief or benefits with the maximum relief they would likely have been able to recover at trial (except for the potential of liquidated damages if the City's violations were found to be willful)." *Anderson,* 2025 WL 2957810, at *3. And the Settlement requires the City to "make prospective changes to its policies and procedures to bring them into compliance with the law, and the practices complained of by Counts I, II, III, IV, and V will end." *Id.* As a result, there is no plan of allocation. Likewise, there is no claim form for class members for whom the City has data; those class members will simply be paid. Agmt. § VI.C.1.

**D.    The Settlement Does Not Contain Any Express Reversion Provisions.**

The Guidelines require parties to state "whether and under what circumstances money originally designated for class recovery will revert to any defendant, the potential amount or range of amounts of any such reversion, and an explanation as to why a reversion is appropriate in the instant case." Guideline § 1(h). As this Court has explained, even when a settlement allows a reversion, the class benefits and procedures can alleviate any concerns alleviated by such reversions. *Norton,* 2021 WL 3129568, at *13 (approving claims-made settlement despite reversion). The Settlement requires the City to provide benefits or issue payments within specified times, and the Agreement does not contain any provisions allowing reversion to the City nor does the Settlement impose a time-limit on Class members cashing checks. *See* Agmt §§ VI.C, VII. For certain claims where the City issues payment to a Class Member, as a practical matter, if a Class Member fails to endorse a check, the City would then, of course, retain the money until the Class Member claims the payment (and if the Class Member never claims the money or cashes a check, the City would retain the money).

**E.    Lack of CAFA Notice Does Not Prevent Final Approval.**

The Settlement Agreement required the City to send the notice required by the Class Action Fairness Act ("CAFA") as required by 29 U.S.C. § 1715. Agmt § VIII.A. The City has not provided the CAFA notice. Barton Decl. ¶ 8. But the City's failure to provide the CAFA Notice does not preclude and should not delay final approval.

When defendants fail to provide notice as required by CAFA, that does not prevent the Court from holding the final approval hearing or entering the final approval order. Instead, the remedy penalizes *Defendants* (who are responsible for providing the CAFA notice) and not the Class: "A class member may refuse to comply with and may choose not to be bound by a settlement agreement or consent decree in a class action…." 28 U.S.C. § 1715(e)(1). That is, the settlement agreement can receive final approval, but any individual class member can retroactively choose not to be bound. *See* 6 Newberg and Rubenstein on Class Actions § 18:46 ("[F]ailure to meet these requirements means that the judgment emerging from that class action will lack preclusive effect")[4] "There is no reported court decision applying this provision in the preclusion context." *Id.* In a decision subsequently vacated as a result of a settlement, the Ninth Circuit confirmed that the remedy for a defendant failing to provide notice required by CAFA is for a class member to "ask[] to be exempt from the settlement agreement." *Laguna v. Coverall N. Am., Inc.,* 753 F.3d 918, 926 (9th Cir. 2014) *vacated due to settlement,* 772 F.3d 608 (9th Cir. 2014). The remedy for Defendants' failure to provide CAFA notice does not preclude final approval, but simply allows any class member to exempt themselves from the settlement.[5]

---

[4] *See* Ian Simmons & Charles E. Borden, *The Defense Perspective: The Class Action Fairness Act of 2005 and State Law Antitrust Actions,* 20 Antitrust 19, 23 (Fall 2005) ("If a defendant fails to comply with this provision [1715(b)], a class member can refuse to comply with- or be bound by- the terms of the settlement."); Matthew E. Pohl, *CAFA Impacts on Class Administration (Revised)*, 27 No. 1 Class Action Reports ART 3 (Jan-Feb. 2006) ("CAFA creates a huge incentive to notify federal and state officials properly because the Act contains a provision allowing a class member not to be bound by the settlement terms if he or she can demonstrate lack of adequate notice to the government official.").

[5] Alternatively, the Court could order another Class notice where Class members are allowing to exercise this right within a specified period of time.

### F.    Co-Lead Counsel's Most Comparable Settlement is Similar to the One Here.

The Guidelines also request information about at least one of Lead Counsel's comparable cases. Guidelines § 11. Co-Lead Counsel's most comparable case is a USERRA case, entitled *Clarkson v. Alaska Airlines, Inc*., 2025 WL 243024 (E.D. Wash. 2025), in which both The Barton Firm and Outten Golden were co-lead class counsel and in which the settlement received final approval earlier this year. The *Clarkson* settlement required defendants to pay $4.75 mllion into a Settlement Fund, which was estimated to be approximately 48% of the maximum damages under the most favorable damage scenario and more than many other scenarios. *Id.* at *4. The Class consisted of 532 identified class members and resulted in a gross average value of $8,928 per Class Member. *Id.* The Settlement includes "substantial prospective relief that will provide additional monetary relief" in the future  and which was valued at $1500 to $6600 per year for current employee class members. *Id.* Out of the $4.75 million, the court awarded $1.425 million in fees, $244,422.86 in expenses, $19,500 for settlement administration and a $15,000 service award. *Id.* at *8. For Class Members for whom those defendants had data, which were the overwhelming majority of the Class, they simply received a payment and did not need to submit a claim form. *Id.* at *5. The Class Notice was sent by email to the members of the Class. *See id.* at *3. In short, Class Counsel's most recent USERRA class action is similar to the one here, except that the percentage recovery is even higher here.

### VII.    Plaintiffs' Version of the Military Leave Form & FAQs Should Be Approved.

With respect to Count I, the Settlement Agreement requires the City to provide Class Counsel with a draft notice of a military leave form and an informational FAQ sheet regarding military leave and benefits. Agmt. § IV.D.1. To the extent that the Parties cannot reach agreement on the contents, the Parties are required to submit the forms to the Court by the deadline to file for final approval and the Court will determine the appropriate forms of these two documents. *Id.* § IV.D.2. The City is then required to implement the terms in those forms within 7 days after entry of the Final Approval Order. *Id.* § IV.D.3-4. The Parties have exchanged edits to these forms. Barton Decl. ¶ 9. Class Counsel most recently sent edits to the City on September

19, 2025, but despite multiple emails seeking comments on these versions of these forms, Class Counsel has not received a substantive response. *Id.* Plaintiffs' version of the forms (in clean and redline), which are submitted with this motion, should be approved. *Id.* at Exs 1, 2, 3 & 4.

**VIII.    The Court Should Enter Judgment Pursuant to Rule 54(b) on the Class Claims.**

Rule 54(b) permits the Court to enter judgment on fewer than all claims when an action presents more than one claim for relief "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. Rule 54(b); *Schuman v. Microchip Tech. Inc.*, 139 F.4th 1045, 1054 (9th Cir. 2025) (finding district court properly granted Rule 54(b) judgment in class action). "Rule 54(b) has been utilized to permit the appeal of orders approving a settlement of class claims" where other claims remain in the lawsuit. 7B Wright et al, *Fed. Prac. & Proc. Civ.* § 1802.1 (citing *In re Ikon Office Sol., Inc., Secs Litig,* 194 F.R.D. 166, 192 (E.D. Pa. 2000)); *see Gonzalez v. Cnty. of Alameda*, No. 3:19-cv-07423-JSC, 2024 WL 4752091, at *1 (N.D. Cal. Oct. 16, 2024) (entering judgment under Rule 54(b) in class action as to one defendant, with remaining claims against another defendant).

On class action settlements where claims remain against non-settling defendants, courts enter judgment pursuant to Rule 54(b) "to facilitate the prompt distribution of the Settlement benefits to the members of the Settlement Class, [as] this is in the interest of the Settlement Class." *Ferrari v. Autobahn, Inc.,* No. 4:17-CV-00018-YGR, 2019 WL 295260, at *5 (N.D. Cal. Jan. 23, 2019); *In re Pharm. Indus. Average Wholesale Price Litig*., No. 01-CV-12257-PBS, 2008 WL 11440614, at *1 (D. Mass. Jan. 22, 2008) (same); *see Estakhrian v. Obenstine,* 2019 WL 3035119, at *1 (C.D. Cal. 2019) (explaining the court had previously approved a settlement and entered judgment under Rule 54(b) as to certain defendants; *In re Homestore.com Inc. Secs. Litig.,* 225 F.R.D. 252, 254 (C.D. Cal. 2004) (same). Entering judgment under Rule 54(b) is also appropriate when there are separate individual claims. *Cf. Lovell v. Chandler,* 303 F.3d 1039, 1048 (9th Cir. 2002) (finding separate claims by individual claims were not "inextricably intertwined" with class claims).

Here, there is no reason to delay entry of judgment on the Class Claims. The individual

1 claims by Plaintiffs Anderson and Sweeney are alleged as separate Counts in the Complaint and

2 address separate claims. *See* Compl. ¶¶ 279-305, 339-361. As these claims arise out of events

3 specific to Mr. Anderson and Ms. Sweeney, these claims are not intertwined with the Class

4 Claims. *See id.* The Class Settlement Agreement explicitly excludes these claims from the

5 release of the Class Claims. Agmt. § XII.A.9.

6          The distribution of recovery to the Class depends on the Court entering a Final Approval

7 Order that becomes Non-Appealable. Agmt. § VII. A, B & C, VI.C.1. Likewise, the release by

8 the Class is only effective upon the Final Approval Order becoming Non-Appealable. *Id.* §

9 XII.A. There is no reason to delay providing the benefits to the Class of this Settlement pending

10 the resolution of the Plaintiffs' individual claims. Rather, entering judgment under Rule 54(b)

11 would be in the best interest of the Class.

12 **IX.    The Court Should Retain Jurisdiction Over the Class Claims After Judgment.**

13          A district court has "no inherent power to enforce settlement agreements entered into by

14 parties litigating before them." *Arata v. Nu Skin Int'l, Inc*., 96 F.3d 1265, 1268-69 (9th Cir. 1996)

15 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 380-381 (1994) (finding no

16 jurisdiction where the court did not retain jurisdiction after judgment)). But a court does have

17 such post-judgment jurisdiction where it "expressly retained authority to 'ensure compliance'

18 with the settlement agreement's terms." *In re Volkswagen Clean Diesel Mktg., Sales Prac., and

19 Prod. Liab. Litig.,* 975 F.3d 770, 775 (9th Cir. 2020) (finding jurisdiction post-judgment in a

20 class action over alleged breach of settlement agreement). The Ninth Circuit has observed that it

21 is "common in class action settlements" for the court to retain jurisdiction. *Arata*, 96 F.3d at

22 1268-69. The Ninth Circuit and a leading treatise has suggested that "a district court must have

23 'power to enforce' its order approving a settlement 'to protect the integrity of a complex class

24 settlement over which it retained jurisdiction.'" *In re Volkswagen,* 975 F.3d at 775 (quoting *In re

25 Prudential Ins. Co. of Am. Sales Practice Litig*., 261 F.3d 355, 367-68 (3d Cir. 2001)); 2

26 *McLaughlin on Class Actions* § 6:6 (advising it is "crucial" for a class settlement to provide that

27 "the court shall retain jurisdiction … with respect to the future performance of the terms of

28

[the]Settlement.").[6] This Court has previously retained jurisdiction in class action settlement over: "(a) implementation and enforcement of the settlement"; (b) "disposition of the Settlement" payments to the Class; (c) "determining Plaintiffs' Counsel's application for attorneys' fees, costs, interest and expenses"; and, (d) "the Action until the final judgment contemplated in this order has become effective and each and every act agreed to be performed by the parties shall have been performed pursuant to the Settlement Agreement." *Hunt v. Imperial Merchant Servs*, No. C-05-04993 DMR, 2010 WL 11627814, at *4 (N.D.Cal. Sept. 27, 2010) (Ryu, J). A similar retention of jurisdiction is appropriate here.

First, the Parties have agreed that the Court should retain jurisdiction over (1) implementation of the settlement, (2) enforcement and administration of the settlement and (3) any further application of attorneys' fees and expenses. Second, the Settlement contemplates a Claims Process that will extend beyond Final Approval. Agmt. § VI. Third, this District's Guidelines also contemplate a report about the distribution of the payments to the Class. Guidelines § __. Fourth, the Settlement includes prospective relief. Finally, the Settlement expressly provides for Plaintiffs' counsel's ability to seek additional attorneys' fees and expenses if there are more than nominal fees and expenses. Agmt. § XI.B. Thus, retention of jurisdiction over the Class Claims would be appropriate in this case.

**X.    Conclusion**

For the forgoing reasons, Plaintiffs' Motion for Final Approval of the Class Action Settlement should be granted.

---

[6] The mere fact that the parties agree that the court should exercise continuing jurisdiction is alone sufficient to retain such jurisdiction. *Arata,* 96 F.3d at 1268–69.

PLS.' MEMO ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:20-cv-01149-DMR                25

Dated: November 6, 2025

Respectfully submitted,

*/s/ R. Joseph Barton*
R. Joseph Barton (Cal Bar No. 212340)
Email: jbarton@thebartonfirm.com
THE BARTON FIRM LLP
1633 Connecticut Ave. Suite 200
Washington, DC 20009
Tel: (202) 734-7046

*Attorneys for Plaintiff Sweeney*

Michael J. Scimone (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue
25th Floor
New York, NY 10017
Tel: (212) 245-1000
Email: mscimone@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com

*Attorneys for Plaintiff Anderson*